ROBBYE RAY ANDERSON
NAME
F39592
PRISON NUMBER
CRC-PO BOX 3535 - 303-22L
CURRENT ADDRESS OR PLACE OF CONFINEMENT
Norco, CA. 92860
CITY, STATE, ZIP CODE

2254    1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ___ No ✓
COPIES SENT TO
Court ✓ Pro Se ___

**FILED**
JUN - 9 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ROBBYE RAY ANDERSON,
(FULL NAME OF PETITIONER)
**PETITIONER**

v.

M. MARTEL, WARDEN,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])
State of California
**RESPONDENT**
and

JERRY BROWN,
The Attorney General of the State of
California, Additional Respondent.

Civil No. **'08 CV 1031 W AJB**
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: San Diego Superior Court, Dept. 28 - 220 W. Broadway - San Diego, Ca. 92101

2. Date of judgment of conviction: July 27, 2006

3. Trial court case number of the judgment of conviction being challenged: CD198047

4. Length of sentence: 10 years with 80%

CIV 68 (Rev. Dec. 1998)    K:\COMMON\FORMS\CIV-68.

5. Sentence start date and projected release date: *September 19, 2006*
*Projected Release Date: March 15, 2014*

6. Offense(s) for which you were convicted or pleaded guilty (all counts): *CT.1-(11352A) Furnishing-Giving Away. CT.2 (11351.5) Possession Of Narc. Cntrl Sub. CT.3-(11364) Possession Of Paraphernalia.*

7. What was your plea? (CHECK ONE)
   (a)  Not guilty      ☒
   (b)  Guilty          ☐
   (c)  Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a)  Jury        ☒
   (b)  Judge only  ☐

9. Did you testify at the trial?
   ☐ Yes  ☒ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☒ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a)  Result: *Appeal was Denied*
    (b)  Date of result, case number and citation, if known: *December 5, 2007 Case no. D049483*
    (c)  Grounds raised on direct appeal: *The Trial Court Deprived Mr. Anderson Of A Fair Trial And Due Process Of Law Under The Sixth And Fourteenth Amendments To The United States Constitution When The Court Allowed The Prosecutor To Introduce Evidence Of Mr. Anderson's Previous Conviction For Selling Cocaine. See Attached*

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a)  Result: *Denied*
    (b)  Date of result, case number and citation, if known: *February 13, 2008 S159550 or D049483*
    (c)  Grounds raised: *The Trial Court Erred in Admitting Evidence Of A Prior Offense And Allowing The Prosecution To Reopen Its Case To Admitt Booking Photographs From The Prior Offense Without Mr. Anderson Taking The Witness Stand.*

**13.** If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

   (a)  Result: _____

   (b)  Date of result, case number and citation, if known: _____
   _____

   (c)  Grounds raised: _____
   _____
   _____
   _____
   _____


## COLLATERAL REVIEW IN STATE COURT

**14.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☐ Yes  ☒ No

**15.** If your answer to #14 was "Yes," give the following information:

   (a)  **California Superior Court** Case Number:_____

   (b)  Nature of proceeding: _____
   _____

   (c)  Grounds raised: _____
   _____
   _____
   _____

   (d)  Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☐ No

   (e)  Result: _____

   (f)  Date of result: _____


**16.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☐ Yes  ☒ No

17.  If your answer to #16 was "Yes," give the following information:

    (a)  **California Court of Appeal** Case Number:_____

    (b)  Nature of proceeding: _____

        _____

    (c)  Grounds raised: _____

        _____

        _____

        _____

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☐ No

    (e)  Result: _____

    (f)  Date of result: _____

18.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes  ☒ No

19.  If your answer to #18 was "Yes," give the following information:

    (a)  **California Supreme Court** Case Number:_____

    (b)  Nature of proceeding: _____

        _____

    (c)  Grounds raised: _____

        _____

        _____

        _____

        _____

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☒ No

    (e)  Result: _____

    (f)  Date of result: _____

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

Defendant DiD File A PETiTioN FOR REViEW To THE SUPREME COURT.

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
    ☒ Yes ☐ No    (IF "YES" SKIP TO #22)
    (a) If no, in what federal court was the prior action filed? _____
        (i) What was the prior case number? _____
        (ii) Was the prior action (CHECK ONE):
            ☐ Denied on the merits?
            ☐ Dismissed for procedural reasons?
        (iii) Date of decision: _____
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
        ☐ Yes ☐ No
    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
        ☐ Yes ☐ No

**CAUTION:**
- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. **State** *concisely* **every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize** *briefly* **the facts supporting each ground.** If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: Equal Protection And Due Process Rights, Of The Law. The Court Allowed The Prosecutor to Introduce Evidence Of Previous Conviction For Selling Cocaine.

**Supporting FACTS** (state *briefly* without citing cases or law) Without The Defendant Being A witness, Defendant was Deprived by The Court In Trial Under The Sixth And Fourteenth Amendments. The Court Predictice The Jury By Bringing Officer Ries in The Trial Court As A Witness, Telling Them About The Case, For Sales In 2000. This Case was One Officer Claiming The Defendant Just Gave Him 0.07 of A Gram OF Coccin for FREE. Defendant was Not Of Possession Of Any Narc, Nor Possession Of Any Pre-recorded Money When He was Arrested.
Under The United States Constitution, All Citizens Are Protected Under This Clause. And Given The Same Rights As Any Other Citizen That Includes Equal Protection From False Prosecution And The Right To A Fair Trial, The Right To Call Witnesses And To Present Evidence.
As A Citizen, But Also As A Defendant, I Am Legally Afforded All The Rights And Protection I Am Entitled To By Law- In This Case, Such Law Was Violated And There Was No Fair Trial And Sadly, I was Not Given The Opportunity To Call A VITAL WITNESS Or Present Evidence That Could Have Cleared The Defendant's From The Guilty Verdict. See Attach Court Transcripts. EXHIBIT "A"

**Did you raise GROUND ONE in the California Supreme Court?**
☒ Yes ☐ No.

**(b)  GROUND TWO:** _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND TWO in the California Supreme Court?**
☐ Yes ☐ No.

CIV 68 (Rev. Dec. 1998)

K:\COMMON\FORMS\CIV-68.

**(c) GROUND THREE:** _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND THREE in the California Supreme Court?**

☐ Yes ☐ No.

**(d) GROUND FOUR:** _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☐ No.

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☒ No

24. If your answer to #23 is "Yes," give the following information:
   (a) Name of Court: _____
   (b) Case Number: _____
   (c) Date action filed: _____
   (d) Nature of proceeding: _____
   _____
   (e) Grounds raised: _____
   _____
   _____
   _____
   _____
   (f) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes  ☒ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
   (a) At preliminary hearing: *Anthony Hernandez - S.B. NO. 128704*
   *233 "A" Street - Suite 500 - San Diego, CA. 92101*
   (b) At arraignment and plea: *Anthony Hernandez - S.B. NO. 128704*
   *Plea: Not Guilty*
   (c) At trial: *Anthony Hernandez - S.B. NO. 128704*
   _____
   (d) At sentencing: *Anthony Hernandez - S.B. NO. 128704*
   _____
   (e) On appeal: *Thomas Owen - S.B. NO. 217728  (619) 972-6936*
   (f) In any post-conviction proceeding: _____
   _____
   (g) On appeal from any adverse ruling in a post-conviction proceeding: _____
   _____

**26.** Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

☒ Yes  ☐ No  3 counts 1.(Furnishing) 2.(Possession) 3.(Paraphernalia)

**27.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes  ☒ No

   (a) If so, give name and location of court that imposed sentence to be served in the future:

   _____

   (b) Give date and length of the future sentence: _____

   _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

   ☒ Yes  ☐ No

**28.** Date you are mailing (or handing to a correctional officer) this Petition to this court: X_____

   JUNE 5, 2008
   _____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

June 3, 2008          Robbye Anderson

(DATE)          SIGNATURE OF PETITIONER

ROBBYE RAY ANDERSON
I.D. NO. F39592
C.R.C.
P. O. BOX 3535
NORCO, CA. 92860-0991

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ROBBYE RAY ANDERSON                    CASE NO. SCD198047

            Petitioner,

    V.                                 PETITION FOR WRIT OF
                                       HABEAS CORPUS PURSUANT
M. MARTEL, Warden, et.al.,             28 U.S.C. 2254, WITH
                                       MEMORANDUM OF POINTS
            Respondents,               AND AUTHORITIES IN
                                       SUPPORT THEREOF.

CASE SUMMARY

    An information was filed April 4, 2006, alleging that petitioner committed FURNISHING, GIVING AWAY NARC. TO AN OFFICER. POSS. OF NARC., and POSS. OF PARAPHERNALIA in violation of CA. Penal Code Section (11352A) (11351.5) and (11364).

**2**

## STATEMENT OF FACT

First of all, prior to the arrest, Feburary of 2006,
I was working graveyard at Swift's Fire Protection
in San Diego, Ca. on Murphy Canyon Rd. Getting off work
at six a.m., I decided to stop by a friend home in the
Golden Hill area. Exiting my car, walking to an
apartment complex, I became a victim of a strong-
arm Robbery. I was brutally engered with being
beaten with a two-buy-four. I was hospitalize for
three weeks at Scrips Mercy and Kaiser. Being
heauly medicated, I made a poor choice to look around
the downtown area for the subspect, which had not
been found. In the process of walking by 6th C street,
Officer Chavez approach me and ask me if I had a
20 dollar rock of cocaine. Another poor choose of mine,
I told him I did not sale cocaine because of past
mistakes. My intentions were to take him to find some.
We walked two blocks near 7th Broadway. There was
a white male sitting in his Ford Exployer smoking
something. I could not tell just what it was. I ask
the guy which came to be Mr. Delbert Rose, did he
have anything to sale this guy. He said no, which
when officer Tagabond search his vehicle, she did
not find anything but Marajuana, and cocaine residue
on his console. I told officer Chavez that I had
nothing and there was nothing around to get. As
I was about to walk away, with officer Chavez
standing right there, a black and white squad car which

to be Officer Wilson, pull up and detained me. I had
no drugs on me. I did have $116.00 on my possesion
from previous employment and a income tax return I
had just recieved. I had bank statements from Bank
Of America that was dearle from being presented by
Mrs. Sonja Daniels Anderson during Trail. She was the
only defense witness, but was never call to the witness
stand. I was arrested also with Paraphernalia which
I was guilty of from relapsing. Not until I got to the
25th Imperial, Commercial Precint, I was told, my $116.00
was being confiscated because I was being charge for
giving to an officer. Not sell, but giving, which was
called furnishing, which was said a 0.07 of a gram
of cocaine. However, there were only three officers
at the scene, Officer Chavez, Officer Wilson, and
officer Tagabond, which she was the officer that
apprehended the Ford Exployer. There were several
officers Testifying at Trail that was not at the scene.
Not any of the officer Testified they saw nor heard
anything over the transmitter of me giving officer
Chavez anything. Also, there was no recording of such
thing. Officer Tagabond arrested Delbert Rose for
poss. of a small amount of cocaine Residue and crumbs
that was said, it was found in a ciggerette pack in a
trash bag on his back seat floor. Also, Marajauna and
Paraphernalia. Charges were dismissed on Delbert Rose
without me being aware and the City District Attorney
Amy Maund prejidice the court and jury that anything

that was found in Delbert Rose vehicle, it was mine.
Officer Chavez falsely fabrucated that I had at
one time, sat in Mr. Rose vehicle and ask him to
sit in and smoke because he had a crack cocaine
smoking pipe. Officer Chavez also lied and
fabrucated in the report, at prelim., and also to
the Trail court, that I showed him a baggy of
approximately 3 to 4 grams of rock cocaine that never
was found or exsisted.

## SUPPORTING FACTS

The San Deigo Police Department charged Mr. Anderson
with Furnishing, Giving Away Narc. To an officer, Poss
of cocaine, and Poss. of Paraphernalia in violation of
Penal Code Section (11352A), (11351.5), and (11364).
(See attached Appendix section for Court Transcripts and
Reporter Transcripts in support thereof).
Before Trail began, it was brought to the Defense
Attorney attention "Anthony Hernandez", that I had been
a victim of a strong Arm Robbery and attempted to be
murdered, which was verified thru Dectective Adams
"FEMALE" at the 25th Imperial-Commercial precint.
Attorney also recieved Hospital reports and records.
After being arrested, I was under a second Surgery
from a poor recovery from U.C.S.D, being sent from

GEORGE BAILY DETENTION FACILITY. THIS TOOK place
during the months of May, June, and July. Petitioner
was being heavymedicated and house in the County
Jail Hospital Ward at the GEORGE BAILY FACILITY.
GEORGE BAILY County Jail Medical Facility will pro-
vide Medical Records which will verify the Petitioner
was being highly Medicated during Trail, which was
feeling very much taking advantage of. Defense
Attorney Athony Hernandez presented all medical
records to the court during Sentencing hearing,
which had no affeet to the Petitioner already been
Tried in Trail and convicted. The court fail to understand
or did not want to understand, if the petitioner would
have had that small amount of Narc, having
paraphernalia, he would have use it hisself. Petitioner
requested before trail thru Defense Attorney Anthony
Hernandez for a retest of the Narc. and an investigation
motion on Officer Chavez, "believing" if he framed me
like this, he has done someone else. It was also
denied by his Supervisor "Mrs. Mary Joe". Petitioner
also requested Delbert Rose to be Subpoena to trail
in the behalf of the defense to prove he was responsible
for whatever was in his vehicle and also he may have
been paying attention whether he seen me give any-
thing to Officer Chavez or not. Defense Attorney
Anthony Hernandez stated to Petitioner thru mail, he and
his investigators found Mr. Delbert Rose but he would not
corporate. The Petitioner request was for Delbert Rose

6

to be subpoena to Trail.  Over the period of time
of arranqment and Trail Hearing, Defense Attorney
Anthony Hernandez stated, Mr. Delbert Rose could not
be located anymore.  This is a man the was arrested
sitting in his Vehicle at the same time as Petitioner.
Be aware, the Trail court ask about Mr. Delbert Rose
and his charges.  Prosecutor Attorney Amy Maund
and Defense Attorney stated to the trail court, I
DON'T KNOW YOUR HONOR, concerning MR. ROSE
where abouts, his charges, and his release.  Once again,
Petitioner had no narc. on his possession nor any type of
exchange of Prerecorded money.  Office Chavez stated
in the Prelim. and Trail Court, the Petitioner did not
want his money and refused it.  Even though Chavez
tried to force money on Anderson, Anderson never
excepted.  Chavez claimed Anderson was not selling
but just wanted to give him the 0.07 Gram of narc.
At the beginniq of Trail, Mrs. Sonja Daniels Anderson
was present to the court as a witness for the
Petitioner.  She was going to provide Employment
verification, Tax Retunn verification, and dates and
Bank Statements, which was around April 4, 2006, the
day of the arrest.  That would have showed the
jury panel the Petitioner had every right to have $116.00
in his pocket, which what the court confiscated and
use against the petitioner for evidence.  Judge
David Gill had and ordered the Petitioner's Wife, "witness"
to sit out of the Trail Courtroom during the Trail because

7

of she being a witness. As the Transcripts shows, she sat out during the entire trail waiting to take the stand. There were no reason at all to not bring her in as a witness to show the court statements and proof of employment. Defense Attorney Anthony Hernandez refuse to call her to the witness stand, even though Prosecutor Attorney Amy Maund and Judge David Gill, had the jurors to exit the panel and walk around the table to look at the EXHIBITS of the $116.00, the 0.07 gram of Narc., and the paraphernalia. Please understand, during Trail, there were several officers call to the witness stand, there were only three of them at the scene, Officer Chavez, Officer Wilson, and Officer Tagabond. Petitioner refused to take the witness stand for himself because of his priors. As Petition explained to his Defense Attorney that he was being strongly medicated during Trail, it was not brought to the court attention and somehow the Defense Attorney slip in the suggestion to the court that most likely, the Petitioner would take the witness stand. Petitioner realized later after the trail had already preceeded, that the Public Defender Anthony Hernandez and the prosecutor Amy Maund were seemed to be working together. Petitioner admitted, January of 2000, he was very guilty of Sales of a 20 dollar piece of Narc. to officer Dan Riese. Petitioner pleaded guilty and did the time. This April 4, 2006 case, is an officer saying the Petitioner just gave and not sell, also with no witnesses

1  to clairify the officer word. It came to be the officer
2  word against the Petitioner's word.
3  Petitioner Trail Case was BLUNTLY unfair by the
4  Judge David M. Gill giving the prosecutor Amy
5  Maund, to bring in Officer Dan Reise and putting
6  him on the witness stand to tell and explain to
7  the Jurors, when and how I sold cocaine to him
8  in Janurary of the year 2000.
9  Also, the Court showed the Jurors the past
10 photos of the 2000 Case which was unfair to the
11 Trail.
12 This PREJUDICIAL ERROR was plainly committed when
13 the Trail court told the Jurors that the Petitioner
14 had sold NARC. to a Police Officer in the year of
15 January 2000.
16
17
18
19
20
21
22
23
24
25
26
27
28

NORMAL LAW ABIDING PEOPLE
GOVERNMENT AGENT
UNWITTED PARTICIANT
ARE THE SAME PERSON

The purposes of the entrapment defense can be fulfilled only if it is understood that one can act as the agent of a law enforcement official without realizing the identity of his principal the unwitting agent though he does not know the true nature of his role. Is nonetheless being manipulated as the officer's tool in a plan to foster a crime and entrap its pertrator. Patty V. Board of Medical examiners (1973) 9 cal 3d 356, 364

## SUPPORTING FACTS

PRELIM, TRIAL, TRANSCRIPTS, AND Police Report states, Officer Chavez approached me as I was walking down the street minding my business and he continue to ask me for drugs to buy. Also, he even went to the extent to pull a crack cocaine smoking pipe out of the zipper of his pants. Chavez continued to ask me to take him to get some drugs. Anderson explain to Chavez, he did not have any drugs for sale. Anderson's intentions were to take Chavez to get some, but using better judgement, Anderson decided that would be the wrong thing to do. After walking with Chavez two block to 7th Street, Chavez continued to ask for a 20 Dollar Piece of

1  crack cocaine.  Anderson decided to walk away
2  after speaking with Delbert Rose thru the passenger
3  window of his Ford Explorer, this is when Officer
4  Wilson pulled up and detained Anderson.

5
6
7
8
9
10              MEDICAL RECORDS
11
12  Medical Records is to show, At the time of the arrest,
13  defendant was under Medical Care and Serious Medication.
14  Documentations on Medical Page _18_.
15  During the stay while incarcerated at George Baily Fac.
16  County Jail, Defendant went under a second Surgery
17  at the UCSD HOSPITAL during the period of Court hearings,
18  Defendant was unstable during trial, from being
19  under strong medication and recovering head engeries,
20  UCSD HOSPITAL CAN VERIFY THIS INFORMATION.
21  ALSO, DEFENDANT went under a third Surgery on
22  3-22-07 _____ at the Riverside Medical Center Hospital,
23  from the California Rehabilitation Center, where I am
24  incarcerated at this time. DOCUMENTED ON PAGE
25  __22__ .
26
27
28

1  ANERSON                    INDEX OF WRIT OF
2  CASE NO. SCD198047    HABEAS CORPUS AND
                                      WITNESSES TRANSCRIPTS
3

4  DEFENDANT'S REQUEST APPOINTMENT OF COUNSEL. 1-3
5  CASE SUMMARY - - - - - - - - - 1-10
6  MEDICAL RECORDS - - - - - - - - 11-22
7  COURT APPEAL, FOURTH APPELLATE DISTRICT
8  DIVISION ONE STATE OF CALIFORNIA DENIAL - - - -
9  SUPREME COURT DENIAL - - - - - - -
10  UNITED STATES DISTRICT COURT SOUTHERN
11  DISTRICT OF CALIFORNIA WRIT OF HABEAS CORPUS - - - 1-11
12  DEFENDANT'S OPENING BRIEF - EXHIBIT (A) - - - - 1-8
13  DEFENDANT'S INTRODUCTION, ISSUES, ERROR, REQUEST
14  FOR JUDICIAL NOTICE, THE PREJUDICE, DENIAL OF DUE
15  PROCESS, CREDIBILITY, AND DEFENDANT PRAYER FOR RELIEF, 9-15
16  DARIN RIES - JAN OF 2000 ARRESTING OFFICER
17  TESTIMONY IN TRIAL - TRANSCRIPTS - - - 16-19
18  THE TRIAL COURT TRANSCRIPTS - - - - EXHIBIT (A) 20-26
19  THE TRIAL COURT TRANSCRIPTS - - - - - 27-30
20  OFFICER WILSON TRIAL TESTIMONY - TRANSCRIPTS EXH.B 34-36
21  OFFICER SPEARS TRIAL TESTIMONY - TRANSCRIPTS EXH.B 37-39
22  OFFICER TAGABOND TRIAL TRANSCRIPTS - EXHIBIT B 40-42
23  OFFICER CHAVEZ TRIAL TRANSCRIPTS EXHIBIT B 43-53
24  ATTORNEY ANTHONY HERNANDEZ TRIAL CLOSING
25  ARGUMENTS. EXHIBIT D - - TRANSCRIPTS - 54-68
26  OFFICER CHAVEZ PRELIMINARY TESTIMONY TRANSCRIPTS EXHIBIT E 69-74
27  POLICE REPORT - - - - - - - EXHIBIT F - - - 75-78
28  SENTENCING HEARING, CHARACTER LETTERS, ABSTRACT OF JUDGEMENT, EXH.G 79-88

# Scripps

## TRAUMA SERVICES
## ADMITTING HISTORY AND PHYSICAL

TRYMA D0467-06
99   0467 MR: 598120467
MERCY     Adm: 03/16/06
M/48    01/01/1958    0097
YANG, JACK CHENG-YUAN  M

3/16/06

# HISTORY

**RENT COMPLAINT:** Assault

**ORY OF PRESENT ILLNESS:** 48 ♂ assaulted in park. Unknown LoC.

| TIME CONSULTED: | SERVICE: |
| --- | --- |

SULTANT:

TIME RESPONDED:

VC: YEAR, MAKE & MODEL OF VEHICLE:

## PAST MEDICAL HISTORY

S: ∅    **MED ILLS:** HTN

**ERGIES:** ∅    **TETANUS STATUS:** GIVEN

T MENSTRUAL PERIOD:    **SURGS:** ∅

## SOCIAL HISTORY

PLOYMENT:

OKE: ∅    **DRINK:** ∅    **DRUGS:** ∅

## FAMILY HISTORY

THER:    MOTHER:    SIBLINGS:

MILIAL ILLS:

.S.:

## PHYSICAL EXAM

**P:** 92    **BP:** 130/80    **R:**    **T:** 97    100%

CRAMS:    CHAMPION:

AD: Lg @ scalp round    FACE: (+) sine TTP

ES:(B) PERRL 2-3mm    EARS: Blood @ ear

OSE: ∅ epistaxis    THROAT/MOUTH: (+) mal[?]

ECK: (+) midline TTP    JAW: Open fx

IEST: NPP    LUNGS: CTA

EART: reg

BDOMEN: Soft    Post scalp - lg lacs

Lg scalp lac

Facial lac

| GLASGOW COMA SCALE | | |
| --- | --- | --- |
| Eye Opening | Spontaneous | 4 |
| | To Voice | 3 |
| | To Pain | 2 |
| | None | 1 |
| Verbal Response | Oriented | 5 |
| | Confused | 4 |
| | Inappropriate Words | 3 |
| | Incomprehensible Words | 2 |
| | None | 1 |
| Motor Response | Obeys Commands | 6 |
| | Localizes Pain | 5 |
| | Withdraw (pain) | 4 |
| | Flexion (pain) | 3 |
| | Extension (pain) | 2 |
| | None | 1 |

**Preliminary Report**

CONDITION ON TRANSFER:
I have spoken to Dr. Ferrier of Kaiser Hospital who wishes to
accept the patient in transfer and agrees that he is stable for
same. We will, therefore, prepare the patient for transfer to
Kaiser Hospital. His antibiotics may be able to be switched to
p.o. in the eminent future and he will be able to be discharged
(in our opinion) when he passes PT and is felt safe for home
ambulation.

DICTATED BY: SETH KROSNER, MD

SK:Spheris15706 C: 03/20/06 16:05
D: 03/20/06 14:29 T: 03/20/06 16:05 DOCUMENT: 200603201564227800

Form: TRXLBLC

13

**Preliminary Report**

0089

Scripps Mercy Hospital

TRANSFER SUMMARY

PATIENT: ANDERSON, ROBERT
MR#: 000598120467          ACCT#: 000998120467
DATE OF ADMISSION: 03/16/2006     DATE OF TRANSFER: 03/20/2006

ADMISSION DIAGNOSIS(ES):
Assault.

HISTORY OF PRESENT ILLNESS:
This is a patient who was the victim of an assault allegedly with
a pipe. He received numerous blows across the head and arrived
in the trauma room awake and cooperative, but complaining of head
pain and jaw pain. There were numerous lacerations measuring
some 80 cm across the forehead and occiput. He also complained
of pain at the jaw especially on the left.

PAST MEDICAL HISTORY:
The patient denied major medical problems.

MEDICATIONS:
He takes no medications.

SOCIAL HISTORY:
He claims not to use alcohol. He is currently unemployed at the
time of the interview. Tox screen showed cocaine.

PHYSICAL EXAMINATION ON ARRIVAL:
VITAL SIGNS: Normal.
ENT: Multiple lacerations as noted above. There is facial
tenderness on the left.
The remainder of the examination was unremarkable.

HOSPITAL COURSE:
Workup included a CT of the head which revealed a bifrontal
subarachnoid hemorrhage and significant skull fractures and
pneumocephalus. The face showed left mandibular fracture. The
remainder of the workup included C-spine, T-spine, L-spine,
chest, abdomen, and pelvis CT's, all of which were negative, and
plain films of both hands. The left hand showed a middle
phalangeal fracture in the middle digit. The right hand was
unremarkable.

The patient was taken to the operating room on March 17th for a
repair of his mandible. This was accomplished without incident.
He also underwent repair and revision of scalp lacerations. His
postoperative course was relatively unremarkable. PT felt that
the patient was unsteady and had trouble with his gait because of
the subarachnoid hemorrhage. They have recommended several days
of acute physical therapy followed possibly by discharge. The
patient is also still on IV clindamycin and levofloxacin for his
jaw fracture. We will plan on adding Lortab elixir today and
weaning off the parenteral narcotics.

**Scripps Mercy Hospital**

TRAUMA, D04    '6
998120467 MR: 598120467
MERCY      Adm: 03/16/06
M/48       01/01/1958
YANG, JACK CHENG-YUAN M.
PATIENT INFORMATION

0093

**Trauma Resuscitation Flow Sheet**

## ASSESSMENT

| TIME | TEMP | PULSE | RESP | BP | O₂ SAT | FiO₂ | PUPILS ®(S)(R) | ©(S)(R) | EYE | VERBAL | MOTOR | TOTAL | Pain 1-10 | NURSE'S NOTES |
|------|------|-------|------|----|--------|------|------|------|-----|--------|-------|-------|------|--------------|
| | | | | | | Initial Temp: 97 ax | | | | Manual Blood Pressure: | | | | GLASGOW COMA SCALE |
| 16⁰⁸ | 97 | 14 | | | 100 | | 3 + 3 + | | 3 | 5 | 6 | 14 | ✱ | onto gurney, surveys |
| 1623 | 96 | 16 | | 98 | RA | | | | 3 | 5 | 6 | 14 | | progress 19c |
| 16 | 97 | 92 | 20 | 155/82 | 100 | RA | | | | | | | ✱ | ® hand wound, indicate |
| 1632 | 94 | 16 | | 96 | RA | | | | | | | | | 6 bandaged. rolled. |
| 1637 | 95 | 18 | | 98 | RA | | | | 4 | 6 | 6 | 16 | ✱ | extensive scalp lac. |
| 1642 | 97 | 16 | | 95 | RA | | | | 4 | 4 | 6 | 14 | | explored briefly + |
| 1647 | 100 | 16 | | | 10 | NRB | | | | | | | | bandaged. Bleeding |
| 1652 | 96 | | | | | | | | | | | | | controlled. 19c |
| 1700 | 94 | 14 | | | 10 | NRB | | | 4 | 6 | 6 | 16 | ✱ | to CT. INT on |
| 1305 | 96 | 16 | | | 100 | | | | | | | | | monitor. O2 NRB |
| | | | | | | | | | 4 | 6 | 14 | | ✱ | applied, preventative |
| 1710 | 94 | 0 | | | | | | | | | | | | CTs in progress. |
| 1715 | 90 | | | | 100 | | | | | | | | | Creatinine 1.3 non contras |
| 1720 | 88 | 16 | | | | NRB | | | | | | | | per Dr. Yang. CT's cont. |
| 1725 | 86 | 16 | | | 100 | | | | | | | | | ® skull fx. Report |
| 1730 | 84 | 16 | | | | | | | | | | | | called to Linda RN |
| 1735 | 96 | 16 | | | | NRB | | | | | | | | CTs cleared per Dr. |
| 1740 | 83 | 16 | | | 100 | | | | 4 | 6 | 14 | | ✱ | Yang. To X-ray for |
| 1745 | 85 | | | | | RA | | | | | | | | plain films. 19c |
| 1805 | 89 | 16 | | | 100 | NRB | | | | | | | | To ICU on monitor |
| | | | | | | | | | | | | | | & INT. Dr. Yang |
| | | | | | | | | | | | | | | @ bs — |

| | | |
|---|---|---|
| Left E.D.: 1700 | Time: To: ☐ X-Ray ☒ C.T. ☐ O.R. ☐ Other: | Valuables: ☒ Safe ☐ Family ☐ With Patient |
| Returned To E.D.: | Time: Reason: | Pronounced: By: N/A    Time: |
| Admitted: | Time: ☐ ICU ☒ SICU ☐    Linda | Notification: Coroner: ☐ Yes ☒ No  Time: |
| Discharged: | Time: ☐ Home ☐ | Police: ☐ Yes ☒ No  Time: |
| Relative Notified, Name: 1821 | | Release To Coroner: ☐ Yes ☒ No  Time: |
| Relationship: | | Total Time in ED:    Hr.:    Min.: |
| Phone No.: | At: | Signature: Kristine Fulton    RN |

Scripps Mercy Hospital

### EMERGENCY RECORD

PATIENT: TRAUMA , D0467-06
MR#: 000598120467          ACCT#: 000998120467
DATE OF SERVICE: 03/16/2006

TRAUMA D:  0467

TIME SEEN:
3/16/06, approximately 1630.

CHIEF COMPLAINT:
This is a 48-year-old male who comes in as a co-trauma.  Patient
was assaulted by an unknown assailant.  He was beaten multiple
times with unknown objects.  He sustained primarily head trauma
and had positive LOC.  Complaints of headache, neck pain.  Denies
chest pain or abdominal pain or lower back pain.  Denies weakness
or sensory disturbances.

PAST MEDICAL HISTORY:
Patient denies any medical problems.

MEDICATIONS:
Denies any medicines.

ALLERGIES:
DENIES ANY ALLERGIES.

SOCIAL HISTORY:
States that he is homeless.

FAMILY HISTORY:
No history of significant illness.

REVIEW OF SYSTEMS:
A full 10-system review of systems was done on this patient and
was negative except for those components stated in the history of
present illness.

PHYSICAL EXAMINATION:
VITAL SIGNS: 130/80, 94, 12, 100% on room air.  Vital signs
interpreted by myself as being within normal limits.
HEENT:  This patient has a GCS of 14.  E3, V5, Motor 6.  He has
evidence of a large laceration to the right parietal area, it is
approximately 10 cm in size.  Blood within the canal, but no
obvious evidence of hemotympanum.  Pupils equal, round, and
reactive to light.  The trachea is midline.  No obvious facial
fractures.
CHEST:  Clear bilaterally.
HEART:  Regular rate without murmur.
ABDOMEN:  Soft.  No tenderness to palpation, no rebound, no
guarding.  Pelvis stable to rock and compression.
EXTREMITIES:  With evidence of tenderness to palpation and

16

**Preliminary Report**                                      0096

Corp MRN: 598120467                    Patient: ANDERSON, Robbi
Old MRN:                               Printed: 03/22/2006 07:33

                           Page: 02
_____

swelling about the right hand, with some scattered lacerations.
No other obvious fractures in the extremities.  There are 2+
pulses, radial, femoral, symmetric and equal.

PROCEDURES:
The patient had two procedures done.  The first was an airway
assessment.  The airway was assessed by myself, found to be
medically stable.  Did not need intervention at the moment.  The
patient appeared to be oxygenating and ventilating appropriately,
and had a GCS of greater than 8 with head trauma.

The second procedure was a FAST examination.  The patient had a
four-view FAST examination performed by the resident, Dr.
Goodwin, under my direct supervision.  No evidence of free fluid
within the peritoneum nor the pericardial space.

IMPRESSION:
This patient is status post assault, head trauma, rule out closed
head injury.  Head laceration, 10 cm.  Right hand laceration/
 Right hand contusion.

Patient will be admitted to Dr. Jack Yang of the trauma service.
 Further evaluation, management, and care per Dr. Yang at the
trauma service.

DICTATED BY: JON K LUDWIG, MD

JKL:Spheris13305 C: 03/17/06 05:18
D: 03/16/06 16:30 T: 03/17/06 05:12 DOCUMENT: 200603171563219200

Form: TRXLBLC

0099

**Final Report**

Corp MRN: 598120467                              Patient: ANDERSON, Robbi
Old MRN:                                         Printed: 03/28/2006 19:54
_____  Page: 02  _____

buttocks.

ASSESSMENT:
Closed head injury, likely jaw fracture.  Possible neck strain.
 Possible blunt torso injury.

PLAN:
Plan is for CT scans of the head, cervical spine, chest, abdomen,
and pelvis, as well as CT scans of the jaw.

ADDENDUM:
The patient had obvious skull fracture with possible small
subarachnoid blood on the CT of the brain and skull.  He does
have a comminuted left jaw fracture.  Dr. Ott was alerted to the
skull fracture and asked us to close the lacerations and that
will be dictated separately.  Dr. Vecchione was contacted and
will address this jaw fracture likely tonight because of the
likelihood that it is an open fracture.  The patient is placed on
Levaquin and clindamycin and IV fluids.  He is made NPO.

DICTATED BY: JACK YANG, MD

JY:Spheris14552 C: 03/17/06 05:38
D: 03/16/06 19:40 T: 03/17/06 05:38 DOCUMENT: 200603171563270500

**SIGNED ELECTRONICALLY 03/17/2006 07:28**
**By: 372433 YANG, JACK C**

Form: TRXLBLC

0101



**KAISER PERMANENTE**

Dictating    Ames D Ressa, MD
Physician:

Patient Name:  ANDERSON, ROBBYE R

Med Rec No:   0000000017107871
Date of Admission:  03/20/2006
Date of Discharge:  03/22/2006

## DISCHARGE SUMMARY

HOSPITAL COURSE:
The patient was admitted and placed in a regular surgical bed. He was noted to be alert and oriented. He had healing scalp lacerations. There was no evidence of chest or abdominal trauma. His left hand was in a splint. There were staples throughout the scalp. Consultations were obtained from neurosurgery, head and neck surgery, orthopaedics, physical therapy, and occupational therapy. The patient was noted to be stable. His significant closed head injuries included a nondisplaced parietal/occipital skull fracture with bilateral frontal subarachnoid hemorrhage, and left parietal pneumocephalus. No further neurological imaging was felt necessary. The skin clips and sutures in the scalp were removed and he is to follow up with neurosurgery as needed. Neurologic exam was nonfocal. The patient's mandible fracture was stable, and his finger fracture was also stable. Physical therapy, and occupational therapy evaluations were completed. The patient was felt okay for discharge to his home. He was discharged home on the third hospital day to be followed up in outpatient clinics.

DISCHARGE INSTRUCTIONS:
Included a puree diet because of the fixation of his jaw. He is allowed to shower. He is not supposed to actively wash his scalp. He is to follow up with head and neck surgery in approximately two weeks. Follow up with Dr. Hempton in the Orthopaedic Clinic in approximately four weeks, and he is to undergo occupational therapy as an outpatient. He was given a prescription for Vicodin for pain #50 with no refill. He does not require any followup in this General Surgery Clinic.

Ames D Ressa, MD

ADR:EDIX13704
D:03/22/2006 @14:13 T:03/22/2006@16:11 DOCUMENT:200603221903953300

## DISCHARGE SUMMARY

STATE OF CALIFORNIA
SUPPLEMENTAL TO DENTAL PROGRESS NOTES
CDCR 237-C-1 (Rev. 04/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.

| DATE OF ACTION (month/day/year) | | | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|---|---|
| 01 | 18 | 07 | | UCSD examined again and said | | |
| | | | | they will retreat in July - August | | |
| | | | | 2006. | | |
| | | | | Around September patient was moved | | |
| | | | | to DONOVAN facility. UCSD did not | | |
| | | | | retreat. At DONOVAN facility pt. was | | |
| | | | | examined by oral surgeon with | | |
| | | | | complete records. Pt. was told that | | |
| | | | | they will perform surgery if treat | | |
| | | | | fractured mandible at ALVARADO | | |
| | | | | HOSPITAL, SAN DIEGO. | | |
| | | | | Patient was sent to CRC around | | |
| | | | | Jan 16th 2007. | | |
| | | | | OBJECTIVE FINDINGS: | | |
| | | | | Intra & Extra oral Exam. | | |
| | | | | E.O: Step deformity with tenderness | | |
| | | | | lower border of mandible on left. | | |
| | | | | I.O.: missing teeth 1, 2, 3, 4, 5, 10, 13 | | |
| | | | | 14, 15, 16, 17, 23, 24, 25, 26, 29, 30 | | |
| | | | | CONT. | | |

Da√3

DRUG ALLERGIES?

☑ NO   ☐ YES

NAME (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

ANDERSON, ROBBYE R

F 39592

11-21-57

SUPPLEMENT TO DENTAL PROGRESS NOTES

STATE OF CALIFORNIA
SUPPLEMENTAL TO DENTAL PROGRESS NOTES
CDCR 237-C-1 (Rev. 04/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

**Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.**

| DATE OF ACTION (month/day/year) | | | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|---|---|
| 01 | 18 | 07 | | S: "Broken Jaw, not fixed since last year, extreme pain" | | |
| | | | | HO Illness as stated by patient: | | |
| | | | | PT was assaulted around Feb. 2006 | | |
| | | | | in San Diego area when he was a | | |
| | | | | private citizen. He sustained Jaw | | |
| | | | | fracture on left body of mandible. | | |
| | | | | He was treated at Scripps mercy | | |
| | | | | hospital with wiring of fractured | | |
| | | | | segments. PT. did not follow instructions | | |
| | | | | and did not rest the immobalized Jaw | | |
| | | | | which resulted in complications i.e. | | |
| | | | | unhealed Jaw. | | |
| | | | | In April 2006 Pt. was arrested & | | |
| | | | | sent to county Jail. He was sent | | |
| | | | | to UCSD to treat fractured-non healed | | |
| | | | | mandible. UCSD performed Surgery | | |
| | | | | in May 2006 with metal plates. Pt. | | |
| | | | | says the metal plates were too big | | |
| | | | | and fracture did not heal properly   CONT'D | | |

(1) of (3)

DRUG ALLERGIES?

[✓] NO      [ ] YES

SUPPLEMENT TO DENTAL PROGRESS NOTES

NAME (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

ANDERSON, ROBBYE R

F 39592

11-21-57

21

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 3/9/07 | 8:00 | | — NPO p midnight 3/20/07 |
| | | | — New DOS 3/21/07 (referral made out) |
| | | | _____ , MD |
| | 3/9/07 | | T.R. |
| | | | |
| 3/21/07 | 1445 | | — Admit to OPHU |
| | | | — Soft diet x 2 wks. |
| | | | — Keflex 500mg P.O. QID x 7 days |
| Noted 3/21/07 1445 | | | — Vicodin 5/500 ī tab P.O. Q6° PRN Pain xnday |
| | | | — Peridex 15cc P.O. swish & spit BID x 1 wk. |
| | | | T.O. Dr. Do / _____ |
| | | | |
| | | | 24° Audit Complete 3-22-07/0030 _____ |

| ALLERGIES: | INSTITUTION | ROOM/WING |
|---|---|---|
| NKA. | CRC | OPHU - #3 |

CDC NUMBER, NAME (LAST, FIRST, MI)

Anderson . R
F 39592

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA

OSP 05  93459    DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
SUPPLEMENTAL TO DENTAL PROGRESS NOTES
CDCR 237-C-1 (Rev. 04/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.

| DATE OF ACTION (month/day/year) | | | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|---|---|
| 3 | 22 | 07 | | O845 Visit at Bed #9 OPHU, per pt report | | |
| | | | | ① He first broke (LT) mandible Feb 2006 when he was not in custody + had surgery | | |
| | | | | ② Had 2nd surgery while at George Bailey Jail in San Diego May 9, 2006 where pt pt report - (LT) side of chin was numb after surgery to place plate | | |
| | | | | ③ on 3/21/07 had 3rd surgery - to remove plate (LT) side Mandible | | |
| | | | | Pt says he is OK, though numb, (LT) side and does not want any more oral surgery to repair (LT) side g mandible | | |

DRUG ALLERGIES?

☑ NO    ☐ YES

SUPPLEMENT TO DENTAL PROGRESS NOTES

NAME (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

Anderson, Robby R

F-39592

11/21/57

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D

Stephen M. Kelly, Clerk

DEC - 5 2007

Court of Appeal Fourth District

| | |
|---|---|
| THE PEOPLE, | D049483 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD198047) |
| ROBBYE R. ANDERSON, | |
| Defendant and Appellant. | |

Original

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Robbye Anderson appeals from a judgment convicting him of furnishing, giving away or offering to sell cocaine base; possession of cocaine base for sale; and possession of paraphernalia used for narcotics.  He contends the trial court erred in (1) admitting evidence of a prior offense, and (2) allowing the prosecution to reopen its case to admit booking photographs from the prior offense.  We find no error and affirm the judgment.

Court of Appeal, Fourth Appellate District, Div. 1 - No. D049483
**S159550**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

ROBBYE R. ANDERSON, Defendant and Appellant.

The petition for review is denied.

_____GEORGE___
Chief Justice

Filed: February 13, 2008

0077

# EXHIBIT A

*Exhibit (A)*

*Exhibit A*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBBYE RAY ANDERSON,<br><br>    Defendant and Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   APPELLATE COURT NO.<br>   D049483<br><br>   SUPERIOR COURT NO.<br>   SCD198047 |

APPEAL FROM THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO

---

Honorable David M. Gill, Judge

---

## INTRODUCTION

Respondent argues that the trial court properly admitted the evidence of Mr. Anderson's previous crime, and even if the trial court erred, the error was not prejudicial. Respondent is wrong. The trial court erred under Evidence Code section 352 because the past crime evidence

was highly prejudicial given its identical nature to the current crime, and

was of little probative value because Mr. Anderson was willing to stipulate

that if he possessed cocaine at all, it was for sale.

### ARGUMENT

### I.

**THE TRIAL COURT DEPRIVED MR. ANDERSON OF A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE COURT ALLOWED THE PROSECUTOR TO INTRODUCE EVIDENCE OF MR. ANDERSON'S PREVIOUS CONVICTION FOR SELLING COCAINE.**

**A.    THE ERROR.**

Respondent argues that the prior offense was relevant to Mr.

Anderson's intent to sell.  (R.B. p. 8.)[1]  As set forth in the opening brief,

however, relevancy was not the issue.  The issue was prejudicial effect

relative to probative value.  Admission of the 2000 conviction was

improper because its probative value was limited and substantially

outweighed by its prejudicial effect.  In the context of this case, there was

no debate as to Mr. Anderson's intent.  Mr. Anderson did not raise a

"possession for personal use" defense and agreed to stipulate that he would

---

[1] Respondent's brief is abbreviated as "R.B."

not raise it. (Vol. 2 R.T pp. 35, 53.)[2] Because Mr. Anderson was disputing possession itself and not making a possession for personal use defense, Mr. Anderson was willing to further stipulate that if the jury believed that Mr. Anderson possessed cocaine (i.e., that Officer Chavez was telling the truth), then that cocaine was for sale. (Vol. 2 R.T pp. 35, 53.) Because intent was not an issue, the probative value of the past crime had little weight.

Respondent argues that the past crime also showed a "common plan." (R.B. p. 5.) According to respondent, the common plan was that Mr. Anderson possessed cocaine once in 2000, and therefore possessed it for purposes of the current crime. In so arguing, respondent does not address the holding of *Old Chief v. United States* (1997) 519 U.S. 172 [117 S.Ct. 644, 136 L.Ed.2d 574], discussed at length in Mr. Anderson's opening brief, that prejudice is especially obvious when the past crime is similar to the current crime. (*Id.* at pp. 180, 184.) Rather than address this point, respondent spends several pages in its brief detailing the similarities between the crimes. (R.B. pp. 8-10.)

---

[2] The Clerk's Transcript is abbreviated as "C.T.," and the Reporter's Transcript is abbreviated as "R.T."

3

Respondent also fails to address the slim probative value in light of the proffered stipulation. Instead, respondent states in a footnote, without citation, that the prosecution was under no obligation to accept the stipulation. (R.B. p. 8.) As set forth in the opening brief, however, the United States Supreme Court made clear in *Old Chief, supra,* 519 U.S. at p. 174 that in conducting the Evidence Code section 352 analysis, the court should consider the defendant's willingness to stipulate.

By failing to address *Old Chief,* respondent misses other important arguments. First, respondent does not address the fact that *Old Chief* made clear that unfair prejudice does not necessarily mean a past crime with an emotional charge. (*Old Chief, supra,* 519 U.S. at p. 180, emphasis added.) Whereas, in the present case, the trial court erred by considering prejudice only under the limited light of inflaming emotions: "I don't think it's the kind of crime that is going to unduly inflame the passions of the jury..." (Vol. 2 R.T. pp. 32-33, 56.)

Finally, respondent does not address the fact, discussed at length in the opening brief, that the prosecution and court compounded the prejudicial effect of the 2000 crime by reopening the case so as to introduce the booking photo of Mr. Anderson from 2000. (Vol. 3 R.T. p. 237.) In effect, reopening the case put an undue emphasis on the 2000

4

crime. Because of the uniquely harmful aspects of past crime evidence, it has been held that overemphasis of the evidence can constitute reversible error even when the evidence has been admitted for a proper purpose. (*United States v. Vargas* (7th Cir. 1978) 583 F.2d 380, 387.) Accordingly, even if this court agrees with respondent that the evidence was properly admitted, this court should reverse the conviction due to the trial court's overemphasis of the past crime.

## B.    THE PREJUDICE.

Respondent argues that even if there was an error, such an error was harmless under *People v. Watson* (1956) 46 Cal.2d 818. Respondent is wrong in two respects. First, the proper standard to be applied is the reversible error test set out in *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705]. Second, even under the *Watson* standard, this court should reverse.

As set forth in the opening brief, the trial court error not only constituted a violation of state evidence law, but also constituted one of constitutional dimension. The court's error denied Mr. Anderson his right to a fair trial because the evidentiary error so infused the trial with unfairness as to deny due process of law. (See *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, holding that character evidence of propensity –

defendant's possession of and fascination with knives – did not support any permissible inference relevant to defendant's prosecution for the stabbing-murder of his mother, and violated due process; see also, *Estelle v. McGuire* (1991) 502 U.S. 62, 75 [112 S.Ct. 475, 116 L.Ed.2d 385], *Terrovona v. Kincheloe* (9th Cir. 1988) 852 F.2d 424, 428-429, and *Bryson v. State of Alabama* (5th Cir. 1981) 634 F.2d 862.) Because this error is of federal as well as state constitutional dimension, violating as it does Mr. Anderson's Sixth and Fourteenth Amendment rights, the court must apply the reversible error test set out in *Chapman v. California, supra,* 386 U.S. 18.

Nonetheless, no matter what standard is applied, looking at the evidence to evaluate its possible injurious effect on Mr. Anderson's case leads to the conclusion that it contributed to the conviction. The evidence against Mr. Anderson was far from overwhelming. The only person to have seen the alleged three grams of cocaine base was Officer Chavez. That cocaine was never found. Officer Chavez was subsequently moved from undercover work back to patrol duty. This case boiled down to believability. Officer Chavez was proven to have credibility problems when his testimony at trial contradicted his testimony at the preliminary hearing. Had the jury not seen and heard the other offense evidence, it was

reasonably probable appellant would have been acquitted. (*People v. Malone* (1988) 47 Cal.3d 1, 22; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The jury likely would have believed Mr. Anderson's version of events had the jury not learned that Mr. Anderson was arrested in 2000 for the same crime. The 2000 crime played "a dominant part of the evidence against the accused" and was "both highly prejudicial and minimally relevant to any legitimate purpose." (*People v. Collie* (1981) 30 Cal.3d 43, 64.) Therefore, respondent cannot meet its burden to prove its improper admission was harmless under *Chapman.*

Moreover, Mr. Anderson would prevail even if the *Watson* standard were applied because it was reasonably probable that a result more favorable to Mr. Anderson would have been reached in the absence of the error. (*People v. Watson, supra,* 46 Cal.2d 818.) Because the evidentiary error made it clear to the jury that Mr. Anderson was a repeat cocaine dealer, the evidentiary error deprived Mr. Anderson of the opportunity to effectively argue he did not sell cocaine base here. In the absence of that error, there was a reasonable chance that the outcome of the case would have been different (*i.e.*, Mr. Anderson would have not been disbelieved and found guilty).

## CONCLUSION

As set forth in Mr. Anderson's opening brief and above, reversal is warranted because the trial court erred under Evidence Code section 352 by improperly allowing the introduction of Mr. Anderson's previous conviction for selling cocaine. In so doing, the court deprived Mr. Anderson of his Sixth and Fourteenth Amendment rights to due process and a fair trial.

Respectfully submitted,

Thomas Owen
Attorney for Appellant


Dated: July 13, 2007

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ROBBYE RAY ANDERSON,
                    PETITIONER

                    V.

                    RESPONDENT
          and
THE PEOPLE OF THE STATE
OF CALIFORNIA.

SUPREME COURT NO.
S159550

APPELLATE COURT NO.
D049483

SUPERIOR COURT NO.
SCD198047

APPEAL FROM THE FOURTH DISTRICT
COURT OF APPEAL DIVISION ONE OF
THE STATE OF CALIFORNIA, ALSO
THE SUPREME COURT OF THE STATE
OF CALIFORNIA.

INTRODUCTION

Appellant appealed a Judgement of the superior court of San Diego county, David M. Gill, Judge before the Fourth District court of appeal. Appellant was convicted for FURNISHING, GIVING AWAY or OFFERING TO SELL COCAINE BASE; (2) POSSESSION OF COCAINE BASE FOR SALE; (3) and POSSESSION OF PARAPHERNALIA. The Judgement by the lower court and the Supreme Court was DENIED.

9

## ISSUES

The Trial Court erred in admitting evidence of a prior offense and by allowing the Prosecution to reopen its case to admit booking photographs from the Prior Offense.

Respondent argues that the Trial Court properly admitted the evidence of Appellant's previous crime, and if the Trial Court erred, the error was not PREJUDICIAL. Respondent is WRONG. The Trial Court erred under Evidence Code section 352 because the past crime evidence was highly preJudicial given its identical nature to the current crime, and was of little probative value because Appellant was willing to stipulate that if he possessed cocaine at all, it was for sale.

The Trial Court deprived Petitioner of a Fair Trial and Due Process of Law under the Sixth and Fourteeth Amendments to the United States Constitution when the Court allowed the Prosecutor to introduce evidence of the Appellant's previous conviction for selling cocaine.

## A. THE ERROR.

Respondent argued that the prior offense was relevant to Appellant's intent to sell. (R.B.P.8) as set fourth in the Appellant's opening brief, however, relevancy was not the issue. The issue was prejudicial effect relative to probative value. Admission of the 2000 conviction was improper because its probative value was limited and substantially outweighed by its predjudicial effect.

Respondent argues that the past crime also showed "common plan". (R.B.P.5.) According to Respondent, the common plan was that the Appellant possessed cocaine once in 2000, and therefore possessed it for purposes of the current crime. In so arguing, Respondent does not address the holding of OLD CHIEF V. UNITED STATES (1997) 519 U.S. 172 [117 us CT. 644, 136 L. Ed. 2d 574], discussed at length on Appellant's opening brief, that prejudice is especially obvious when the past crime is similar to the current crime. (Id. at PP. 180, 184 Rather than address this point, Respondent exhausted several pages in its brief detailing the similarities between the crimes. R.B, PP, 8-10.) By failing to address Old Chief, Respondent misses other important arguments. First, Respondent does address the fact that Old chief made that unfair prejudice does not necessarily mean a past crime with an emotional charge (old Chief, supra, 519 U.S. at p.180, emphasis added.) Where as, in the present case, the Trial Court erred by considering

prejudice only under the limited light of inflaming emotions. "I don't think it's the kind of crime that is going to unduly inflame the passions of the Jury.." (Vol. 2 R.T. PP. 32-33, 56.)

## REQUEST FOR JUDICIAL NOTICE

Because of the uniquely harmful aspects of the past crime evidence, it has been held that overemphasis of the evidence can constitute reversible error when the evidence has also been admitted for a proper purpose. (United States V. Vargas (7th Cir. 1978) 583 F. 2d 380, 387.) Although the 4th District Court of Appeal Division One agreed with Respondent in the instant case, this Court should reverse the conviction due to the Trial Court's overemphasis of the past crime.

## THE PREJUDICE

Respondent argued that even if there was an error, such an error was harmless under People v. Watson (1956) 46 Cal. 2d 818. Respondent is wrong in two respects. First, the proper standard to be applied is the reversible error test set out in Chapman V. California (1967) 386 U.S. 18 [87 S. CT. 824, 17 L. Ed 2d. 705]. Second, even under the Watson Standard, this court should reverse.

12

# DENIAL OF DUE PROCESS

As set forth in the opening brief, the Trial court error not only constituted a violation of state evidence law, but also constituted one of Constitutional dimension. The court's error denied Appellant his right to a fair Trial because the evidentiary error so infused as the Trial Court was unfair as to deny the Petitioner his Due Process of Law. (SEE Mckinney v. Rees (9th cir. 993) 993 F.2d 1378, withholding vital character evidence of propensity with defendant's possession of and fascination with knives which did not support any permissible inference relevant to defendant's prosecution for the stabbing and murder of his mother, and violated due process; See also, Estelle v. McGuire (1991) 502 U.S. 62, 75 [112 S.C.T. 475 116 L. Ed. 2d 385], Terrovona v. Kincheloe (9th Cir. 1988) 852 F.2d 424, 428-429, and Bryson v. State of Alabama 5th Cir. 1981) 634 F.2d 862.) Because this error is of Federal Statute as well as state Statute Constitutional dimension has been violated under the Due Process and Equal Amendment Rights. The Court must apply the reversible error test out in Chapman v. California, Supra 386 U.S. 18.

The effect on the Appellant's case leads to the conclusion that it contributed to the conviction. The evidence against the Appellant was far from overwhelming. The Only person to have seen the alleged three grams of cocaine base was Officer Chavez. That cocaine was never found.

# CREDIBILITY

Officer Chavez was proven to have credibility problems when his testimony at Trial contradicted his testimony at the Preliminary Hearing. Had the Jury not seen and heard the other offense evidence of the 2000 case, it was more reasonably probable the appellant would have been acquitted. People v. Malone (1988) 47 Cal. 3d 1, 22; People v. Watson (1956) 46 Cal. 2d 818, 836.) The Jury likely would have believed the Appellant's version of events had the Jury not learned that the Appellant was arrested in 2000 for the "what considered as a similar crime. The 2000 case was Sales. The 2006 current Case is Furnishing, giving away. The 2000 crime played "a dominant part of the evidence against the accused" and was " both highly prejudicial and minimally relevant to any legitimate purpose." (People v. Collie (1981) 30 Cal. 3d 43, 64.) There fore, Respondent cannot meet its burden to prove its improper admission was harmless under chapman. Moreover, Appellant would prevail even if the watson standard were applied because it was reasonably probable that a result more favorable to Appellant would have been reached in the absence of the error. (People v. Watson, supra, 46 Cal. 2d 818.). Because the evidentiary error made it clear to the Jury that Appellant was a repeated cocaine dealer, the evidentiary error deprived Appellant of the opportunity to effectively argue he did not sell or give away, cocaine base here.

14

# PETITIONER PRAYER FOR RELIEF

Petitioner prays for the following relief by the U.S. District Court.

I. That the District Court review petitioner's case.

II. Reverse the 4th District Court of Appeals findings.

III. Remand for Retrial in the U.S. District Court or Hearing before this court.

IV. Review the amount of Sentence and Reduce the 10 yrs.

V. That petitioner is brought before the District Court in reguards to this petition.

Dated On June 3, 2008

ROBBYE RAY ANDERSON
PRINTED NAME

_Robbye Anderson_
SIGNATURE OF PETITIONER

15

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT 28                                    HON. DAVID M. GILL, JUDGE

---

THE PEOPLE OF THE STATE OF
CALIFORNIA,

        PLAINTIFF,

      -VERSUS -

ROBBYE R. ANDERSON,

        DEFENDANT.

CASE NO. SCD198047

---

REPORTER'S TRANSCRIPT OF PROCEEDINGS
SAN DIEGO, CALIFORNIA

JULY 24, 2006

APPEARANCES:

FOR THE PLAINTIFF:        OFFICE OF THE DISTRICT ATTORNEY
                           BY:  AMY MAUND, ESQ.
                           DEPUTY DISTRICT ATTORNEY
                           330 WEST BROADWAY
                           SAN DIEGO, CA 92101

FOR THE DEFENDANT:       OFFICE OF THE PUBLIC DEFENDER
                           BY:  ANTHONY HERNANDEZ
                           233 UNION STREET
                           SAN DIEGO, CA 92101

OPHELIA CHAVEZ CORREA, CSR #2326
OFFICIAL COURT REPORTER
SAN DIEGO COUNTY COURTHOUSE
220 WEST BROADWAY
SAN DIEGO, CA 92101

1    STATE OF CALIFORNIA   )
                           )    SS:
2    COUNTY OF SAN DIEGO   )

3

4

5

6

7            I, LORI RILLING, CERTIFIED SHORTHAND REPORTER,

8    CERTIFICATE NO. 9460, AN OFFICIAL SHORTHAND REPORTER, IN AND

9    FOR THE COUNTY OF SAN DIEGO, FOR THE STATE OF CALIFORNIA, DO

10   HEREBY CERTIFY THAT I REPORTED IN MACHINE SHORTHAND THE

11   PROCEEDINGS IN THE WITHIN CASE, AND THAT THE FOREGOING

12   TRANSCRIPT, CONSISTING OF PAGES NUMBERED FROM           IS A

13   TRUE AND CORRECT COMPLETE TRANSCRIPT OF THE PROCEEDINGS IN THIS

14   CASE.

15            DATED AT SAN DIEGO, CALIFORNIA ON THIS 21ST DAY OF

16   APRIL, 2006.

17

18

19

20

21

22                                  _____
                                    LORI RILLING, CSR #9460
23                                  OFFICIAL COURT REPORTER

24

25

26

27

28

231

STATE OF CALIFORNIA        )
                           :    SS:
COUNTY OF SAN DIEGO        )


I, ROBERT F. STARK, CSR, CERTIFICATE NUMBER 5104, AN

OFFICIAL REPORTER OF THE SUPERIOR COURT OF THE STATE OF

CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO, HEREBY CERTIFY

THAT I REPORTED IN MACHINE SHORTHAND THE PROCEEDINGS IN THE

WITHIN CASE, AND THAT THE FOREGOING TRANSCRIPT, CONSISTING OF

PAGES NUMBERED FROM          INCLUSIVE, IS A FULL, TRUE,

AND CORRECT TRANSCRIPTION OF THE PROCEEDINGS IN THIS CASE.

DATED AT SAN DIEGO, CALIFORNIA, THIS 17TH DAY OF

AUGUST, 2006.


_____
            ROBERT F. STARK
         OFFICIAL COURT REPORTER

STATE OF CALIFORNIA,)

                    )  SS

COUNTY OF SAN DIEGO.)


          I, OPHELIA CHAVEZ CORREA, DO HEREBY CERTIFY THAT I AM AN

OFFICIAL COURT REPORTER IN THE SUPERIOR COURT OF THE

STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO;

THAT AS SUCH REPORTER, I TOOK DOWN IN SHORTHAND NOTES THE

PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE; AND THAT THE

FOREGOING TRANSCRIPT CONSISTING OF PAGES FROM

CONTAINS A FULL, TRUE AND CORRECT RECORD OF MY SHORTHAND NOTES

SAID PROCEEDINGS HAD AT SAID TIME AND PLACE.

          DATED AT SAN DIEGO, CALIFORNIA, THIS _____16ᵗʰ_____ DAY OF

_October_____, 2006.



                              _Ophelia Chavez Correa_____
                              OPHELIA CHAVEZ CORREA,
                              CSR #2326
                              OFFICIAL COURT REPORTER

EXHIBIT A                DETECTIVE DARIN RIES
                         TRIAL TESTIMONY                      191

1       THE CLERK:  PLEASE STATE YOUR NAME AND SPELL YOUR NAME FOR

2  THE RECORD.

3       THE WITNESS:  DARIN RIES.  D-A-R-I-N   R-I-E-S.

4       THE CLERK:  THANK YOU.

5

6                          DIRECT EXAMINATION

7  BY MS. MAUND:

8       Q    HOW ARE YOU EMPLOYED?

9       A    AS A DETECTIVE WITH THE SAN DIEGO POLICE DEPARTMENT.

10      Q    HOW LONG HAVE YOU BEEN A PEACE OFFICER?

11      A    A LITTLE OVER EIGHTEEN AND A HALF YEARS.

12      Q    AND WHAT IS YOUR CURRENT ASSIGNMENT?

13      A    I'M ASSIGNED TO THE NARCOTICS SECTION.

14      Q    AND WHAT DO YOU DO ON A DAILY BASIS?

15      A    MY PRESENT ASSIGNMENT WE HANDLE NARCOTICS COMPLAINTS,

16  CITIZEN CALLING COMPLAINTS.  WE DO BACKGROUND ON THEM, RESEARCH

17  THEM.  IF WE CAN ORGANIZE A BUY/BUST OR SOME TYPE OF A BUY

18  OPERATION TO PURCHASE NARCOTICS, WE WILL DO THAT.  IF WE CAN'T DO

19  THAT, WE WILL SURVEIL THE TARGET, THE RESIDENCE, PERSON, FOLLOW

20  UP ON THAT, TRY TO DO -- TO CLOSE THE COMPLAINT, TAKE CARE OF THE

21  DRUG PROBLEMS.

22      Q    HOW MANY ACTIVE CASES DO YOU HAVE GOING ON

23  APPROXIMATELY RIGHT NOW?

24      A    COMPLAINTS I PERSONALLY HAVE APPROXIMATELY THIRTY.

25  THAT COVERS WESTERN DIVISION WHICH IS OCEAN BEACH, NORTH PARK,

26  HILLCREST, LINDA VISTA.  ALSO CENTRAL DIVISION WHICH COVERS ALL

27  DOWNTOWN, LOGAN HEIGHTS, GOLDEN HILL, BANKERS HILL.

28      Q    AND OTHER THAN COMPLAINTS, DO YOU HAVE A NUMBER OF

16

EXHIBIT
A

1    REFRESH YOUR MEMORY.

2         Q    ALL RIGHT.

3              NOW, YOU WERE CONTACTED AS RELATES TO THIS CASE FOR AN

4    INCIDENT JANUARY 21ST, 2000, INVOLVING ROBBYE ANDERSON.

5    DETECTIVE RIES, DO YOU HAVE ANY INDEPENDENT KNOWLEDGE OF THIS

6    EVENT?

7         A    NO, I DO NOT.

8         Q    BUT HAVE YOU HAD AN OPPORTUNITY TO LOOK AT THE PACKAGE

9    THAT YOU JUST DESCRIBED OR WAS THERE A PACKAGE THAT WAS AVAILABLE

10   TO YOU TO LOOK AT TO TRY TO REFRESH YOUR MEMORY?

11        A    YES.

12        Q    AND WHEN YOU LOOKED AT THE PACKAGE, DID YOU RECOGNIZE

13   ANY OF THE DOCUMENTS?

14        A    YES.

15        Q    HOW DID YOU RECOGNIZE THEM?

16        A    THE INVESTIGATOR'S REPORT, THAT'S MY FORMAT, THE FORMAT

17   I USE.  EACH INVESTIGATOR WILL HAVE HIS OWN STYLE, THE WAY HE

18   WRITES HIS REPORTS.  SO I RECOGNIZE MY REPORT THAT WAY.

19             I ALSO ON THE IMPOUND TAGS RECOGNIZED -- I IMPOUNDED

20   THE NARCOTICS RECOVERED THAT DAY, AND I RECOGNIZED MY WRITING.

21        Q    AND AS THE IMPOUNDED NARCOTICS ON THAT DAY, WHAT DID

22   YOU -- WAS IT IN YOUR PERSONAL HANDWRITING?

23        A    YES.

24        Q    AND WHAT DID YOU IMPOUND ON THAT DAY?

25        A    ONE PIECE OF ROCK COCAINE I BELIEVE.

26        Q    AND SO YOU WROTE THAT IMPOUND REPORT AND THE REPORT

27   THAT YOU READ THAT HAD YOUR NAME ON THAT.  DID THAT DOCUMENT THE

28   INCIDENT REGARDING WHAT WE HAVE REFERRED TO AS A BUY/BUST OR AN

17

EXHIBIT A

1    Q    BUT IN NO WAY DID YOU SIGN THIS REPORT THAT YOU ARE

2    SAYING IS YOURS.

3    A    I JUST TYPED MY NAME IN.  I DON'T SIGN THEM.

4    Q    NOW, DO YOU OBSERVE -- DID THIS PERSON WHO YOU

5    IDENTIFIED AS ROBBYE ANDERSON GIVE YOU SEVERAL PIECES OF ROCK

6    COCAINE?

7    A    NO, HE DID NOT.

8    Q    OKAY.

9         WHAT DID YOU OBSERVE EXACTLY?

10   A    FROM THE BEGINNING?  FROM WHERE?

11   Q    WELL, AS FAR AS THE ROCK COCAINE, WHO GAVE WHO WHAT AS

12   FAR AS THE COCAINE OR THE --

13   A    ARE YOU ASKING FOR MY CONTACT WITH MR. ANDERSON?

14   Q    YES.

15   A    OR ARE YOU ASKING FOR THE TOTAL INCIDENT?

16   Q    WELL, I'M ASKING FOR THE TOTAL INCIDENT.

17   A    OKAY.

18        I WAS ON THE SOUTH SIDE OF THE STREET, 1500 OR 1600 K

19   STREET.  I NOTICED A GROUP ON THE NORTH SIDE.  I APPROACHED THE

20   GROUP.  AS I GOT CLOSER, PROBABLY WITHIN FIFTEEN FEET, I SAW MR.

21   ANDERSON WITH HIS LEFT HAND OUT, PALM UP.  I SEEN HIM PICK UP A

22   SMALL, WHITE, ROCK-LIKE OBJECT, HAND IT TO A MALE.  THE MALE

23   THERE PUT THAT OBJECT IN HIS LEFT FRONT PANTS POCKET.

24   Q    SO YOU ACTUALLY OBSERVED THIS PERSON THAT YOU SAID IS

25   ROBBYE ANDERSON GIVE THIS OTHER PERSON WHAT APPEARED TO BE ROCK

26   COCAINE.

27   A    CORRECT.

28   Q    AND THIS OTHER PERSON IS ALSO IDENTIFIED IN YOUR

18

# EXHIBIT A

1  REPORT, CORRECT?

2      A    CORRECT.

3      Q    AND THAT PERSON WOULD BE MR. JOSEPH KAISER.

4      A    YES.

5      Q    YOU CAN LOOK AT YOUR REPORT.

6      A    CAN I LOOK AT IT REALLY QUICK?

7      Q    YES, YOU COULD.

8      A    THAT'S CORRECT.

9      Q    SO YOU ACTUALLY OBSERVED THIS TRANSACTION TAKE PLACE

10  RIGHT IN FRONT OF YOU.

11      A    YES.

12      Q    OKAY.

13      NOW, WHAT WAS GIVEN THAT APPEARED TO BE ROCK COCAINE

14  BASE, DID YOU TEST IT YOURSELF?

15      A    YES, I DID.

16      Q    YOU GAVE IT A PRESUMPTIVE TEST?

17      A    THAT IS CORRECT.

18      Q    OKAY.

19      WHAT EXACTLY IS THAT?

20      A    A PRESUMPTIVE TEST?

21      Q    YES.

22      A    IT'S A SMALL CHEMICAL PLASTIC KIT WE CALL THEM NIK

23  KITS, N-I-K.  WHAT YOU DO IS TAKE A SMALL PORTION OF THE

24  SUBSTANCE, YOU PLACE IT INSIDE IT.  THERE'S LITTLE CAPSULES

25  INSIDE IT.  YOU SEAL BECAUSE IT IS CHEMICALS, AND YOU POP THE

26  CAPSULES.  DEPENDING ON WHAT KIND OF DRUG IT IS, THEY HAVE THEM

27  SPECIFICALLY MADE FOR COCAINE.  WHEN YOU POP THAT, THE CHEMICALS

28  WORK THROUGH AND COMBINE WITH THE CONTROLLED SUBSTANCE, AND IT

EXHIBIT A     THE COURT,     33

1   SERIOUS OFFENSE.  AND I DON'T THINK IT'S THE KIND OF CRIME THAT

2   IS GOING TO UNDULY INFLAME THE PASSIONS OF THE JURY, WHERE THE

3   JURY IS GOING TO ACT ON THE BASIS OF EMOTION RATHER THAN RATIONAL

4   THOUGHT.  THAT'S SOMETHING I'M SURE WE WILL DISCUSS IN JURY

5   SELECTION.  AND I EXPECT PEOPLE WHO HAVE HAD A PERSONAL

6   EXPERIENCE WITH CONTROLLED SUBSTANCES, PARTICULARLY COCAINE BASE,

7   SOME OF THOSE WILL PROBABLY BE EXCUSED DURING THE SELECTION

8   PROCESS.  I MEAN THOSE ARE PEOPLE FOR WHOM THAT EVIDENCE MIGHT

9   HAVE SOME PARTICULAR EMOTIONAL CONTENT.  BUT I EXPECT WE WILL

10  BECOME AWARE OF THAT PROBLEM IF IT IS A PROBLEM DURING THE JURY-

11  SELECTION PROCESS.  BUT JUST IN GENERAL THEY ARE NOT PARTICULARLY

12  EMOTIONAL IN CHARGE OR INFLAMMATORY SORT OF OFFENSES I THINK.

13          MR. HERNANDEZ, WHAT'S YOUR POSITION IN THAT REGARD?

14          MR. HERNANDEZ:  MY POSITION IS, YOUR HONOR, THAT I THINK

15  THERE ARE SUFFICIENT DISSIMILARITIES BETWEEN THE OTHER ACT WHICH

16  THE PEOPLE PROPOSE USING AND THE CASE AT ISSUE.  ALTHOUGH BOTH

17  INVOLVE DRUGS AND ALTHOUGH BOTH INVOLVE THE SALE OF DRUGS.

18          THE COURT:  MAYBE I MISUNDERSTOOD YOU.  YOU SAY THEY ARE NOT

19  SUFFICIENTLY SIMILAR OR THEY ARE?

20          MR. HERNANDEZ:  I AM SAYING THEY ARE NOT.  I CAN POINT THREE

21  AREAS FROM THE TOP OF MY HEAD.

22          THE COURT:  SURE.

23          MR. HERNANDEZ:  ONE AREA IS THAT -- I DON'T KNOW ABOUT THE

24  OTHER CASE, BUT IN THIS AREA THERE'S A THIRD PARTY INVOLVED WHO

25  IS ACTUALLY THE OWNER OF THE VEHICLE WHICH MY CLIENT WAS CLOSE TO

26  WHERE MY CLIENT CAME FROM.

27          THE COURT:  AS I UNDERSTAND IN THIS CASE, I DON'T KNOW THAT

28  WE ARE GOING TO GET INTO THE OWNERSHIP OF THE VEHICLE, BUT IN THE

EXHIBIT A

1  OTHER CASE THERE WAS APPARENTLY THE BLACK FEMALE AND A FELLOW, AN

2  INDIVIDUAL BY THE NAME OF MR. KAISER.  WERE EITHER ONE OF THEM

3  ARRESTED DO YOU THINK?

4       MS. MAUND:  KAISER WAS A CO-DEFENDANT.

5       THE COURT:  THAT'S HOW HE'S REFERRED TO.  SO WE HAVE

6  CO-DEFENDANTS IN BOTH CASES AS I UNDERSTAND IT.

7       MS. HERNANDEZ:  I DON'T THINK MR. DELBERT ROSE WAS EVER A

8  CO-DEFENDANT IN THIS CASE.

9       THE COURT:  WELL, I THINK CO-DEFENDANT MAY EMBRACE MORE THAN

10  LITERALLY OR STRICTLY BEING CHARGED WITH THE SAME CRIME.

11       MR. HERNANDEZ:  IF I CAN CONTINUE ON, YOUR HONOR, . . .

12       THE COURT:  SURE.  I MEAN THAT'S MY REACTION TO THAT.  I

13  THINK THAT'S TOO STRICT INTERPRETATION.  WE ARE TALKING HERE

14  ABOUT INTENT.  IF WE ARE TALKING ABOUT IDENTITY, THERE HAS TO BE

15  A VIRTUAL FINGERPRINT OR SIGNATURE.

16       MR. HERNANDEZ:  RIGHT.

17       THE COURT:  BUT WE ARE JUST TALKING ABOUT INTENT.  THE CASES

18  SAY THE SIMILARITIES DON'T HAVE TO BE THAT STRIKING TO PROVE

19  INTENT.

20       MR. HERNANDEZ:  THE OTHER DISSIMILARITIES IS, YOUR HONOR, I

21  KNOW THE PEOPLE IN THE PROPOSED OTHER ACTS THERE WAS PRE-RECORDED

22  MONEY FOUND ON THE DEFENDANT'S PERSON.  IN THAT CASE THIS IS NOT

23  THE CASE.  THE CLIENT NEVER TOUCHED ANY PRE-RECORDED MONEY AT

24  ALL.  THERE IS NEVER A COMPLETION.  IT'S OUR POSITION THE

25  POLICEMAN IS TRYING TO GET MY CLIENT TO SELL HIM DRUGS.  THAT

26  DOES NOT HAPPEN; THERE'S NOTHING EXCHANGED IN THIS CASE.

27       THE COURT:  THAT'S MY UNDERSTANDING.  I DO UNDERSTAND THAT.

28            THE SIMILARITIES HERE I THINK ARE THE DEFENDANT'S

21

EXHIBIT A

1  ACTIONS, AND THE DEFENDANT'S STATEMENTS IN THE CASE I THINK ARE

2  PRETTY SIMILAR.  THE FACT THAT IN OUR CASE, OUR INSTANT CASE, IT

3  DIDN'T RESULT IN A CONSUMMATED SALE, I MEAN I TAKE THAT POINT.

4  BUT I'M NOT SURE HOW SIGNIFICANT THAT IS.  I THINK THE -- A

5  REASONABLE INTERPRETATION OF THE OFFICER'S TESTIMONY IN OUR CASE

6  MAY BE THAT HE WAS SORT OF BACKED INTO A CORNER BECAUSE HE WASN'T

7  ABOUT TO SMOKE THAT SAMPLE THAT THE DEFENDANT GAVE HIM.  AND SO

8  HE REALLY COULDN'T PUSH THINGS TOO MUCH MORE.  AND HE, I THINK,

9  AT MY READING OF HIS TESTIMONY AT THE PRELIM., HE REALLY GAVE THE

10  ARREST SIGNAL SOONER THAN HE THOUGHT HE OUGHT TO.  AND HE REALLY

11  THOUGHT THAT HE ULTIMATELY WAS GOING TO GET A TWENTY FROM YOUR

12  CLIENT.  BUT I UNDERSTAND THAT DIDN'T MATERIALIZE.  SO I TAKE

13  THAT POINT.

14       MR. HERNANDEZ:  MY OTHER POINT IS, YOUR HONOR, THIS IS

15  MAINLY THE CRUX OF MY ARGUMENT, IS THAT THIS IS NOT A SITUATION

16  WHERE MY CLIENT ADMITTED POSSESSING IT, BUT HE WASN'T INTENDING

17  TO SELL OR ANYTHING LIKE THAT.  MY CLIENT FROM THE GET-GO HAS

18  DENIED THAT HE POSSESSED EVEN THE DRUGS IN THIS CASE.  SO WE ARE

19  NOT GOING TO BE ARGUING SIMPLE POSSESSION VERSUS POSSESSION FOR

20  SALE WHICH WOULD MAKE INTENT IRRELEVANT.

21       IN FACT, IN THE POLICE REPORT MY CLIENT ACTUALLY GIVES

22  A STATEMENT TO THE POLICE OFFICER WHILE HE'S BEING ADMONISHED OR

23  AFTER BEING ADMONISHED THAT DIDN'T COME OUT IN THE PRELIM.  I DID

24  NOT GIVE YOU DRUGS.  I DID NOT SELL YOU ANY DRUGS.  AND THIS IS

25  TAKEN FROM THE POLICE REPORT.

26       SO I REALLY, WITH ALL DUE RESPECT, YOUR HONOR, I THINK

27  ONCE THE JURY HEARS ABOUT THAT OTHER ACT WHICH THE PEOPLE WANT TO

28  INTRODUCE, I THINK IT WOULD BE UNDULY PREJUDICIAL, AND I THINK

22

DEFENDANT: Line 23-25- This was stated by the defendant during
The time Officer Chavez was stating The charges
to the defendant, at the police station.

EXHIBIT A

1  THEY WILL CONVICT BASED ON THAT PAST CONDUCT ON THE PRESENT

2  CRIME.

3        I THINK THERE IS DEFINITELY ISSUES OF FACT IN THIS

4  CASE.  BASICALLY THE JURY IS GOING TO HAVE TO DECIDE WHO DO YOU

5  BELIEVE IN THIS CASE.

6        THE COURT:  I DO UNDERSTAND THAT YOUR CLIENT APPARENTLY HAS

7  CONSISTENTLY SAID I NEVER SOLD YOU ANYTHING.  BUT I THINK THE

8  EVIDENCE, AT LEAST IT WILL BE REASONABLE FOR THE JURY TO CONCLUDE

9  FROM THE EVIDENCE THAT HE DID.  AND I THINK -- MISS MAUND, DO YOU

10 UNDERSTAND THAT THE LITTLE PIECE THAT WAS GIVEN AND URGING THE

11 UNDERCOVER OFFICER TO GET IN THE CAR AND SMOKE THAT PIECE, THAT

12 THAT ACTUALLY CHANGED HANDS, THAT THE DEFENDANT ACTUALLY GAVE HIM

13 THAT LITTLE PIECE, OR DID HE JUST SHOW THAT TO HIM?

14       MS. MAUND:  MY UNDERSTANDING THE EVIDENCE WILL SHOW HE GAVE

15 I THINK THREE SMALL PIECES OF ROCK COCAINE TO THE OFFICER WHO HAD

16 IT AS HE WALKED AWAY FROM THE CAR, AND THEN HE DID THE SIGNAL,

17 AND THEN HE, THE OFFICER, DETECTIVE, IMPOUNDED IT.  AND THAT'S

18 THE SUBSTANCE THAT FRANK HEALY WILL COME IN AND SAY IT'S A .07

19 GRAMS OF COCAINE BASE.

20       THE COURT:  THAT'S MY UNDERSTANDING.  I MEAN NOW IF THE

21 DEFENDANT TESTIFIES, HE MAY SAY I NEVER EVEN GAVE HIM THOSE THREE

22 LITTLE PIECES.  BUT I THINK THE OFFICER IS GOING TO TESTIFY THAT

23 HE DID.  AND, THEREFORE, IT WILL BE REASONABLE FOR THE JURY

24 MAYBE, DEPENDING ON WHO THEY BELIEVE, TO DECIDE THAT THOSE THREE

25 LITTLE PIECES, THOSE LITTLE SAMPLES, IF YOU WILL, ACTUALLY WERE

26 -- CHANGED HANDS OR ACTUALLY WERE GIVEN TO THE OFFICER BY YOUR

27 CLIENT.

28       SO I THINK THAT'S -- TO ME THAT'S NOT REALLY A

EXHIBIT A

1  DISTINCTIVE DISSIMILARITY FRANKLY.  IT'S NOT A COOKIE CUTTER,

2  IT'S NOT AN EXACT REPLICATION OF THE PRIOR SITUATION, I DO

3  UNDERSTAND THAT; BUT I SAY THE CASES SEEM TO BE PRETTY CLEAR THAT

4  DEPENDING ON THE THEORY OF ADMISSIBILITY, IDENTITY REQUIRES THE

5  GREATEST DEGREE OF SIMILARITY.  INTENT, MODUS OPERANDI, SOME

6  OTHER THEORIES REQUIRE LESS SIMILARITY.

7         AS FAR AS UNDUE PREJUDICE, I THINK THE CASES ARE LEGION

8  THAT IT IS NOT UNDUE PREJUDICE WITHIN THE MEANING OF 352 SIMPLY

9  BECAUSE IT TENDS TO PROVE THE CASE.  ALL THE PEOPLE'S EVIDENCE

10  TENDS TO PROVE THE CASE AGAINST THE DEFENDANT.  SO UNDUE

11  PREJUDICE MEANS THAT IT'S GOING TO INFLAME THE PASSIONS OF THE

12  JURY AND EMOTION IS GOING TO RULE OVER REASONABLE, RATIONAL

13  CONSIDERATION OF THE EVIDENCE.  AND FOR THE REASONS INDICATED

14  EARLIER, I DON'T THINK THERE'S A SUBSTANTIAL DANGER OF THAT IN

15  THIS CASE FRANKLY.  UNLESS I'M MISSING SOMETHING.

16      MR. HERNANDEZ:  I JUST WANT TO MAKE MY RECORD.

17      THE COURT:  ABSOLUTELY.

18      MR. HERNANDEZ:  I CAN UNDERSTAND THE COURT'S RULING,

19  UNDERSTANDING MY CLIENT'S ONLY STATEMENT WAS I DID NOT SELL YOU

20  ANYTHING.  WE ARE TALKING AGAIN NOT JUST SELLING BUT FURNISHING

21  AS WELL.

22      THE COURT:  I THINK HE THINKS HE WAS REAL CUTE BECAUSE HE

23  DIDN'T ACTUALLY -- HE TRIED TO GET THE OFFICER TO SMOKE IT.  AND,

24  OF COURSE, THE OFFICER WASN'T ABOUT TO DO THAT.  SO I THINK YOUR

25  CLIENT IS REAL CUTE, HE THINKS HE'S REAL CUTE, BECAUSE HE DIDN'T

26  ACTUALLY SELL ANYTHING.

27      MR. HERNANDEZ:  IF THE COURT CAN PERMIT ME, I'M TAKING THIS

28  FROM THE POLICE REPORT, THE ENTIRE QUOTE FROM MY CLIENT AFTER HE

24

DEFENDANT: Judge David M. Gill statement on line 22-28 shows PREJUDICE against the defendant before the Trail even started, which he helped with anything to have the defendant found guilty.

EXHIBIT A

1    MATTERS BEFORE WE -- THE JURORS PRESUMABLY ARE BACK OUTSIDE NOW.

2    IT'S FIVE AFTER 2:00.  I DON'T WANT TO KEEP FORTY-FIVE PEOPLE

3    WAITING TOO LONG.

4          MS. MAUND:  YOUR HONOR, THE ONLY THING I HAD OTHER THAN THE

5    MOTION TO EXCLUDE WITNESSES THAT HAS BEEN GRANTED WAS SONIA

6    DANIELS ANDERSON AS A DEFENSE WITNESS.  MR. HERNANDEZ TOLD ME

7    RIGHT BEFORE WE CAME IN TODAY A SIMPLE OFFER, BUT I JUST WANTED

8    TO MAKE SURE THAT THAT'S ALL THE DISCOVERY HE HAD WAS THE ONE-

9    SENTENCE OFFER OF PROOF THAT SHE WOULD BE PROVIDING FINANCIAL

10   BACKGROUND OF THE DEFENDANT.  'CAUSE IT WAS NEWS TO ME SHE WAS

11   TESTIFYING.  I WOULD LIKE A DATE OF BIRTH OR ANY OTHER

12   IDENTIFYING INFORMATION SO I CAN PREPARE FOR HER TESTIMONY.

13         THE COURT:  ALL RIGHT.  WELL, THE THEORY OF ADMISSIBILITY ON

14   THE FINANCIAL ASPECT WOULD BE THAT HE DOESN'T HAVE A MOTIVE TO BE

15   SELLING.

16         MR. HERNANDEZ:  WELL, HE HAS MONEY, YOUR HONOR.  WHERE HE

17   GOT THAT MONEY FROM BASICALLY.

18         THE COURT:  THAT'S RIGHT.  IT IS ANOTHER PART OF THE

19   EVIDENCE I GUESS THAT HE HAD $116.00.

20         MR. HERNANDEZ:  RIGHT.

21         THE COURT:  SO SHE IS GOING TO EXPLAIN THE SOURCE OF THAT,

22   'CAUSE YOU EXPECT THE PEOPLE ARE GOING TO ARGUE THAT'S INDICIA OF

23   SALES.

24         MR. HERNANDEZ:  CORRECT.

25         THE COURT:  I TAKE THAT POINT.

26             ANY OBJECTION TO GIVING HER A DATE OF BIRTH?

27         MR. HERNANDEZ:  NO.  SHE IS VERY NICE.  THAT'S NOT A

28   PROBLEM.  I DON'T KNOW IT RIGHT NOW, BUT SHE WILL BE OUT THERE.

25

DEFENDANT: Lines 4-23 - Mrs. Sonja Daniels Anderson was a Vital
Witness for the defendant and was excluded out the Trial Court
Room thru-out the Trial, but the Court never called her in as
a witness.  Another act of Railroading the defendant thru Trial.

THE COURT

14

1    DISCUSS, TAKE ROLL, GET THE JURORS IN AND GET STARTED WITH THE

2    SELECTION PROCESS.

3         MS. MAUND:  THAT'S FINE, YOUR HONOR.

4         MR. HERNANDEZ:  WE'RE READY TO CALL THE JURORS IN.

5         THE COURT:  ALL RIGHT.

6            IT WAS INDICATED THAT MR. ANDERSON'S WIFE WAS

7    PRESENT IN THE COURT AS A POTENTIAL WITNESS FOR THE DEFENSE.

8            IS THE OTHER WOMAN IN THE COURTROOM, IS SHE A

9    POTENTIAL WITNESS?

10        MR. HERNANDEZ:  NO.  SHE'S RELATED TO MY CLIENT'S MOTHER.

11        THE COURT:  THAT'S FINE.  THEY'RE CERTAINLY WELCOME TO BE

12   HERE.

13        MS. MAUND:  THERE'S A MOTION TO EXCLUDE.

14        THE COURT:  I'M GOING TO ASK THAT SHE BE EXCLUDED NOW

15   FROM THE COURTROOM DURING THE JURY SELECTION.

16        MS. MAUND:  YES, BECAUSE WE'LL BE TALKING ABOUT CERTAIN

17   ISSUES --

18        THE COURT:  ALL RIGHT.  MOTION IS GRANTED.  SHE'LL HAVE

19   TO STEP OUTSIDE.  THE WIFE WILL HAVE TO BE OUTSIDE BECAUSE SHE'S

20   A POTENTIAL WITNESS.

21            ALL RIGHT.  LET'S TAKE A LITTLE BREAK IN PLACE

22   WHILE THE CLERK IS MAKING COPIES RIGHT NOW I THINK OF THE JURY

23   LIST.  YOU'LL EACH GET A COPY OF THE JURY LIST, AND THEN SHE'LL

24   TAKE ROLL AND THEN WE'LL GET UNDERWAY.

25            LOOK THE JURY LIST OVER AND SEE IF YOU RECOGNIZE

26   ANY NAMES.  SO YOU'RE ADVISED WE HAD STANDING ROOM ONLY IN THE

27   JURY LOUNGE, WHICH IS NOT TOO UNUSUAL FOR A MONDAY MORNING.  I

28   GREET THE NEW JURORS EACH DAY AT 8 O'CLOCK DOWN IN THE LOUNGE.

2    1    POSSIBLE DEFENSE WITNESSES?  MY UNDERSTANDING AT THIS POINT IS

2    IN TERMS OF SHARING WITH ME AS A --

3    MR. HERNANDEZ:  YES, YOUR HONOR.  POTENTIALLY HIS WIFE,

4    SONIA ANDERSON, IS PRESENT IN COURT TODAY.

5    THE COURT:  HER NAME IS SONIA?

6    MR. HERNANDEZ:  SONIA DANIELS ANDERSON.

7    THE COURT:  AND THE DEFENDANT HIMSELF.  DO YOU THINK IT'S

8    LIKELY HE WILL TESTIFY?

9    MR. HERNANDEZ:  YES, YOUR HONOR.

10    THE COURT:  THE COURT HAS RECEIVED FROM MS. MAUND A SET

11    OF PROPOSED JURY INSTRUCTIONS.  I LOOKED AT IT -- GIVEN IT A

12    QUICK INITIAL LOOK AT, AND IT APPEARS TO BE A PRETTY THOROUGH

13    AND COMPLETE SET OF STANDARD CALCRIM INSTRUCTIONS.  I DID NOT

14    SEE IT THERE AND IT MIGHT BE THERE, I JUST DIDN'T SEE IT, THE

15    CALCRIM INSTRUCTION THAT DEALS WITH UNCHARGED PERPETRATORS.

16    I'M MINDFUL OF THE EVIDENCE THAT THERE WAS ABOUT

17    DELBERT ROSE IN THE DRIVER'S SEAT OF THE FORD AND HE WAS ALSO

18    ARRESTED BUT I PROBABLY OUGHT TO HAVE THAT INSTRUCTION.  I

19    DIDN'T REMEMBER THE CALCRIM NUMBER NOR THE CALJIC NUMBER, BUT

20    WHATEVER IT IS DEALS WITH UNJOINED UNCHARGED PERPETRATORS.

21    HE WAS ARRESTED, WAS HE ALSO CHARGED?

22    MS. MAUND:  HE WAS, YOUR HONOR, NOT AS A CO-DEFENDANT.  I

23    THINK IT WAS A POSSESSION CASE.  I MEAN, THE CITY ATTORNEYS

24    HANDLED HIS --

25    THE COURT:  I ALSO NOTICE THIS WAS A BAGGIE OF MARIJUANA

26    FOUND APPARENTLY INSIDE THE FORD EXPLORER.  WAS HE CHARGED WITH

27    THAT, DO YOU KNOW, MR. ROSE?

28    MS. MAUND:  I DON'T KNOW.  I CAN VERIFY AND HAVE THAT FOR

DEFENDANT: If it was so much of this FORD EXPLOYER AS EVIDENCE
in this case, Should this guy Delbert Rose should have
been a Co-Defendant or at least a POTENTIALLY WITNESS
AT TRAIL.

2    1    THE COURT.

2    THE COURT:  HAS THAT CASE BEEN RESOLVED, DO YOU KNOW?

3    MS. MAUND:  NO, I HAVE TO LOOK INTO IT.

4    THE COURT:  SO WITH WHATEVER HE'S CHARGED --

5    MS. MAUND:  I BELIEVE SO.

6    THE COURT:  -- THEY'LL DEAL WITH THE CALCRIM INSTRUCTION.

7    NEITHER SIDE HAS ANY INTENTION TO CALL HIM, THOUGH?

8    IS THAT WITNESS HERE?

9    MR. HERNANDEZ:  NO, YOUR HONOR.

10    MS. MAUND:  NO, YOUR HONOR.

11    THE COURT:  ALL RIGHT.

12    THE DEFENSE DOES NOT NEED TO DUPLICATE THE EFFORT

13    OF PRESENTING A COMPLETE SET OF PROPOSED JURY INSTRUCTIONS.  IF

14    YOU HAVE SOME PINPOINTS, MODIFICATIONS, VARIATIONS, FORECITE OR

15    WHATEVER, THAT SHOULD BE YOUR FOCUS.  BUT YOU DON'T NEED TO

16    DUPLICATE HER EFFORTS SINCE WE'RE MARKING A BASIC SET.

17    SO EVERYBODY UNDERSTANDS THE COURT'S PROCESS OF

18    INSTRUCTING THE JURY, I CONSIDER MY RESPONSIBILITY TO INSTRUCT

19    THE JURY TO COMMENCE WHEN THE PANEL OF PROSPECTIVE JURORS ARRIVE

20    IN THIS COURTROOM, AND AS PART OF THE JURISDICTION I WILL COVER

21    THE BASES, PRESUMPTION OF INNOCENCE, REASONABLE DOUBT,

22    CREDIBILITY OF WITNESSES.  I'LL DO THAT, SAY, DURING THE JURY

23    SELECTION PROCESS ITSELF.

24    ONCE THE JURY'S BEEN SELECTED, BUT BEFORE ANY

25    OPENING STATEMENTS, I WILL INSTRUCT THE JURY IN A FAIRLY

26    COMPLETE MANNER, BUT I TELL THEM THAT THESE ARE PRELIMINARY

27    INSTRUCTIONS IN THE SENSE THAT THEY HAVEN'T HEARD ANY EVIDENCE

28    YET.  LATER ON, AFTER YOU ALL HAVE PRESENTED BOTH SIDES, HAVE

DEFENDANT: The Delbert Rose case was never looked into whether
it had been RESOLVED or not. Never was mention again
during this Trail.

10

3

1    12 PRINCIPAL JURORS AND TWO ALTERNATES.

2              I TOOK NOTICE IN READING THE TRANSCRIPT OF THE

3    PRELIMINARY EXAMINATION WHICH WAS CONDUCTED ON APRIL 28TH BEFORE

4    JUDGE O'NEILL OF THIS COURT.  PEOPLE BEING REPRESENTED BY A

5    DIFFERENT DEPUTY AND WITH MR. ANDERSON APPEARING.  ONE OF THEM

6    WE'VE ALREADY TALKED ABOUT BEING MR. ROSE AND WHAT THE SITUATION

7    WAS.  THE OTHER MATTERS I NOTICED WAS I MENTIONED IN PASSING A

8    MOMENT AGO THAT APPARENTLY THERE WAS A BAGGIE OF MARIJUANA FOUND

9    IN THE VEHICLE.

10             DO YOU INTEND TO PRESENT THAT EVIDENCE A PART OF

11   YOUR CASE IN CHIEF?

12       MS. MAUND:  NO.

13       THE COURT:  DOES THE DEFENSE?

14       MR. HERNANDEZ:  NO, YOUR HONOR.

15       THE COURT:  I WOULD THINK CAUTION -- ONE SIDE OR ANOTHER

16   HAS A DIFFERENT VIEW ABOUT THAT, BUT OTHERWISE, I WOULD JUST

17   THINK --

18             ALL RIGHT.  IN LOOKING AT THE INFORMATION A COUPLE

19   POINTS OCCURRED TO ME, AND I THINK ONE OF MY QUESTIONS MAY HAVE

20   BEEN ANSWERED BY LOOKING AT THE SET OF PROPOSED JURY

4

21   INSTRUCTIONS.  THE PEOPLE HAVE ALLEGED, AND I DON'T THINK AS ANY

22   CRITICISM, BUT THEY'VE ALLEGED THE FELONY.  AND ESSENTIALLY IN

23   THE STATUTORY LANGUAGE, WHICH PROBABLY SOME SECTION, SOME ON THE

24   FACTUAL LEGAL THEORY IN WHICH THIS CASE IS GOING TO BE

25   PROSECUTED, FIRST OF ALL, WITH THE VERSION OF CALCRIM 800 WHICH

26   YOU HAVE SUBMITTED, THAT YOUR THEORY IN COUNT ONE IS FURNISHING

27   OR GIVING AWAY RATHER THAN SELLING, OFFERING TO SELL, ET CETERA,

28   ET CETERA.          29

DEFEDANT: More evidence found in MR. ROSE VEhicle
That should have been argued, but was not in the
Trail Court.

11

1          MS. MAUND:  CORRECT, YOUR HONOR.  AS TO COUNT ONE, YOU'RE

2     RIGHT.

3          THE COURT:  THAT'S THE .07 GRAMS.

4          MS. MAUND:  YES.

5          THE COURT:  ALL RIGHT.  WELL, I THINK WHEN I READ THE

6     INSTRUCTIONS TO THE JURY I CAN SAY FURNISHING AND GIVE AWAY,

7     TAKE OUT THE REST OF THAT ABOUT THE SELLING, THE REMAINDER.  I

8     DIDN'T KNOW WHETHER YOU HADN'T OFFERED THEM BECAUSE YOU

9     OBVIOUSLY WERE NOT PREPARED -- THE JURY INSTRUCTION TALKS ABOUT

10    FURNISHING OR GIVING AWAY.  SO IF THAT'S YOUR GIVING AWAY, OFFER

11    TO SELL -- IT WILL BE FURNISHED OR GIVE AWAY ITSELF.  I WILL

12    CHANGE TO TAKE AWAY.

13          I DON'T THINK THAT'S WHAT REASONABLY IS EXPECTED

14    THE EVIDENCE WILL BE.

15          ALL RIGHT.  UNLESS -- I NOTICE YOU SUBMITTED THE

16    CALCRIM INSTRUCTION THAT EACH COUNT ALLEGES A SEPARATE CRIME AND

17    THEY'LL BE ABLE TO REACH A VERDICT ON EACH.  SO COUNT ONE AND

18    TWO, ARGUABLY THERE ARE TWO DIFFERENT QUANTITIES OF COCAINE BASE

19    INVOLVED HERE, ACCORDING TO THE OFFICER'S TESTIMONY?

20          MS. MAUND:  CORRECT, YOUR HONOR.

21          THE COURT:  THAT'S FINE.  WITH RESPECT TO COUNT TWO, IT

22    SAYS "PURPOSES FOR PURCHASE" HERE.  THAT'S NOT YOUR THEORY.

23          MS. MAUND:  NO.

24          THE COURT:  CAN YOU TAKE OUT "AND PURPOSE FOR PURCHASE"?

25          MS. MAUND:  YES.

26          THE COURT:  I'D LIKE TO SIMPLIFY THINGS AS MUCH AS

27    POSSIBLE SO THE JURY DOES NOT GET CONFUSED I THINK.

28          WITH RESPECT TO THE ALLEGATION OF THE PRIORS, THOSE

30

EXHIBIT B

EXHIBIT B   OFFICER WILSON TRAIL
TESTIMONY

1    CUSTODY.

2         Q    AND DID YOU HAVE AN OPPORTUNITY TO SEARCH THE

3    DEFENDANT?

4         A    YES, I DID.

5         Q    AND WHAT DID YOU FIND ON THE DEFENDANT?

6         A    IN HIS LEFT COAT POCKET I ENDED UP FINDING IN A

7    CIGARETTE PACK TWO GLASS PIPES WHICH WERE USED FOR SMOKING

8    DEVICES FOR ROCK COCAINE.

9         Q    NOW, YOU SAID TWO GLASS PIPES.  WHERE WERE THESE

10   LOCATED?

11        A    THEY WERE IN A CIGARETTE PACK.

12        Q    IN HIS LEFT POCKET YOU SAID?

13        A    YES.

14        Q    OKAY.

15             DID YOU FIND ANYTHING ELSE OF SIGNIFICANCE?

16        A    ENDED UP FINDING ABOUT $116.00 IN ONE OF HIS PANTS

17   POCKETS.

18        Q    DO YOU REMEMBER WHAT TYPE OF CLOTHING OFFICER CHAVEZ

19   WAS WEARING ON THIS DATE?

20        A    HE WAS WEARING A -- I BELIEVE IT WAS BLUEJEANS, A BIG,

21   BLACK, PUFFY JACKET.  NOT QUITE SURE OF THE UNDERSHIRT THAT HE

22   HAD UNDERNEATH THERE.

23        Q    AND THAT'S THE CLOTHING YOU SAW OFFICER CHAVEZ WEARING

24   ON THE STREET, 1000 BLOCK OF DID YOU SAY SIXTH AVENUE?

25        A    SEVENTH.

26        Q    SEVENTH AVENUE.

27        A    YES, IT WAS.

28        Q    NOW, TODAY WHAT IS YOUR ROLE WITH -- HAS YOUR ROLE

34

EXHIBIT B          OFFICER WILSON TRIAL
                        TESTIMONY

1   BUST SIGNAL TO GO IN AND MAKE THE ARREST, THAT'S THE REASON I

2   DROVE INTO THAT AREA.  SO I HAD THAT WAY BEFORE SEEING THEM OR

3   ACTUALLY MAKING CONTACT WITH THEM.

4        Q    OKAY.

5             FROM THE TIME THAT YOU -- THAT YOU OBSERVED MY CLIENT,

6   DID YOU EVER LOSE SIGHT OF HIM?

7        A    NO, I DID NOT.

8        Q    AND DID YOU EVER SEE MY CLIENT MAKE A TOSSING MOTION

9   LIKE TO TOSS ANYTHING AWAY?

10       A    NO, I DID NOT.

11       Q    NOW, DID YOU -- HOW LONG WERE YOU AT THE SCENE AFTER

12  YOU MADE CONTACT WITH MY CLIENT?

13       A    I WAS THERE FOR MAYBE ABOUT ANOTHER TEN MINUTES.

14       Q    AND WHAT DID YOU DO DURING THOSE TEN MINUTES?

15       A    I ENDED UP OBTAINING HIS INFORMATION.  OFFICER TAGABAN

16  SOON ARRIVED, AND SHE WAS CONDUCTING THE SEARCH IN THE VEHICLE,

17  IN THAT AREA.  SO I JUST MAINTAINED COVERING HER, MAKING SURE FOR

18  HER SAFETY.

19       Q    NOW, WHEN YOU SAY YOU OBTAINED INFORMATION, YOU GOT MY

20  CLIENT'S NAME AND HIS DATE OF BIRTH.

21       A    YES, I DID.

22       Q    AND DID HE MISREPRESENT HIMSELF TO YOU IN ANY WAY AS

23  FAR AS YOU KNOW?

24       A    NOT THAT I REMEMBER.  NO, HE DIDN'T.

25       Q    NOW, -- AND, OFFICER, YOU DID NOT SEE ANYTHING CLOSE TO

26  A DRUG TRANSACTION OCCUR BETWEEN OR HAPPEN BETWEEN OFFICER CHAVEZ

27  AND MY CLIENT.

28       A    I DIDN'T SEE THEM DO ANY HAND-TO-HAND, NO.  I WAS NOT

1   IN A POSITION FOR THAT.

2          Q    NOW, YOU TESTIFIED EARLIER THAT YOU RECOVERED TWO

3   PIPES.

4          A    YES, I DID.

5          Q    AND DID YOU MAKE THAT NOTATION IN YOUR REPORT?

6          A    I MADE THE NOTATION OF THE ONLY ONE PIPE BECAUSE IT WAS

7   A USED PIPE.  THE OTHER PIPE WAS UNUSED.

8          Q    DID YOU MAKE THAT -- DID YOU NOTE THAT DISCREPANCY IN

9   YOUR REPORT?

10         A    NO, I DID NOT.

11         Q    DID YOU SPEND ANY TIME AT ALL AT THE SCENE LOOKING FOR

12  THREE GRAMS OF UNACCOUNTED-FOR COCAINE BASE?

13         A    I RECALL LOOKING AROUND IN THE AREA SEEING IF THERE WAS

14  ANY ADDITIONAL SUBSTANCE THAT COULD HAVE BEEN TOSSED OR DROPPED

15  BY THE SUSPECT.

16         Q    AND HOW MUCH TIME DID YOU SPEND LOOKING AROUND?

17         A    ABOUT TEN MINUTES IF I RECALL.

18         Q    THE ENTIRE TEN MINUTES YOU WERE THERE YOU WERE LOOKING

19  FOR IT.

20         A    YEAH.  TALKING WITH HIM AND THEN ASSISTING.  I WOULD

21  SAY WE WERE THERE FOR ABOUT AN EXTRA TEN MINUTES.

22         MR. HERNANDEZ:  OKAY.  THANK YOU.

23              I HAVE NO FURTHER QUESTIONS.

24         THE COURT:  ANYTHING FURTHER?

25         MS. MAUND:  NOTHING FURTHER.

26         THE COURT:  MAY THE WITNESS BE EXCUSED?

27         MS. MAUND:   YES, YOUR HONOR.

28         MR. HERNANDEZ:  YES.

36

EXHIBIT B    OFFICER SPEARS TESTIMONY DURING TRIAL

218

1   Q    ALL RIGHT.

2        DO YOU SEE THE INDIVIDUAL HERE IN COURT THAT OFFICER

3   CHAVEZ CONTACTED OR WAS SPEAKING WITH?

4   A    I DIDN'T GET A GOOD LOOK AT HIS FACE AT THE TIME THAT I

5   HAD THE EYE.

6   Q    ALL RIGHT.

7        BUT IT WAS AN AFRICAN-AMERICAN MALE.

8   A    CORRECT.

9   Q    ALL RIGHT.

10       AND ARE YOU REQUIRED WHEN YOU ARE WORKING IN THE

11  CAPACITY THAT YOU DESCRIBED TO WRITE A REPORT?

12  A    NO.

13  Q    AND WHAT OTHER OFFICERS TO YOUR KNOWLEDGE WERE WORKING

14  AS AN EYE IN THIS CASE ON THIS DATE AND TIME?

15  A    DETECTIVE ZALDIVAR.  I BELIEVE DETECTIVE PETERSON, AND

16  I BELIEVE DETECTIVE LEMUS.

17  MS. MAUND:  THANK YOU.

18       NOTHING FURTHER.

19  THE COURT:  CROSS-EXAMINATION.

20  MR. HERNANDEZ:  THANK YOU, YOUR HONOR.

21

22                  CROSS-EXAMINATION

23  BY MR. HERNANDEZ:

24  Q    OFFICER, I UNDERSTAND THAT YOU DID NOT PREPARE A REPORT

25  IN THIS CASE.  YOU ARE NOT REQUIRED TO PREPARE A REPORT.  BUT DID

26  YOU PREPARE A REPORT IN THIS CASE --

27  A    I DID NOT, SIR.

28  Q    -- WHERE YOU RECORDED YOUR OBSERVATIONS YOU JUST MADE

37

EXHIBIT B
SPEAKS

1    RIGHT NOW?

2         YOU MADE SOME OBSERVATIONS RIGHT NOW.

3    A    YES, SIR.

4    Q    YOU TESTIFIED --

5    A    YES, SIR.

6    Q    -- AS TO WHAT YOU REMEMBER YOU SAW.

7    A    CORRECT.

8    Q    AND YOU DID NOT MAKE A REPORT.

9    A    I DID NOT, SIR.

10   Q    NOW, DO YOU KNOW HOW MANY OFFICERS WERE WORKING THAT

11   DAY?

12   A    I COULDN'T TELL YOU.

13   Q    COULD YOU EVEN APPROXIMATE HOW MANY OFFICERS WERE

14   WORKING THIS DAY?

15   THE COURT:  ON TEAM 8 I ASSUME YOU MEAN.

16   MR. HERNANDEZ:  I'M SORRY?

17   THE COURT:  I ASSUME YOU MEAN ON TEAM 8, NOT JUST GENERALLY.

18   MR. HERNANDEZ: YES.  ON TEAM 8.

19   THE WITNESS:  THE OFFICERS THAT I HAD SAID THAT I BELIEVED

20   WERE WORKING.  THAT'S ALL OF TEAM 8.

21   BY MR. HERNANDEZ:

22   Q    HOW MANY IS THAT?

23   A    THAT WOULD BE OFFICER TAGABAN, OFFICER WILSON,

24   DETECTIVE LEMUS, DETECTIVE PETERSON, DETECTIVE ZALDIVAR, MYSELF,

25   AND DETECTIVE CHAVEZ AT THE TIME.

26   Q    NOW, HOW LONG WERE YOU SERVING AS THE EYES OFFICER ON

27   THIS DAY OF THE INCIDENT?

28   A    WE ARE ALL IN A CERTAIN LOCATION.  AND IF THE

38

EXHIBIT B
SPEARS

1    UNDERCOVER GOES IN OUR AREA, THEN THAT'S WHEN WE PICK UP THE EYE.

2    I BELIEVE HE HAD WALKED EASTBOUND INTO MY AREA, SO I PROBABLY HAD

3    THE EYE FOR A GOOD FIVE TO TEN MINUTES.

4          Q    AND DURING THAT FIVE TO TEN MINUTES, YOU NEVER SAW

5    ANYTHING CLOSE TO A DRUG TRANSACTION BETWEEN THE BLACK MALE AND

6    OFFICER CHAVEZ.

7          A    I DID NOT.

8          Q    AND DURING THAT TIME YOU NEVER SAW -- DURING THAT TEN-

9    MINUTE TIME YOU NEVER SAW THIS AFRICAN-AMERICAN MAKE A TOSSING-

10   LIKE MOTION TO TOSS SOMETHING AWAY.

11         A    I DID NOT, NO, SIR.

12         Q    HOW LONG HAVE YOU KNOWN OFFICER CHAVEZ?

13         A    PROBABLY FIVE YEARS.

14         Q    AND HOW LONG HAVE YOU WORKED WITH HIM?

15         A    THREE YEARS.

16         Q    DO YOU CONSIDER YOURSELF FRIENDS?

17         A    YEAH.

18   MR. HERNANDEZ:  THANK YOU.

19         I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

20   THE COURT:  THANK YOU.

21         REDIRECT.

22   MS. MAUND:  NOTHING FURTHER.

23   THE COURT:  MAY THE WITNESS BE EXCUSED?

24   MS. MAUND:  YES.

25   MR. HERNANDEZ:  YES.

26   THE COURT:  THANK YOU.

27   THE WITNESS:  THANK YOU, SIR.

28         (THE WITNESS WAS EXCUSED.)

EXHIBIT B            OFFICER TAGABOND TRIAL
                              TESTIMONY                              168

1        Q     WHY NOT?

2        A     WE HAD A SECOND BUY/BUST OPERATION THAT WAS GOING TO

3    OCCUR IN THE EAST VILLAGE.

4        Q     SO HOW WAS THIS, THE CAR LEFT?

5        A     I LEFT IT LEGALLY PARKED ON THE EAST CURBLINE OF 1000

6    SEVENTH AVENUE.

7        Q     ALL RIGHT.

8              DID THE NARCOTICS, WHAT YOU BELIEVE TO BE ROCK COCAINE,

9    THAT WAS LOCATED IN THE CIGARETTE BOX, DID IT APPEAR TO BE A

10   USEABLE AMOUNT BASED ON YOUR TRAINING AND EXPERIENCE?

11       A     YES, MA'AM.

12       MS. MAUND:  NOTHING FURTHER AT THIS TIME.

13       THE COURT:  THANK YOU.

14             CROSS-EXAMINATION.

15       MR. HERNANDEZ:  YES.

16

17                       CROSS-EXAMINATION

18   BY MR. HERNANDEZ:

19       Q     OFFICER, YOUR CONTACT WAS STRICTLY WITH DELBERT ROSE.

20       A     YES, SIR.

21       Q     AND YOU ALSO REFERRED TO YOUR FUNCTION AS FAR AS ON THE

22   DRUG BUST TEAM AS THE EYES OF THE OPERATION.

23       A     NO, SIR.  I WAS A SCOOP UNIT.

24       Q     I'M SORRY?

25       A     I WAS A SCOOP UNIT THAT NIGHT.

26       Q     OKAY.

27             AND IS IT FAIR TO SAY THAT YOUR EYES WERE -- YOUR JOB

28   WAS TO MAINTAIN THE SIGHT OF THE UNDERCOVER OFFICER AT ALL TIMES?

40

EXHIBIT B
TAGA BOND

1      A    NO, SIR.  I WAS PARKED APPROXIMATELY TWO BLOCKS AWAY.

2   I AM CALLED IN, YOU KNOW, WHEN THE BUY/BUST SIGNAL IS GIVEN.  I

3   DO NOT HAVE EYES ON THE OPERATOR AT THAT TIME.

4      Q    HOW LONG WERE YOU AT THE LOCATION?

5      A    AT THE LOCATION?

6      Q    YES.

7      A    A GOOD FIFTEEN, TWENTY MINUTES.

8      Q    OKAY.

9           NOW, COULD YOU SEE OFFICER CHAVEZ WITH MY CLIENT?

10     A    NO, SIR.

11     Q    DID YOU SEE THEM TOGETHER?

12     A    NO, SIR.  NOT WHEN I ARRIVED ON SCENE, NO, SIR.

13     Q    AT NO POINT DID YOU SEE THEM TOGETHER.

14     A    NO, SIR.

15     Q    AND AT SOME POINT -- WHEN DID YOU FOCUS ON MR.

16   ANDERSON?

17     A    WHEN I DROVE INTO THE AREA, I SAW OFFICER WILSON WHO

18   HAD DETAINED YOUR CLIENT.

19     Q    AND HOW LONG DID YOU OBSERVE MY CLIENT WITH OFFICER

20   WILSON?

21     A    FEW SECONDS BECAUSE I WAS BEING DIRECTED TO THE

22   VEHICLE.

23     Q    WITH MR. DELBERT ROSE?

24     A    YES, SIR.

25     Q    AND AS FAR AS YOU KNOW, HE WAS THE REGISTERED OWNER OF

26   THAT VEHICLE.

27     A    YES, SIR.

28     Q    SO WHATEVER YOU FOUND IN THAT VEHICLE BELONGED TO

41

EXHIBIT B
TABABOWD

1    DELBERT ROSE.

2         A    YES, SIR.

3         Q    SO YOU DID NOT OBSERVE AT ALL ANY HAND-TO-HAND

4    TRANSACTION BETWEEN MR. ANDERSON AND OFFICER CHAVEZ.

5         A    THAT IS CORRECT.

6         Q    NOW, YOU MENTIONED THAT YOU SPENT SOME TIME SEARCHING

7    FOR A BINDLE OF THREE GRAMS OF COCAINE.

8         A    I WAS JUST SEARCHING THE ENTIRE VEHICLE.

9         Q    FOR WHAT?

10        A    FOR WHATEVER I FOUND.

11        Q    OH.  OKAY.

12             SO NO ONE CALLED TO YOUR ATTENTION, HEY, COULD YOU

13   SEARCH SPECIFICALLY FOR A BINDLE OF APPROXIMATELY THREE GRAMS OF

14   COCAINE?

15        A    I DO RECALL THAT INFORMATION WAS AIRED VIA THE RADIO,

16   THAT THERE WAS ANOTHER BAG.  I DID NOT KNOW THE AMOUNT, SO I WAS

17   JUST SEARCHING FOR ANY TYPE OF A CONTROLLED SUBSTANCE, ANYTHING

18   ILLEGAL.

19        Q    NOW, YOU ALSO PREPARED A REPORT IN THIS CASE, DID YOU

20   NOT?

21        A    THAT IS CORRECT.

22        Q    NOW, IN ANYWHERE IS IT DOCUMENTED IN YOUR REPORT THAT

23   YOU HAD SPENT -- HAD MADE AN EFFORT TO LOCATE A BINDLE OF

24   APPROXIMATELY THREE GRAMS OF COCAINE?

25        A    NO, SIR.

26        Q    AT ANY POINT DID YOU PERHAPS MAYBE THINK OF CALLING A

27   CANINE UNIT TO ASSIST IN THE SEARCH?

28        A    NO, SIR.

42

EXHIBIT B

CHAVEZ TESTIMONY
TRIAL

1  BY MR. HERNANDEZ:

2      Q    OFFICER, SO DO YOU, AS YOU SIT HERE RIGHT NOW, DO YOU

3  KNOW THE LAST DAY YOU WERE WORKING ON TEAM 8?

4      A    NOT OFF THE TOP OF MY HEAD, NO.

5      Q    AND ON THAT, THE DAY OF THE INCIDENT, APRIL 4TH, HOW

6  MANY TEAM 8 MEMBERS WERE THERE WORKING?

7      A    OFF THE TOP OF MY HEAD AGAIN, SIX AND THEN I WAS THE

8  SEVENTH.  PLUS A SERGEANT.

9      Q    I'M SORRY?

10     A    PLUS A SERGEANT THAT OVERSEES EVERYTHING.

11     Q    SO SEVEN ASIDE FROM YOURSELF.

12     A    CORRECT.

13     Q    NOW, ANY OTHER TEAM MEMBERS OBSERVE THAT WOULD -- THAT

14 YOU KNOW OF THAT WOULD HAVE OBSERVED MR. ANDERSON GIVE YOU THE

15 THREE ROCKS THAT YOU TESTIFIED TO?

16     MS. MAUND:  SPECULATION.  OBJECTION.  SPECULATION.

17     THE COURT:  I THINK THE CALL OF THE QUESTION WAS IF HE KNOWS

18 THAT, SO HE MAY ANSWER THAT.

19     THE WITNESS:  I DON'T KNOW.

20 BY MR. HERNANDEZ:

21     Q    AND PRIOR TO TODAY HOW MANY TIMES HAVE YOU TESTIFIED IN

22 COURT?

23     A    IN MY SEVEN YEARS?

24     Q    YES.

25     A    FIFTY.

26     Q    OKAY.

27          AND I KNOW YOU RECEIVED EXTENSIVE OFFICER TRAINING.

28 DID YOU ALSO RECEIVE TRAINING IN HOW TO TESTIFY IN COURT?

43

EXHIBIT B          OFFICER CHAVEZ
                   TRIAL TESTIMONY

1          WELL, HERE'S A PIECE THAT SAID I CONTINUED TO EXPRESS

2     MY CONCERN ABOUT BEING ROBBED.

3          MR. HERNANDEZ:   YOU KNOW THAT --

4          THE WITNESS:  SO HE ASKED ME AGAIN.

5          MR. HERNANDEZ:  OKAY.

6          THE WITNESS:  AND I CONTINUED TO EXPRESS MY CONCERN.

7     BY MR. HERNANDEZ:

8          Q    SO NOW YOU ARE SAYING HE DID ASK YOU.  DOES IT SAY THAT

9     IN YOUR REPORT, THAT HE ASKED YOU AGAIN?

10         A    IT DOES NOT SPECIFICALLY SAY THAT IN MY REPORT.

11         Q    OKAY.

12              NOW, HOW WAS IT -- AND I'M GOING BACK TO WHEN MY CLIENT

13    -- WHO CONTACTED WHO ABOUT THE DRUGS IN THE FIRST PLACE?

14         A    I APPROACHED HIM.

15         Q    AND YOU ASKED HIM FOR A TWENTY.

16         A    CORRECT.

17         Q    AND DID YOU ASK HIM JUST ONE TIME?

18         A    I ASKED HIM IF HE HAD A TWENTY.   ONCE.

19         Q    JUST ONCE?

20         A    RIGHT THEN, WHEN I FIRST CONTACTED HIM, YES.

21         Q    OKAY.

22              DID YOU ASK HIM ANY MORE TIMES AFTER THAT IF HE HAD A

23    TWENTY?

24         A    I LATER SAID JUST GIVE ME THE TWENTY SO I CAN GO.

25         Q    HOW MANY TIMES DID YOU ASK HIM FOR A TWENTY?

26         A    WELL, THE INITIAL TIME AND THEN --

27         Q    THE ENTIRE TIME.

28         A    I'M TELLING YOU.

44

DEFENDANT: RECORDS AND PROOF OF ENTRAPMENT.

EXHIBIT B
CHAVEZ

130

1    Q    OKAY.

2    A    THE INITIAL TIME WHEN I FIRST CONTACTED HIM I ASKED HIM

3    FOR THE TWENTY, AND THEN LATER ON WHEN I WAS EXPRESSING MY

4    CONCERN ABOUT GETTING IN THE VEHICLE, I ASKED HIM AGAIN JUST GIVE

5    ME THE TWENTY SO I CAN GO.  SO THAT WOULD BE TWICE.

6    Q    ARE YOU SURE JUST TWICE?

7    A    THAT'S WHAT I'M TESTIFYING TO.

8    Q    OKAY.

9         DO YOU REMEMBER TESTIFYING AT A PRELIMINARY HEARING ON

10   APRIL 20TH?  YOU SAID THAT, CORRECT?

11        THE COURT:  SAID WHAT?

12   BY MR. HERNANDEZ:

13   Q    YOU MENTIONED -- DID YOU TESTIFY AT A PRELIMINARY

14   HEARING ON APRIL 20TH?

15   A    YES, I DID.

16   Q    AND THERE WAS A COURT REPORTER THERE.

17   A    YES, THERE WAS.

18   Q    AND THERE WAS A JUDGE THERE.

19   A    YEAH.

20   Q    AND WE TALKED ABOUT -- I WAS THERE, CORRECT?  YOU

21   REMEMBER ME?

22   A    YES.

23   Q    I ASKED YOU ABOUT -- QUESTIONS ABOUT WHAT HAPPENED ON

24   THIS DAY, CORRECT?

25   A    YES, YOU DID.

26   Q    DO YOU REMEMBER ME ASKING YOU ABOUT HOW MANY TIMES YOU

27   WOULD ASK MY CLIENT FOR A TWENTY?

28   A    NOT SPECIFICALLY.

45

EXHIBIT B
CHAVEZ

1    PLASTIC, AND THEN THAT BASICALLY KEEPS IT TOGETHER SO WHEN

2    SOMEONE WANTS A TWENTY, THEN THEY PICK OUT THE RIGHT PIECE AND

3    GIVE THEM THAT PIECE.  COCAINE BASE IN MY EXPERIENCE IS NOT

4    USUALLY PACKAGED.

5        Q    NOW, ALSO IT'S NOT UNCOMMON FOR DRUG DEALERS TO HAVE

6    PAGERS AND CELL. PHONES, CORRECT?

7        A    CORRECT.

8        Q    DID MY CLIENT HAVE ANY PAGERS OR CELL. PHONES ON HIS

9    PERSON?

10        A    NO, HE DID NOT.

11        Q    SO OBVIOUSLY THERE WASN'T ANYTHING GOING OFF DURING

12    YOUR CONTACT WITH HIM.

13        A    CORRECT.

14        Q    AND HOW LONG WAS THAT CONTACT?

15        A    I BELIEVE I ESTIMATED IN THE PRELIM. APPROXIMATELY FIVE

16    MINUTES FROM THE TIME I CONTACTED HIM TO --

17        Q    SO IT WASN'T A LONG CONTACT AT ALL.

18        A    IT WAS FIVE MINUTES.

19        Q    OKAY.

20             AND HE WAS CONTINUALLY IN YOUR VISION OF SIGHT, YOUR

21    FIELD OF SIGHT.

22        A    HE WAS WITH ME THE ENTIRE TIME.

23        Q    NOW, YOU MENTIONED YOU WERE AS PART OF THIS DRUG TEAM,

24    DRUG TEAM 8, FOR EIGHT MONTHS.  WOULD YOU SAY -- WOULD YOU

25    DESCRIBE IT AS MORE OR LESS IT'S A CONTROLLED SETTING WHEN YOU

26    SET UP A DRUG BUST?

27        A    I DON'T UNDERSTAND THE QUESTION.  IF YOU CAN REPHRASE

28    THAT, . . .

EXHIBIT B

CHAVEZ

1     Q   YOU HAVE OFFICERS IN PLACE.

2     A   WE HAVE OFFICERS, YES.

3     Q   AND YOU ARE THE OFFICER THAT'S THE -- NOT THE DECOY BUT

4  THE PERSON WHO IS SUPPOSED TO BLEND IN WITH THE CROWD.

5     A   CORRECT.

6     Q   AND THERE ARE OTHER OFFICERS NEARBY.

7     A   YES.

8     Q   AND YOU MENTIONED SEVEN OFFICERS ON THIS DAY.

9     A   CORRECT.

10    Q   AND YOU WERE ARMED WITH A TRANSMITTER.

11    A   I HAD A WIRE ON ME, YES.

12    Q   COMMUNICATION DEVICE.

13    A   A ONE-WAY TRANSMITTER, YES.

14    Q   OKAY.

15         AND YOU WERE ALSO ARMED WITH PRE-RECORDED DOLLARS OR

16  MONEY.

17    A   I DID HAVE PRE-RECORDED MONEY.

18    Q   AND THE PRE-RECORDED MONEY IS, OF COURSE, A WAY TO

19  TRACE IT TO A POTENTIAL SELLER, CORRECT?

20    A   YES.

21    Q   IF THAT SELLER TAKES THE MONEY.

22    A   YES.

23    Q   NOW, THE FOCUS IS, OF COURSE, TO CATCH PEOPLE WHO ARE

24  DEALING DRUGS ON THE STREETS.

25    A   THAT'S WHAT I WAS OUT THERE TO DO, YES.  BUY DRUGS.

26    Q   KIND OF LIKE A FISHING EXPEDITION.

27    MS. MAUND:  OBJECTION.  ARGUMENTATIVE.

28    THE COURT:  SUSTAINED.

47

EXHIBIT B   OFFICER CHAVEZ
TRIAL TESTIMONY

140

1        YOU MAY ANSWER.

2        THE WITNESS:  YOU KNOW, I PROBABLY KNOW WHAT YOU'RE TALKING

3   ABOUT, BUT I HAVE NEVER HEARD IT CALLED THAT, SO I DON'T KNOW.

4   BY MR. HERNANDEZ:

5        Q    WHAT WOULD YOU CALL IT?

6        A    I DON'T KNOW WHAT YOU SAID.

7        MS. MAUND: OBJECTION.  SPECULATION.

8        MR. HERNANDEZ:  OKAY.

9   BY MR. HERNANDEZ:

10       Q    AND IS AUDIOTAPE OF A CONVERSATION CONSIDERED

11   CORROBORATIVE EVIDENCE?

12       MS. MAUND:  OBJECTION, YOUR HONOR.  RELEVANCE.

13       THE COURT:  SUSTAINED.

14       MR. HERNANDEZ:  YOUR HONOR, IT WOULD GO TO HE'S BEEN

15   QUALIFIED AS AN EXPERT.

16       THE COURT:  OBJECTION IS SUSTAINED, COUNSEL.

17   BY MR. HERNANDEZ:

18       Q    OFFICER, IS THERE ANY EVIDENCE IN THE CASE, IN THIS

19   CASE, PERTAINING TO THE FACT THAT MY CLIENT POSSESSED SOMEHOW

20   PRE-RECORDED BILLS?

21       A    I NEVER SAID HE POSSESSED PRE-RECORDED BILLS.

22       Q    I'M ASKING.

23       A    I'M TELLING YOU.

24       Q    SO THERE IS NO EVIDENCE OF THAT.

25       A    HE NEVER POSSESSED PRE-RECORDED BILLS.  I'M TELLING YOU

26   THAT RIGHT NOW.

27       Q    SO IN THIS CASE THERE IS NO CONFESSION OR ADMISSION.

28       MS. MAUND:  OBJECTION, YOUR HONOR.  HEARSAY.

48

EXHIBIT B
CHAVEZ

1    THE COURT:  SUSTAINED.

2    BY MR. HERNANDEZ:

3        Q    IS THERE ANY AUDIO RECORDING OF ANY CONVERSATION IN

4    THIS CASE?

5        MS. MAUND:  OBJECTION, YOUR HONOR.  HEARSAY.  RELEVANCE.

6    THE COURT:  YOU MAY ANSWER.

7    THE WITNESS:  NO, THERE IS NO RECORDED --

8    BY MR. HERNANDEZ:

9        Q    IS THERE ANY VIDEO RECORDING THAT SUPPORTS WHAT YOU ARE

10   SAYING?

11       A    NO, THERE ISN'T.

12       Q    IS THERE ANY OTHER -- YOU MENTIONED ALREADY THAT -- IS

13   THERE ANY OTHER MEMBER FROM TEAM 8 THAT SUPPORTS WHAT YOU ARE

14   SAYING TODAY?

15       MS. MAUND:  OBJECTION.  SPECULATION.

16   THE COURT:  SUSTAINED.

17   BY MR. HERNANDEZ:

18       Q    NOW, LET'S TALK ABOUT THE THREE GRAMS THAT YOU

19   EYEBALLED EARLIER.  OKAY?

20       A    SURE.

21       Q    NOW, YOU MENTIONED IN YOUR TESTIMONY THAT YOU EYEBALLED

22   WHICH YOU APPROXIMATED TO BE THREE GRAMS OF COCAINE BASE.

23   CORRECT?

24       A    YES.

25       Q    AND YOU PUT THAT DOWN IN YOUR REPORT, CORRECT?

26       A    YES.

27       Q    AND YOU TESTIFIED TO THAT IN THE PRELIMINARY HEARING AS

28   WELL, SEEING THAT, CORRECT?

49

EXHIBIT B

CHAVEZ



A YES.

Q AND IT WAS IN A BINDLE.

A IT WAS IN A PLASTIC. YOU CAN CALL IT A BINDLE.

Q OKAY.

IS THAT LIKE A PLASTIC BAGGY FOR LIKE A SANDWICH?

A IT'S THE SAME THING.

Q OKAY.

AND WAS MY CLIENT WEARING GLOVES?

A I DON'T SPECIFICALLY RECALL HIM WEARING GLOVES.

Q BUT THAT'S SOMETHING YOU WOULD HAVE NOTED ON YOUR REPORT, CORRECT?

A I DON'T SEE THE RELEVANCE, SO PROBABLY NOT.

Q I'LL GET TO THE RELEVANCE, OFFICER, BUT THERE WERE NO GLOVES AS FAR AS WE KNOW.

A NOT THAT I KNOW OF.

Q OKAY.

NOW, YOU'RE SURE THAT MY CLIENT HELD THAT BINDLE IN HIS LEFT HAND.

A THAT'S WHERE I SAW IT.

Q OKAY.

AND YOU NEVER LOST SIGHT OF MY CLIENT, CORRECT?

A THAT'S KIND OF VAGUE. I WAS WITH HIM THE WHOLE TIME. I, YOU KNOW, I PRETENDED TO OR HESITATED AND PRETENDED TO HIT THE PIPE AND OTHER THINGS, SO MAY HAVE LOST SIGHT FOR A FEW SECONDS, BUT I WAS WITH HIM THE ENTIRE TIME.

Q OKAY.

A AND YOU ARE PROBABLY GOING TO REFER TO A PRELIM.

Q YES.



THE BAGGIE OF THREE GRAMS.

EXHIBIT B
CHAVEZ

1      MR. HERNANDEZ:  MAY I DO THAT, YOUR HONOR?

2      THE COURT:  YES.

3      MR. HERNANDEZ:  OKAY.

4    BY MR. HERNANDEZ:

5      Q    OFFICER, CAN YOU PLEASE REFER TO PAGE 11 OF THE

6    PRELIMINARY HEARING TRANSCRIPT.

7      A    I SURE CAN.

8      Q    LINES BETWEEN -- LINES BETWEEN 9 AND 14.

9      A    I'M SORRY.  WHAT LINES?

10     Q    BETWEEN LINES 9 AND 14 ON PAGE 11.

11     A    OKAY.

12          (THE WITNESS COMPLIED.)

13     Q    NOW, ACCORDING TO WHAT YOU TESTIFIED TO UNDER OATH, DID

14   YOU EVER LOSE SIGHT OF MY CLIENT AT ANY POINT?

15     A    AND I TESTIFIED NO.  HE WAS IN THE VEHICLE OR WITH ME.

16     Q    AND MY QUESTION WAS REFERRED TO AT ANY POINT, CORRECT?

17     A    YES.

18     Q    SO WOULD YOU GIVE ME THAT THREE GRAMS OF COCAINE BASE

19   AS SUBSTANTIALLY MORE THAN .07 GRAMS?

20     A    YES.  I WOULD SAY THAT.

21     Q    AND IF SOMEONE WERE TO INGEST THREE GRAMS, WOULD THAT

22   NOT RESULT IN THAT PERSON BEING HARMED, THAT MUCH COCAINE?

23     A    INGEST MEANING?

24     Q    TAKE.

25     A    SMOKE IT?

26     Q    YES.

27     A    THAT'S A LOT OF COCAINE BASE.

28     Q    OKAY.

51

EXHIBIT B
CHAVEZ

1          SO THE QUESTION I HAVE FOR YOU IS WHERE IS THE BINDLE;

2    WHERE DID THE BINDLE ACCOUNTED FOR OF THE THREE GRAMS OF COCAINE?

3        A    I DON'T KNOW.

4        Q    NOW, WHAT WERE THE EFFORTS TO RECOVER THAT BINDLE?

5        A    IT WAS NEVER RECOVERED.

6        Q    WHAT WERE THE EFFORTS, THOUGH?  I'M ASKING ABOUT THE

7    EFFORTS.  WAS THERE AN EFFORT TO RECOVER THE BINDLE?

8        A    YES.

9        Q    OKAY.

10          COULD YOU TELL ME ABOUT WHAT THOSE EFFORTS WERE?

11        A    OFFICER WILSON SEARCHED MR. ANDERSON.

12        Q    OKAY.

13        A    AND THEN OFFICER TAGABAN SEARCHED THE VEHICLE.

14        Q    AND YOU DIDN'T FIND THE BINDLE.

15        A    AND SHE DID NOT FIND THE BINDLE.

16        Q    AND THAT'S IT.

17        A    WHAT DO YOU MEAN?

18        Q    AS FAR AS YOUR EFFORTS TO FIND THE BINDLE, THAT WAS

19    YOUR SEARCH.

20        MS. MAUND:  ARGUMENTATIVE, YOUR HONOR.

21        THE COURT:  OVERRULED.

22          YOU MAY ANSWER.

23        THE WITNESS:  I TOLD THE OFFICERS THAT I HAD SEEN

24    APPROXIMATELY THREE GRAMS IN HIS HAND AND ASKED THEM TO SEARCH

25    THE AREA.  THEY SEARCHED THE AREA.

26    BY MR. HERNANDEZ:

27        Q    AND YOU TOLD THEM YOU ALSO SAW IT WRAPPED IN A BINDLE,

28    CORRECT?

52

EXHIBIT B
CHAVEZ

1    A    I TOLD THEM -- I DESCRIBED WHAT I HAD SEEN, AND I ASKED

2    THEM TO SEARCH THE AREA.  I DIDN'T SPECIFICALLY GO BACK.

3    Q    DID YOU PUT IN YOUR REPORT YOUR EFFORTS TO LOCATE THAT

4    BINDLE?

5    A    NO, IT IS NOT.

6    Q    SO WOULD IT BE FAIR TO SAY HAD THAT BINDLE BEEN LOCATED

7    IT COULD HAVE BEEN MAYBE FINGERPRINTED TO SEE IF IN FACT MR.

8    ANDERSON TOUCHED THAT BINDLE?

9    MS. MAUND:  SPECULATION.

10   THE COURT:  SUSTAINED.

11   BY MR. HERNANDEZ:

12   Q    OFFICER, WERE YOU MAYBE -- WELL, THIS IS -- THIS WAS --

13   THIS INCIDENT OCCURRED AT NIGHT, CORRECT?

14   A    YES.

15   Q    AND CORRECT ME IF I'M WRONG, BUT THERE'S CHILDREN WHO

16   TRAVERSE THE AREA WHERE THE INCIDENT TOOK PLACE, THAT TRAVERSE

17   THE AREA THE FOLLOWING MORNING AND AFTERNOON, CORRECT?

18   MS. MAUND:  SPECULATION.

19   THE COURT:  AS WORDED I'LL SUSTAIN THAT OBJECTION, YES.

20   BY MR. HERNANDEZ:

21   Q    LET ME JUST ASK YOU DIRECTLY, OFFICER.  WERE YOU

22   WORRIED MAYBE SOME CHILD COULD FIND THAT BINDLE IF IT WAS IN THE

23   AREA?

24   A    LIKE I SAID, I ASKED THE OFFICERS -- I TOLD THEM WHAT I

25   SAW, AND I ASKED THEM TO SEARCH THE AREA FOR THIS PRODUCT.  AND I

26   RELAYED TO MY OFFICERS TO DO A GOOD SEARCH AND TRY TO LOCATE WHAT

27   I SAW.

28   Q    BUT YOU'RE THE INVESTIGATING OFFICER, RIGHT?  CORRECT?

53

# EXHIBIT D

## ATTORNEY A. HERNANDEZ CLOSING ARGUMENT

1    WILSON AND TAGABAN ARE THE ONLY ONES WHO PREPARED A REPORT ASIDE

2    FROM OFFICER CHAVEZ.  YOU'RE TAKING NOTES.  I KNOW YOU WERE

3    PAYING ATTENTION.  BUT MY OBSERVATIONS OF EIGHT PEOPLE WHO WERE

4    AT THE SCENE OF THIS ALLEGED DRUG BUST, ONLY THREE PREPARED A

5    REPORT.  WHY DO I POINT THAT OUT.  THREE OUT OF EIGHT.

6            BECAUSE THE PROSECUTOR IS RIGHT IN THIS CASE; SHE

7    DOESN'T HAVE TO CALL EVERY SINGLE WITNESS OR POSSIBLE WITNESS IN

8    THIS CASE.  SHE DOESN'T HAVE TO PRODUCE EVERY SINGLE PHYSICAL

9    EVIDENCE OR PIECE OF PHYSICAL EVIDENCE THAT COULD HAVE BEEN

10   PRODUCED.  BUT SHE STILL HAS TO PRODUCE ENOUGH CREDIBLE EVIDENCE

11   TO PROVE TO YOU BEYOND A REASONABLE DOUBT THAT MR. ANDERSON

12   COMMITTED THE CRIMES FOR WHICH HE IS CHARGED.  SHE STILL HAS TO

13   DO THAT.  SO SHE HAS GOT TO DO BASICALLY WHATEVER IT TAKES TO

14   OVERCOME THAT BURDEN OF PROOF, TO OVERCOME THAT STANDARD OF PROOF

15   AND MEET HER BURDEN.

16            OKAY.  OFFICER SPEARS TESTIFIED.  NOW, HE WAS THE EYES

17   OF THE OPERATION.  OKAY.  I DON'T KNOW IF IT IS SEMANTICS OR SOME

18   SORT OF MISNOMER, BUT THE EYES KIND OF IMPLY THE PERSON IS

19   ACTUALLY SEEING EVERYTHING, WATCHING.  I KNOW THEY DON'T WANT TO

20   -- I KNOW THEY WANT TO DOWNPLAY THE FUNCTION OF THE EYES, BUT

21   WE'RE TALKING ABOUT A VERY LIMITED TIME HERE, LIKE A FIVE-OR-TEN-

22   MINUTE SPAN WHERE THERE'S SIXTEEN EYES, EIGHT SETS OF EYES,

23   HOWEVER YOU WANT TO PUT IT.  EVERYBODY IS WORKING AS A UNIT,

24   THAT'S WHY THEY CALL IT TEAM EIGHT.  AND I THINK IT'S IMPORTANT

25   TO NOTE THAT ONE OF THOSE OFFICERS SHOULD HAVE BEEN CONSTANTLY

26   WATCHING WHAT WAS GOING ON EXACTLY BETWEEN OFFICER CHAVEZ AND MR.

27   ANDERSON.  SO THAT'S OFFICER SPEARS' TESTIMONY THERE.

28            I BELIEVE HE ALSO INDICATED A CERTAIN BIAS.  HE

EXHIBIT D
A. HERNANDEZ

1    REFERRED AND I ASKED HIM ABOUT IT STRAIGHT OUT WHETHER OR NOT HE

2    HAD A RELATIONSHIP OR WHETHER OR NOT HE WAS FRIENDS WITH OFFICER

3    CHAVEZ.  AND HE DID DISCLOSE THAT BIAS, THAT HE IS, INDEED, HIS

4    FRIEND.  NOT ONLY A TEAMMATE OF TEAM EIGHT, NOT ONLY PART OF TEAM

5    EIGHT, BUT ALSO A FRIEND.

6         OFFICER TAGABAN, SHE IS THE ONE WHO INTRODUCED THE

7    WHOLE CONCEPT OF EYES AND WHAT THE EYES MEAN TO -- WHAT THE EYES

8    OFFICER AND THAT FUNCTION THAT POLICE OFFICER PERFORMS EXACTLY.

9         NOW, AND THEN WE HAVE OFFICER WILSON WHO TESTIFIES THAT

10   HE'S THE ONE WHO SEARCHED MR. ANDERSON, FOUND A PIPE.  OR PIPES.

11   I STILL DON'T KNOW.  I MEAN HE TESTIFIED THAT HE FOUND TWO PIPES

12   ON MY CLIENT, MR. ANDERSON.  BUT HE ALSO ACKNOWLEDGED WHEN I

13   CONFRONTED HIM WITH BASICALLY HIS ONE-PAGE REPORT TO LOOK AT THAT

14   REPORT WHICH HE DID AND WHICH YOU CANNOT IGNORE IS THAT IN HIS

15   REPORT IT STATED PLAIN AND SIMPLE I RECOVERED A PIPE.  A PIPE.

16   SO WHAT IS IT, ONE OR TWO PIPES.  I DON'T KNOW WHAT KIND OF

17   DIFFERENCE THE WHOLE SIGNIFICANCE OF THE PIPE THING IS CONCERNED,

18   BUT I'M GOING TO GET TO SOME OTHER INCONSISTENCIES.

19         I WILL SAY IF SOMEONE IS WILLING TO LIE ABOUT ONE

20   LITTLE THING OR COVER UP ONE LITTLE THING, WELL, THE BIG THINGS

21   IN THIS CASE, THEN MAYBE THAT'S SUBJECT TO COVERUP AS WELL, TOO.

22   AND WE ALL KNOW THE WHITE ELEPHANT I'M TALKING ABOUT HERE.

23   MISTER BINDLE.  MISTER THREE GRAMS OF ROCK COCAINE.

24         NOW, YOU'RE GOING TO HAVE -- YOU'RE NOT GOING TO BE

25   ABLE TO TAKE WITH YOU BACK THERE I DON'T THINK THESE TWO PIECES

26   OF EVIDENCE, BUT YOU CAN EXAMINE THEM OUT HERE.  WHAT I WANT YOU

27   TO LOOK OUT FOR IS THINGS THAT I REFERRED IN MY CROSS-EXAMINATION

28   WHEN I WAS QUESTIONING OFFICER WILSON AND OFFICER CHAVEZ.  I

55

EXHIBIT D
A. HERNANDEZ

1   FORGET WHICH ONE IT IS, BUT DOWN HERE WRITTEN DOWN YOU ARE GOING

2   TO READ FOR YOURSELVES WHEN QUESTIONED ABOUT THE AMOUNT, WHETHER

3   IT'S ONE OR TWO PIPES, A GLASS NARCOTICS SMOKING PIPE FOUND ON

4   ANDERSON BY OFFICER WILSON, THERE IS AN ASTERISK THERE.  AND THEN

5   UNUSED GLASS PIPE, BUT THERE IS NO REFERENCE TO OFFICER WILSON.

6   WE ARE TO ASSUME ACCORDING TO THE WAY THE DISTRICT ATTORNEY

7   PRESENTS HER CASE THAT OFFICER WILSON FOUND THAT THERE AND IT

8   JUST WASN'T NOTED.  AGAIN KEEPING IN MIND WHAT THE OFFICER

9   TESTIFIED AS TO WHAT CONTAINED IN HIS REPORT.

10       NOW, THE WHITE ELEPHANT, GETTING TO THE WHITE ELEPHANT.

11  IT'S NOT OUR CONTENTION THAT IT EXISTED AND JUST WASN'T FOUND.  I

12  THINK THAT'S KIND OF INSULTING TO PEOPLE'S INTELLIGENCE.  AND I

13  WILL GET INTO THAT.  BUT THE OFFICERS, THE INTERESTING THING IS

14  THEY NOTED THIS EFFORT.  IF YOU WERE TO LISTEN TO THEIR TESTIMONY

15  AND EVERYTHING THAT THEY ALL TESTIFIED, THEY ALL LOOKED FOR THE

16  BINDLE OF THREE GRAMS OF ROCK COCAINE, THREE GRAMS THAT IS FOUND,

17  INGESTED BY SOMEBODY ELSE, A CHILD CERTAINLY COULD BE LETHAL.

18  AND THEY JUST LEFT THE SCENE.  FINE.  WE TRIED LOOKING FOR THE

19  BINDLE.  CAN'T FIND IT.

20       NOW, THE EXISTENCE OF THAT BINDLE, WHETHER OR NOT IT

21  EVEN EXISTED, IS CALLED INTO SERIOUS QUESTIONS.  INTO SERIOUS

22  QUESTION.  BUT THE THING IS WHAT I AM SUBMITTING TO YOU LADIES

23  AND GENTLEMEN IS THAT IT NEVER EXISTED.  AND IT'S REALLY AN

24  IMPORTANT PIECE OF EVIDENCE.  IT'S LIKE THE SMOKING GUN.  IT

25  COULD HAVE BEEN THE SMOKING GUN FROM THE PROSECUTION'S CASE.

26  AGAIN WE'RE LOOKING AT A CLOSED PERIOD OF TIME WHERE WE

27  CONSTANTLY OBSERVING.  HE OFFERED THE EXPLANATION SOMEHOW IT WAS

28  IN THE CAR AND SPREAD OUT IN THE CAR OF MR. ROSE, DELBERT ROSE.

EXHIBIT D
A. HERNANDEZ

1  OKAY. HAVE YOU HEARD ANY TESTIMONY THAT SOMEHOW WE SAW HIM

2  SHUFFLING AROUND AND THROWING OUT THE POWDERY SUBSTANCE.  AND

3  WHERE IS THE PLASTIC BAGGY.  WHERE IS THE PLASTIC BAGGY.  I MEAN

4  WE'VE HEARD SOME TESTIMONY TO THAT EFFECT, BUT, AGAIN, NONE OF

5  THE TEAM EIGHT MEMBERS CAME IN TO SAY THAT, THAT THEY SAW

6  SOMETHING.

7           IN FACT, WHEN THE PROSECUTION WAS ALLOWED TO OPEN THE

8  CASE AFTER SHE HAD RESTED AND THIS DOCUMENT FLEW IN WHICH I, YOU

9  KNOW, I KIND OF EXPECTED THAT NEW EVIDENCE.  DIDN'T YOU.  SEE

10 MAYBE ANOTHER MEMBER OF TEAM EIGHT THAT SAW SOMETHING, THAT SAW

11 THE TRANSACTION OR SAW A TOSSING MOTION OF SOMEBODY TOSSING THE

12 DRUGS.  I MEAN THINK ABOUT THAT.  I MEAN ALL THESE TEAM MEMBERS

13 TESTIFIED THAT THEY SEARCHED.  AND THEY ALSO ADMITTED THAT THEY

14 DIDN'T MAKE THAT EFFORT, THAT SEARCH EFFORT, NOTED IN THEIR

15 REPORT.

16           THEY ALSO ADMITTED, A COUPLE OF THEM, WHEN QUESTIONED,

17 WHY DIDN'T YOU CALL A CANINE UNIT.  WE HAVE SEEN THE CANINE UNIT.

18 WE KNOW THOSE DOGS WILL SNIFF OUT ANYTHING, CERTAINLY DRUGS.  I

19 MEAN YOU KIND OF LIKE THEY HAVE THE AUDACITY TO COME UP WITH

20 THIS.  THEY HAVE THE ARROGANCE.  THE GOVERNMENT HAS THE ARROGANCE

21 IN THIS CASE TO THINK THAT YOU'RE JUST GOING TO ACCEPT THAT.  OH.

22 OKAY.  WE ACCEPT THAT.  YOU TRIED LOOKING.  YOU COULDN'T FIND IT.

23 OKAY.  LET'S MOVE ON.  LET'S CROSS THE T'S AND DOT THE I'S.

24 LET'S JUST OVERLOOK THAT FACT.  THAT EVIDENCE IS REALLY IMPORTANT

25 WHEN YOU THINK ABOUT IT BECAUSE IT PROVES THAT A PERSON HAS A LOT

26 OF DRUGS, A LOT MORE THAN SEVEN GRAMS THAT WERE FOUND, SIX OR

27 SEVEN GRAMS.  AND SOMETHING ELSE THAT WOULD PROVE.

28           THESE ARE NOT DRUGS.  THIS IS SUGAR.  BUT BY WAY OF

57

EXHIBIT D
A. HERNANDEZ

1  ILLUSTRATION, OKAY.  I'M NOT WEARING GLOVES.  BUT WHETHER THERE'S

2  ANYTHING INSIDE, YOU CAN IMAGINE ROCK COCAINE.  I'M TOUCHING

3  THIS.  THE OFFICER TESTIFIED THERE WERE NO GLOVES FOUND.  AS FAR

4  AS HE KNOWS MR. ANDERSON DIDN'T HAVE GLOVES ON.  SO WHAT DO WE

5  HAVE LEFT FOR FINGERPRINTS.  FINGERPRINTS.

6         SO THERE'S TWO REASONS WHY THE OFFICERS I THINK WOULD

7  HAVE MADE AN EFFORT TO FIND THIS IF IT EXISTED, TO FIND MISTER

8  BINDLE.  IT'S MY CONTENTION MISTER BINDLE NEVER EXISTED.  BUT HOW

9  IS IT MISTER BINDLE WAS INTRODUCED.  OFFICER CHAVEZ MENTIONED

10  THAT AT THE HEARING ON APRIL 20TH.  HE TOOK AN OATH.  HE

11  TESTIFIED AS TO THE FACT HE BELIEVED WHEN HE WAS WORKING AS THE

12  UNDERCOVER OFFICER, HE TESTIFIED ON THE LEFT HAND I SAW MR.

13  ANDERSON HOLDING THE BINDLE AND HIS RIGHT HAND HE GAVE ME THE

14  ROCKS.  THINK ABOUT THAT.  HE'S HOLDING IT.  AND THAT WAS

15  INTRODUCED BY CHAVEZ, THE FOUNDATION OF THE PEOPLE'S CASE.

16         AFTER THAT, THEN WE HAVE MISTER -- WE COULD HAVE HAD

17  SOMEONE LIKE MR. HEALY, AN EXPERT, TESTIFY AS TO THE EXPERT.  HE

18  WOULD HAVE TAKEN THE STAND AND HE WOULD HAVE TESTIFIED OKAY, I

19  EXAMINED THE EVIDENCE, AND THEY POINT TO THAT GUY RIGHT THERE.

20  THAT WOULD HAVE BEEN HARD EVIDENCE.  YOU GOT TO THINK WHO'S GOT

21  THE BURDEN OF THIS CASE, WHO COULD HAVE OBTAINED THAT

22  INFORMATION.  WHO CHOSE NOT TO OBTAIN THAT INFORMATION.  WHO'S

23  MAKING IT UP.  YOU CANNOT IGNORE THAT, LADIES AND GENTLEMEN.  YOU

24  CANNOT IGNORE THAT.

25         WE HAVE TEAM EIGHT STILL STANDING BY THEIR MAN, OFFICER

26  CHAVEZ, SAYING THAT WE LOOKED FOR THE BINDLE.

27         NOW, THIS IS MY ONLY CHANCE TO ADDRESS YOU.  AND WHAT I

28  PREDICT THE PROSECUTOR IN THIS CASE IS GOING TO DO IS GET UP AND

EXHIBIT D
A. HERNANDEZ

321

1    TELL YOU A BINDLE, THAT'S A RED HERRING.  THAT IS A SMOKESCREEN.

2    DEFENSE IS TRYING TO CONFUSE YOU.  BUT THE THING IS I'VE GIVEN

3    YOU REASONS WHY I THINK THAT THAT EVIDENCE IS SIGNIFICANT IF IT

4    IN FACT EXISTED.

5         SO BASICALLY WHAT WE HAVE HERE, WHAT I AM GOING TO

6    ARGUE TO YOU, WHAT I AM GOING TO TELL YOU WITHOUT RESERVATION IS

7    WE HAVE A DIRTY COP, CHAVEZ.  I KNOW HE SMILED AT YOU A LOT,

8    GOOD-LOOKING GUY.  HE'S YOUNG.  I MEAN HE'S GOING TO PRESENT

9    HIMSELF WELL.  TOLD YOU HE TOOK PART OF COURSE HOW TO PRESENT

10   HIMSELF IN COURT.  BUT HE'S GOING TO COME UP AND PRESENT HIMSELF

11   TO YOU AND HAVE THE AUDACITY TO TELL YOU THAT I SAW A BINDLE OF

12   COCAINE AND HAVE YOU ACCEPT THAT JUST BECAUSE HE SAID IT.  DON'T

13   FALL FOR THAT, LADIES AND GENTLEMEN.  THINK ABOUT IT.  THINK OF

14   HOW IMPORTANT THAT EVIDENCE IF IT EXISTED.  THINK ABOUT HOW THAT

15   WOULD HAVE BEEN FOUND IN FACT IN THIS CASE WITH NOT EVEN THAT

16   MUCH OF AN EFFORT.  THE PROSECUTION IN THAT CASE OBVIOUSLY

17   THOUGHT THAT WAS IMPORTANT ENOUGH BECAUSE SHE HAD HER WITNESSES

18   ADDRESS THAT EVEN THOUGH IT WASN'T EVEN INCLUDED IN THEIR REPORT.

19        NOW, THE ANALOGY THAT I LIKE TO PRESENT TO YOU, AND I'M

20   A MOVIE GUY, I LIKE MOVIES.  MY WEAKNESS.  I LIKE EVEN THOSE

21   STUPID HORROR MOVIES, "JASON," THINGS LIKE THAT.  AND WE GO TO

22   MOVIES TO BE ENTERTAINED.  BUT WE ALSO GO TO MOVIES TO BE STUPID

23   IN A WAY BECAUSE WE GOT TO ACCEPT IMPOSSIBLE PROPOSITIONS, THINGS

24   THAT DON'T MAKE SENSE, BECAUSE OTHERWISE WE ARE NOT GOING TO BE

25   ENTERTAINED.  WE WILL SAY THAT'S STUPID.  THESE PEOPLE GOING TO

26   WALK IN THE TUNNEL WHEN THEY SEE BODIES ALONG THE WAY.  WHAT'S

27   GOING TO HAPPEN TO THEM.  WE WANT THINGS TO HAPPEN TO THEM.  WE

28   WANT TO SEE IT.  WE WANT TO BE SCARED.  NOW, THAT'S MOVIES.  THIS

59

EXHIBIT D
A. HERNANDEZ

1    IS REAL LIFE.  SOMEBODY'S PERSONAL LIBERTY IS AT STAKE HERE.

2         MS. MAUND:  OBJECTION.  IMPROPER ARGUMENT.

3         THE COURT:  OVERRULED.

4         MR. HERNANDEZ:  SOMEBODY'S PERSONAL LIBERTY IS AT STAKE

5    HERE.  SO UNLIKE THE MOVIES, THINGS HAVE TO FALL INTO PLACE.

6    THINGS HAVE TO MAKE SENSE.  I'M ASKING YOU NOT TO LEAVE YOUR

7    COMMON SENSE OUT THE DOOR.  I WANT YOU TO USE YOUR COMMON SENSE.

8    I WANT YOU ASKED -- I WANT YOU TO ASK THE REAL QUESTIONS IN THIS

9    CASE.  I WANT YOU TO ASK YOURSELF IF THIS REALLY MAKES SENSE THAT

10   WE HAVE EIGHT OFFICERS LOOKING AT THIS ONE SPECIFIC LOCATION

11   WHERE A REALLY SMALL AMOUNT OF TIME, CONTINUOUS OBSERVATION,

12   SHOULD HAVE BEEN CONTINUOUS OBSERVATION, AND WE DON'T FIND MISTER

13   BINDLE.  AND WE DON'T HAVE ANYBODY ELSE TO SHOW THAT IN FACT A

14   TRANSACTION HAD TAKEN PLACE OR INTERACTION BETWEEN CHAVEZ AND MY

15   CLIENT.

16        I MEAN THE PROSECUTOR, YOU KNOW, PUT ON POWERPOINT.

17   THEY ARE WALKING TOGETHER.  BUT IF YOU LOOK AT WHAT SHE HAD IN

18   HER POWERPOINT, THEY ARE DOING NOTHING ELSE BUT JUST WALKING

19   TOGETHER. AND ISN'T THAT CONSISTENT WHEN I WAS ASKING CHAVEZ ON

20   CROSS-EXAMINATION, YOU KNOW, HE GAVE YOU THE IMPRESSION HE WENT

21   UP AND ASKED THE CLIENT RIGHT AWAY FOR A TWENTY, AND THE CLIENT

22   WAS RIGHT AWAY GOING TO SELL HIM OR FURNISH HIM DRUGS.  BUT IF

23   YOU LISTEN ON CROSS-EXAMINATION HE ACTUALLY MADE FOUR ATTEMPTS.

24   SO THAT WOULD EXPLAIN THEM WALKING TOGETHER.  HE'S TRYING TO GET

25   HIM TO SELL DRUGS.  HE'S TARGETING HIM TO SELL HIM DRUGS.  HE'S

26   GETTING FRUSTRATED BECAUSE HE'S NOT SELLING HIM DRUGS BECAUSE HE

27   DOESN'T HAVE ANY DRUGS.  BUT HE HAS A GOOD IDEA AT THAT TIME

28   THESE PEOPLE ARE OUT SELLING DRUGS.

EXHIBIT D
A. HERNANDEZ

1    NOW, HE ALSO ACKNOWLEDGED THAT MY CLIENT GAVE HIM HIS

2    NAME.  HE WAS COOPERATIVE.  SUPPLIED HIM WITH A DATE OF BIRTH.

3    NOW, IF I WOULD HAVE ASKED HIM, HE PROBABLY WOULD HAVE SAID, NO,

4    BUT HE DID MAYBE ASK FOR HIS NAME AND FIND OUT THE INFORMATION HE

5    WAS SOMEHOW INVOLVED IN SOME DRUG ACTIVITY THAT YOU HEARD DONE

6    EARLIER, LIKE SIX YEARS AGO.  WE WILL NEVER KNOW.  BUT WE KNOW

7    THAT ON THAT PARTICULAR INSTANCE AS TO HOW MANY TIMES HE TRIED TO

8    GET MR. ANDERSON TO FURNISH OR SELL HIM DRUGS, HE DID NOT TAKE

9    ONE, TWO, OR THREE, BUT FOUR TIMES.

10    AND HE ACKNOWLEDGED WHEN I SHOWED HIM THE PRELIMINARY

11    HEARING TRANSCRIPT, I MEAN THIS REPRESENTS THE TRUTH AS FAR AS WE

12    KNOW IT, BECAUSE IT WAS IN A COURTROOM.  THE OFFICER WAS UNDER

13    OATH.  HE HAD TO TELL THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT

14    THE TRUTH.  AND IF YOU WERE PAYING CAREFUL ATTENTION WHEN I

15    SHOWED HIM THIS, HIS REACTION WAS KIND OF INTERESTING.  OH, YOU

16    COMING UP WITH THAT AGAIN.  I'M COMING UP WITH THE TRUTH.  HE'S

17    GOT AN AVERSION TO THE TRUTH ALL OF A SUDDEN.  HE DIDN'T TAKE THE

18    OATH THEN AS HE DID NOW AND NOW HE'S CHANGING IT, AND HE WANTS

19    YOU TO ACCEPT THAT.  YOU CANNOT IGNORE THAT.  YOU CANNOT IGNORE

20    HIS DEMEANOR.

21    AND WHEN YOU GET A JURY INSTRUCTION, YOU KNOW, ON

22    JUDGING THE WITNESSES IN THIS CASE, I WANT YOU TO READ IT, AND I

23    WANT YOU TO ANALYZE OFFICER CHAVEZ' TESTIMONY IN RELATION TO THIS

24    CRITERIA BECAUSE IT SAYS WHAT YOU CAN CONSIDER WHEN YOU WANT TO

25    DISCOUNT THE TESTIMONY, THE CREDIBILITY AND THE TESTIMONY OF A

26    WITNESS, YOU CAN -- THE THINGS THAT ARE LISTED HERE APPLY TO

27    OFFICER CHAVEZ.  PLEASE DON'T IGNORE THAT.  IT'S COMMON SENSE,

28    TOO.  I MEAN WHEN YOU THINK ABOUT IT, SOME OF THE FACTORS HERE,

*EXHIBITS D*
*A. HERNANDEZ*

1  WAS THE WITNESS' BEHAVIOR, WHAT WAS THE WITNESS' BEHAVIOR WHILE

2  TESTIFYING. WHAT WAS OFFICER'S DEMEANOR. I MEAN WHEN I FINALLY

3  ASKED HIM, YOU KNOW, I HAD TO ASK HIM I MEAN I'M DEFENDING MY

4  CLIENT, BUT I HAD TO ASK BECAUSE IT'S ONE HELL OF A COINCIDENCE

5  THAT CHAVEZ WAS DEMOTED AROUND THE SAME TIME OF THE PRELIMINARY

6  HEARING. HE'S ONLY WORKED THAT TEAM FOR EIGHT MONTHS, AND THAT'S

7  IT. AND I HAD TO ASK DID IT HAVE ANYTHING TO DO WITH THE MISSING

8  THREE GRAMS. HIS RESPONSE, HE WAS OFFENDED. OH, EXCUSE ME. I

9  MEAN I ACTUALLY EVEN PITY THE GUY BECAUSE I DON'T THINK HE

10  REALIZED THAT AND MAYBE HE WAS DEMOTED. BUT MY PITY DOES NOT

11  EXTEND THAT FAR AS TO SACRIFICE MY CLIENT'S LIBERTY IN THIS CASE.

12  NOT GOING TO DO THAT. I HAVE TO DO MY JOB. AND I BELIEVE I DID

13  THAT. I EXPOSED THINGS IN OFFICER CHAVEZ THAT YOU COULD NOT

14  IGNORE.

15  SOME OTHER THINGS. ANOTHER CRITERIA. DID THE WITNESS

16  UNDERSTAND THE QUESTIONS AND ANSWER THEM DIRECTLY. WELL, CHAVEZ

17  INDICATED HE DIDN'T KNOW WHAT CORROBORATION WAS OR WHAT THAT IS.

18  I DON'T THINK MY VOCABULARY IS THAT HUGE. I DON'T THINK THAT'S

19  THAT BIG OF A WORD. WE ALL KNOW WHAT CORROBORATION IS. SHE

20  DOESN'T HAVE TO DO THAT, THE PROSECUTOR DOES NOT HAVE TO PRODUCE

21  THAT, BUT SHE'S GOT TO SOMEHOW SUPPORT I WOULD THINK THE

22  TESTIMONY OF THEIR ONLY WITNESS WHO CAN TESTIFY THAT MR. ANDERSON

23  COMMITTED ONE OF THE THREE CRIMES. SHE'S HAD AMPLE OPPORTUNITY.

24  SHE EVEN GOT TO REOPEN HER CASE. SHE DOESN'T DO THAT.

25  ANOTHER CRITERIA. DOES THE WITNESS HAVE A PERSONAL

26  INTEREST IN HOW THE CASE IS DECIDED. YOU DECIDE THAT. YOU SAW

27  OFFICER CHAVEZ SIT HERE THROUGHOUT THE TESTIMONY EVEN THOUGH HE

28  WAS ALREADY DONE. HE STILL REMAINED IN THE COURTROOM BEFORE AND

*EXHIBIT D*
*A. HERNANDEZ*

1    AFTER HIS TESTIMONY.  I MEAN HIS CAREER, KIND OF A PERSONAL

2    INTEREST IN THIS CASE, HOW THE OUTCOME OF THIS CASE COMES OUT.

3    IT'S GOT TO AFFECT HIS CAREER.

4          THE WITNESS' ATTITUDE.  YOU SAW CHAVEZ' ATTITUDE.

5          DID THE WITNESS MAKE IN THE PAST CONSISTENT OR

6    INCONSISTENT, MAKE A STATEMENT IN THE PAST THAT IS INCONSISTENT

7    OR CONSISTENT WITH THE TESTIMONY.  WELL, WE HAVE A NUMBER OF

8    PIPES.  WE HAVE THE NUMBER OF ATTEMPTS THAT CHAVEZ WAS MAKING TO

9    GET DRUGS FROM MY CLIENT.

10          ANOTHER INCONSISTENCY, AND THAT IS HE MADE IT SOUND

11    THOUGH MY CLIENT REPEATEDLY TOLD HIM TO SMOKE IT IN THE BACK SEAT

12    OF THE CAR.  I MEAN ALONE THAT'S MAYBE NOT A BIG DEAL.  MAYBE HE

13    DIDN'T INCLUDE THAT IN HIS REPORT.  BUT WHEN YOU CONSIDER THAT IN

14    THE TOTALITY OF THE CIRCUMSTANCES HERE, IT'S ANOTHER LIE.  IT'S

15    ANOTHER LIE.  THERE IS NO OTHER WAY OF PUTTING IT.  MAYBE HE

16    SHOULD HAVE READ THE TRANSCRIPT AND REALIZED WHAT HE SAID BACK

17    THEN WHILE HE WAS UNDER OATH.  BUT WHAT HE SAID BACK THEN WAS

18    THAT WHAT HE SAID IN HIS REPORT, THAT MY CLIENT ONLY ASKED HIM

19    ONE TIME, AND THAT'S IT.  HE COMES IN AND TELLS YOU THAT ANDERSON

20    ASKED HIM REPEATEDLY.  SO HE WANTS YOU TO BELIEVE THAT.

21          ANOTHER CRITERIA IS HOW REASONABLE IS THAT TESTIMONY BY

22    CHAVEZ.  I'M NOT GOING TO BELABOR THE POINT THERE.

23          AND ANOTHER ONE IS DID THE EVIDENCE, DID OTHER EVIDENCE

24    PROVE OR DISPROVE ANY FACT WHICH THE WITNESS TESTIFIED.  AGAIN,

25    WE GO TO THE PIPES.  BOTH WILSON ACTUALLY AND CHAVEZ, MAINLY

26    CHAVEZ TESTIFIED THERE'S TWO PIPES.  THE EVIDENCE WHICH YOU ARE

27    GOING TO GET TO EXAMINE SAYS ONLY ONE PIPE, INDICATES ONLY ONE

28    PIPE BY WILSON.

*63*

*EXHIBIT D*
*A. HERNANDEZ*

326

1    I TOLD YOU ABOUT THE BIGGEST LIE IN THIS CASE.  THERE

2    IS NO CORROBORATION WHATSOEVER.  AND I BELIEVE THIS CASE WARRANTS

3    THAT.  WE HAVE MEMBERS FROM TEAM EIGHT THAT ARE TRYING THEIR BEST

4    TO BACK UP WHATEVER CHAVEZ SAYS.  CERTAINLY THEY ARE NOT

5    TESTIFYING AGAINST HIM.  WE HAVE EVIDENCE OF A COVERUP, EVIDENCE

6    OF A DIRTY COP.

7    HOW DOES THE PROSECUTOR RESPOND TO THAT.  WE KNOW

8    THERE'S NO HARD EVIDENCE.  WE KNOW THERE ARE NO OTHER WITNESSES.

9    SHE INTRODUCES EXTRANEOUS EVIDENCE, EVIDENCE WHEN YOU THINK ABOUT

10   IT REALLY DOESN'T -- IS NOT RELEVANT HERE.  THIS IS A DRUG, A

11   HAND-TO-HAND SUPPOSEDLY THAT TOOK PLACE.  INTENT'S NOT AN ISSUE

12   IF YOU ARE GOING TO SELL SOMEBODY SOMETHING AND THEY TAKE IT FROM

13   YOU.  INTENT IS THERE ALREADY.  IT'S NOT THAT YOU POSSESS DRUGS

14   FOR YOURSELF IF YOU ARE GIVING IT TO SOMEBODY ELSE OR TRYING TO

15   SELL IT TO SOMEBODY ELSE.  THINK ABOUT IT.  HOW IS INTENT

16   RELEVANT HERE.  YET SHE INTRODUCES DELBERT ROSE BECAUSE THERE'S

17   DRUGS IN THE CAR, EVEN THOUGH THERE'S NO CONNECTION, NO WITNESSES

18   THAT TESTIFIES ANYTHING HAPPENS BETWEEN DELBERT ROSE AND MR.

19   ANDERSON.

20   AND THEN OFFICER RILES COME IN TO TALK ABOUT SOME

21   INCIDENT THAT HAPPENED SIX YEARS AGO THAT HE CAN BARELY REMEMBER.

22   I MEAN I'M THINKING I GOT TO HAVE SOMEBODY TO LISTEN TO THAT

23   OTHER END OF THAT TRANSMITTER, THAT COMMUNICATION THAT SAYS, HEY,

24   THE TRANSACTION IS TAKING PLACE.  IT'S OKAY TO DO THE BUST.  A

25   TAPE RECORDING, VIDEO, SOME OTHER WITNESS.  THAT'S WHAT I WANT.

26   BUT, INSTEAD, WHAT DO WE GET.  AN OFFICER WHO TALKS ABOUT HOW

27   ROBBYE ANDERSON, THEY REFER TO HIM BEING INVOLVED IN SOME SORT OF

28   DRUG MATTER.

64

EXHIBIT D
A. HERNANDEZ

327

1          NOW, IT INVOLVED A WHITE SUBSTANCE WHICH THE OFFICER

2     WHO ACKNOWLEDGES THAT HE'S NOT A CHEMIST OR BIOLOGIST OR HAS NO

3     SPECIAL DEGREES TO TEST ANYTHING, SO WE HAVEN'T HEARD FROM AN

4     ANALYSIS IN THAT INCIDENT HAPPENED SIX YEARS AGO.  BUT WE JUST

5     HAVE A LOT OF THINGS THAT ARE SOMEHOW SIMILAR THEY SAY TO HERE.

6          YOU WERE TAKING NOTES.  YOU WERE PAYING ATTENTION.  MY

7     TAKE ON IT THEY ARE NOT EVEN CLOSE.  I MEAN THEY BOTH INVOLVE

8     DRUGS.  THEY INVOLVE SOMETHING THAT LOOKS LIKE COCAINE.  IN ONE

9     INSTANCE THAT PERSON ROBBYE ANDERSON ACCEPTS THE PRE-RECORDED

10    MONEY.  IT DIDN'T HAPPEN IN THIS CASE.  THERE IS ENOUGH

11    DISSIMILARITIES I'M NOT GOING TO BELABOR THE POINT.

12          WHAT ELSE IS INTRODUCED.  WHEN THE PROSECUTION REOPENS

13    ITS CASE THIS IS BOOKING PHOTOGRAPH AND THAT'S ALL IT IS OF MY

14    CLIENT LOOKING MENACING.  NOW, I'M BRINGING THIS POINT ABOUT

15    DELBERT, RILES, AND THE PICTURE.  IT'S LIKE THERE'S OLD SAYING,

16    WHEN YOU DON'T HAVE THE FACTS, WHEN YOU DON'T HAVE THE LAW, ARGUE

17    THE FACTS.  THE PROSECUTOR IN THIS CASE HAS NEITHER.  SHE'S GOT A

18    HIGH BURDEN TO MAKE.  SHE WANTS TO WIN THIS CASE.  SHE DOES.  AND

19    SHE'S DOING EVERYTHING SHE CAN TO WIN IT.  I GIVE HER THAT.

20          BUT YOU GOT -- SHE NEEDS SOMETHING ELSE FOR YOU SOMEHOW

21    TO PIN A CONVICTION ON MY CLIENT EVEN THOUGH SHE CAN'T PROVE HER

22    CASE.  AND IF YOU THINK ABOUT THESE THINGS, DELBERT ROSE, OFFICER

23    RILES, AND THE INCIDENT THAT HAPPENED, SOME INCIDENT THAT

24    HAPPENED SIX YEARS AGO, AND THE PHOTOGRAPH, WHAT'S SHE DOING.  I

25    MEAN ONE HAND SHE'S SAYING WE ARE NOT TRYING TO SHOW HIM AS A BAD

26    PERSON AND YOU CAN'T, SHOULDN'T FACTOR THAT IN, THINK ABOUT HIM

27    BEING A BAD PERSON; BUT THAT'S EXACTLY WHAT SHE IS DOING.  I

28    SUBMIT TO YOU THAT IS DISINGENUOUS FOR HER TO SAY THAT IN THIS

65

EXHIBIT D
A. HERNANDEZ

1    CASE.

2         I MEAN THAT'S EXACTLY WHAT THEY'RE DOING.  MR. ANDERSON

3    HAS EXERCISED HIS RIGHT TO RELY ENTIRELY ON THE STATE'S EVIDENCE.

4    HE'S EXERCISED HIS RIGHTS NOT TO TESTIFY.  HE DIDN'T TAKE THE

5    STAND.  HE CHOSE NOT TO TAKE THE STAND AFTER ALL.  HE SAW THE

6    EVIDENCE.  HE CHOSE NOT TO TAKE THE STAND.  BUT HE'S STILL

7    SUBJECT TO CHARACTER ASSASSINATION.  IS THAT FAIR.  IS THAT

8    REALLY FAIR.

9         AGAIN I WANT YOU TO FOCUS ON THE FACTS PERTAINING TO

10   THIS CASE.  I WANT YOU NOT TO LOSE FOCUS ON THE FACT THAT WE'RE

11   DEALING WITH OFFICER CHAVEZ, A DIRTY COP.  I HAVE TO SAY IT.  I

12   GOT TO CALL IT LIKE IT IS.  HE'S A DIRTY COP.  HE EITHER STOLE

13   THE THREE GRAMS OR HE LIED ABOUT IT.  IT'S ONE OR THE OTHER WHEN

14   YOU THINK ABOUT IT.  AND WHAT HAPPENS WHEN SOMEONE LIES TO YOU IN

15   YOUR REAL LIFE.  I MEAN LET'S SAY, FOR EXAMPLE, SOMEONE THAT YOU

16   -- SAY YOU ALLOWED TO STAY AT YOUR HOME AND YOU LEAVE A WALLET IN

17   THE NIGHTSTAND.  YOU DON'T KNOW HOW MUCH MONEY IS IN THERE, BUT

18   YOU LEAVE YOUR WALLET THERE.  YOU TRUST THIS PERSON TO COME INTO

19   YOUR HOME, AS WE TRUSTED OFFICER CHAVEZ TO COME IN THIS COURTROOM

20   AND TAKE AN OATH AND TELL US THE TRUTH.  YOU LOOK AT YOUR WALLET

21   AND IT'S OBVIOUS THERE'S SOME MONEY MISSING.  HOW MUCH DID THAT

22   PERSON TAKE.  HOW MUCH OF THE TRUTH DID OFFICER CHAVEZ TAKE.  HOW

23   MUCH DID HE MAKE UP.

24        YOU GOT TO BASE YOUR DECISION THAT AFFECTS SOMEBODY'S

25   LIFE ON BASICALLY ON WHAT OFFICER CHAVEZ SAID.  AND I DON'T THINK

26   YOU CAN DO THAT, LADIES AND GENTLEMEN.  I HONESTLY DON'T THINK

27   YOU CAN DO THAT IN THIS CASE.  I THINK THERE'S BEEN SO MUCH

28   INCONSISTENCIES, SO MANY LIES THAT ARE BORNE OUT WHEN YOU LOOK AT

EXHIBIT D
A. HERNANDEZ

1    THE COMMON SENSE ASPECT IT CANNOT BE TRUE THE WAY OFFICER CHAVEZ

2    SAYS IT WENT DOWN.  IT JUST CAN'T.

3         YOU'RE GOING TO GET A LIMITING INSTRUCTION AND IT'S

4    GOING TO TELL YOU CONSIDER THIS OTHER PRIOR ACT JUST FOR THAT AND

5    DON'T CONSIDER IT FOR ANY OTHER REASON.  WE ARE ALL HUMAN.  I'M

6    ASKING YOU TO REALLY FOCUS ON THE FACTS OF THIS CASE, ON WHAT'S

7    REALLY IMPORTANT HERE:  OFFICER CHAVEZ AND WHAT A WEAK FOUNDATION

8    HE LAID FOR THE PROSECUTOR'S CASE IN THIS CASE.

9         I SUBMIT TO YOU THAT THIS CHARACTER ASSASSINATION ON MY

10   CLIENT IS THE ONLY RED HERRING IN THIS CASE, IS AN ATTEMPT BY THE

11   PROSECUTOR TO THROW YOU OFF, TO THROW YOUR FOCUS OFF AND NOT

12   FOCUS ON THE ISSUES AND ON THE FACTS THAT PERTAIN TO WHAT

13   HAPPENED ON APRIL 4TH.

14        SOMETHING ELSE I WANT TO POINT OUT THAT'S INTERESTING

15   THAT I LOOKED OVER IS YOU'RE GOING TO GET I BELIEVE TO TAKE THESE

16   NARCOTICS ANALYSIS REPORTS BACK THERE WITH YOU.  AND WE'RE

17   TALKING, YOU KNOW, SOMETHING THAT WASN'T TESTED BECAUSE I'M

18   SAYING IT DIDN'T EXIST, A BAGGY OF DRUGS, MISTER BINDLE.  BUT IF

19   YOU LOOK AT THE NARCOTICS ANALYSIS REPORT ON WHAT I MOVED TO HAVE

20   ADMITTED, THERE'S A LITTLE CHECKMARK HERE.  IT SAYS HOLD FOR

21   PRINTS.  THIS IS ON DELBERT ROSE.  IT'S IMPORTANT BECAUSE IT

22   SHOWS YOU HOW IMPORTANT THAT EVIDENCE WOULD HAVE BEEN HAD IT

23   EXISTED.  MAYBE WE WOULDN'T BE HERE RIGHT NOW IF THAT EVIDENCE

24   EXISTED; AND IF IT EXISTED, IT WOULD HAVE BEEN FOUND.  THERE'S

25   SOMETHING TO THINK ABOUT.

26        NOW, YOU'RE GOING TO GET AN INSTRUCTION TWO REASONABLE

27   INTERPRETATIONS.  YOU ARE GOING TO GET WHAT REASONABLE DOUBT IS.

28   BUT WHEN YOU ARE DEALING WITH TWO REASONABLE INTERPRETATIONS,

EXHIBIT D
A. HERNANDEZ

1   WHAT SHOULD WE DO.  I KNOW YOU'VE ONLY HEARD FROM ONE SIDE IN
2   THIS CASE.  BUT WHEN YOU HAVE TWO REASONABLE CONCLUSIONS OR
3   INTERPRETATIONS THAT YOU DERIVE FROM THE EVIDENCE, AND THEY BOTH
4   SOUND REASONABLE UNDER THE LAW, LET'S SAY, WELL, IT COULD HAVE
5   GONE THE WAY OFFICER CHAVEZ WENT, AND I'LL GIVE YOU THE OTHER
6   INTERPRETATION, IT'S REAL SIMPLE.  IT DIDN'T GO DOWN THAT WAY.
7   IT'S JUST OFFICER CHAVEZ WALKING SIDE BY SIDE WITH MY CLIENT,
8   TRYING TO GET HIM TO SELL DRUGS, AND THAT'S IT.  HE ADMITTED TO
9   YOU HE MADE NO OTHER DRUG BUSTS THAT DAY.  WE GOT A TEAM OF EIGHT
10  PEOPLE WORKING THERE.  I MEAN I DON'T KNOW WHAT GOES ON IN TEAM
11  EIGHT, AND IT'S NOT MY JOB TO PRESENT THAT, BUT THERE'S ANOTHER
12  SIDE.  IT DIDN'T HAPPEN.  HE PLED NOT GUILTY.  IN EFFECT HE TOLD
13  YOU HE DIDN'T DO IT BY PLEADING NOT GUILTY TO ALL THE CHARGES.
14  BUT WHEN YOU HAVE TWO INTERPRETATIONS, AND FOR THE SAKE OF
15  ARGUMENT LET'S SAY THAT YOU BELIEVE WHAT OFFICER SAYS IS THE
16  TRUTH.  WELL, THE CONVERSE SAYS HE DIDN'T DO ANYTHING IS TRUE,
17  TOO.  IT'S ALSO REASONABLE I BELIEVE UNDER THE FACTS YOU HEARD IN
18  THIS CASE.  IN CASES OF A TIE, YOU GOT TO FIND NOT GUILTY OR
19  INNOCENT, THE CLIENT INNOCENT OF THE CHARGES.  THE DEFENDANT
20  INNOCENT OF CHARGES.
21           EVEN ASSUMING THAT IT MAKES SENSE WHAT CHAVEZ IS
22  SAYING.  BUT THAT'S NOT OUR CONTENTION.  OUR CONTENTION IS
23  WHATEVER CAME OUT OF CHAVEZ' MOUTH IS UNREASONABLE, IS
24  UNRELIABLE, IS A FABRICATION, IS AN EXAGGERATION.  IN THAT
25  INSTANCE YOU'VE GOT TO REJECT THAT.  AND THEN YOUR WORK IS
26  SIMPLE.  AND YOU GOT TO FIND MR. ANDERSON NOT GUILTY.  YOU HAVE
27  TO UNDER THE LAW.  IF YOU DO YOUR JOB, YOU HAVE TO FIND HIM NOT
28  GUILTY.

68

EXHIBIT E

EXHIBIT E

1

1   **(THURSDAY, 2:00 P.M., APRIL 20, 2006; SAN DIEGO, CALIFORNIA)**

2        THE COURT:  PEOPLE VERSUS ROBBYE R. ANDERSON, CASE NO.

3   SCD198047.  APPEARANCES, PLEASE.

4        MR. REIZEN:  GOOD AFTERNOON, YOUR HONOR, PAUL REIZEN

5   FOR THE PEOPLE.

6        MR. HERNANDEZ:  GOOD AFTERNOON, YOUR HONOR.

7   ANTHONY HERNANDEZ, OFFICE OF THE PUBLIC DEFENDER, FOR

8   MR. ANDERSON WHO IS PRESENT IN CUSTODY.

9        THE COURT:  THIS MATTER IS ASSIGNED HERE FOR

10  PRELIMINARY EXAMINATION.

11       ANY MOTIONS BEFORE WE BEGIN?

12       MR. HERNANDEZ:  NO, YOUR HONOR.

13       MR. REIZEN:  NO, YOUR HONOR.

14       THE COURT:  MR. PROSECUTOR, YOUR FIRST WITNESS.

15       MR. REIZEN:  THANK YOU, YOUR HONOR.  THE PEOPLE CALL

16  OFFICER CHAVEZ.

17

18                    **JOSE CHAVEZ,**

19       WAS CALLED AS A WITNESS, BY AND ON BEHALF OF THE

20  PEOPLE, HAVING BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

21

22       THE CLERK:  PLEASE BE SEATED AT THE WITNESS STAND.

23  STATE YOUR FULL NAME AND SPELL YOUR LAST NAME.

24       THE WITNESS:  JOSE CHAVEZ.  LAST NAME SPELLED

25  C-H-A-V-E-Z.

26  /////

27  /////

28  /////

69

EXHIBIT E

1    SHOWED IT TO ME.

2        Q.   BUT WHAT WAS ACTUALLY IN HIS HAND -- CORRECT ME IF I

3    AM WRONG -- WAS ACTUALLY .07?

4        A.   NO.   THERE WAS A SEPARATE BAG THAT WAS NOT RECOVERED

5    THAT I ESTIMATED TO BE AT LEAST THREE GRAMS OF COCAINE BASE.

6        Q.   WHERE WAS THAT BAG?

7        A.   IT WAS NEVER RECOVERED.   I DON'T KNOW WHAT HAPPENED TO

8    IT.

9        Q.   SO THERE WAS APPROXIMATELY THREE GRAMS THAT WAS -- AND

10   MY CLIENT WAS ARRESTED AT THE SCENE AND THAT BAG IS NOWHERE TO

11   BE FOUND?

12       A.   WE DIDN'T FIND IT.

13       Q.   DID YOU EVER LOSE SIGHT OF MY CLIENT AT ANY POINT?

14       A.   NO.   HE WAS IN THE VEHICLE OR WITH ME.

15       Q.   SO WHAT WE ARE TALKING ABOUT AS TO WHAT HE ACTUALLY

16   POSSESSED WAS. 07?

17       A.   THAT'S WHAT HE GAVE TO ME.

18       Q.   WHERE DID YOU SEE THIS APPROXIMATELY THREE GRAMS OF

19   COCAINE BASE OF THIS UNCOVERED COCAINE?

20       A.   IT WAS IN HIS LEFT HAND WHEN HE WAS TRYING TO REASSURE

21   ME THAT I WASN'T GOING TO GET ROBBED.

22       Q.   WHAT HAND DID HE USE TO HAND OVER TO YOU THE .07

23   GRAMS?

24       A.   HIS RIGHT HAND.

25       Q.   NOW, HOW LONG DID THIS TRANSACTION TAKE PLACE?

26       A.   SINCE I CONTACTED HIM ON C STREET?

27       Q.   YES.

28       A.   ESTIMATE ABOUT FIVE MINUTES OR SO.

EXHIBIT E

1    Q.   AND HOW LONG WAS THAT ROUGHLY WHEN HE FIRST TOLD YOU

2  TO FOLLOW HIM TO THE VEHICLE?

3    A.   HOW LONG WAS THE WALK?

4    Q.   YEAH.  HOW MANY BLOCKS?

5    A.   IT WAS ABOUT A BLOCK AND A HALF.

6    Q.   SO NOT VERY LONG AT ALL?

7    A.   NOT TOO LONG.

8    Q.   WAS ANY OF THIS CONVERSATION YOU HAD WITH HIM

9  RECORDED?

10   A.   NO, IT WAS NOT.

11   Q.   WHY NOT?

12   A.   WE DON'T DO THAT.

13   Q.   YOU DON'T RECORD ANYTHING AT ALL?

14   A.   NO.

15   Q.   NOW, YOU MENTIONED YOU HAD SOME PRE-MARKED MONEY.

16   A.   YES, I DID.

17   Q.   WHAT WAS THAT MONEY?

18   A.   IT WAS A PRE-RECORDED $20 BILL.

19   Q.   DID MY CLIENT EVER ACCEPT THAT PRE-RECORDED $20 BILL

20  FROM YOU?

21   A.   NO, HE DID NOT.

22   Q.   HOW MANY TIMES DID YOU OFFER THAT PRE-RECORDED $20

23  BILL TO MY CLIENT?

24   A.   I JUST OFFERED IT ONCE WHEN HE GAVE ME THAT .07

25  GRAMS.

26   Q.   HE OFFERED IT ONE TIME AND THAT'S WHEN YOU GAVE THE

27  SIGNAL TO THE OTHER OFFICERS FOR THE ARREST?

28   A.   I REQUESTED A 20 MAYBE THREE OR FOUR TIMES.  BUT LIKE

1    I SAID, HE GAVE ME THE .07 GRAMS AND THAT'S WHEN I OFFERED MY

2    $20 BILL.

3    Q.    BUT YOU WERE REQUESTING A 20 APPROXIMATELY THREE TO

4    FOUR TIMES, BUT YOU ONLY OFFERED ONE TIME THE MONEY?

5    A.    RIGHT.

6    Q.    AND YOU ARE SAYING HE DIDN'T TAKE THE MONEY?

7    A.    NO.  HE SAID, "I'M GIVING YOU THAT TO SMOKE."

8    Q.    AND WHAT HAPPENED RIGHT AFTER THAT WHERE HE TOLD YOU,

9    "I'M GIVING YOU THAT TO SMOKE"?

10    A.    I WALKED TO THE EAST CURB TO A LITTLE ALCOVE AND I

11    JUST KIND OF HESITATED WHILE HE WAITED FOR ME TO SMOKE IT IN

12    FRONT OF HIM.

13    Q.    AND YOU WOULDN'T SMOKE IT?

14    A.    NO.

15    Q.    IS THAT WHEN YOU GAVE THE SIGNAL TO THE OTHER OFFICERS

16    TO ARREST MY CLIENT?

17    A.    I GAVE THEM THE SIGNAL WHEN HE GAVE ME THE

18    SUBSTANCE.

19    Q.    HOW LONG DID IT TAKE TO ARREST MY CLIENT?

20    A.    AGAIN, ESTIMATION, 30, 40 SECONDS.

21    Q.    THERE WAS ALSO ANOTHER PERSON PRESENT, CORRECT?

22    A.    YES.  THERE WAS A WHITE MALE IN THE DRIVER'S LICENSE

23    SEAT OF THE VEHICLE.

24    Q.    DO YOU HAVE THE REPORT WITH YOU?

25    A.    I HAVE MY REPORT, YES.

26    Q.    THAT PERSON'S NAME WAS DELBERT ROSE, CORRECT?

27    A.    YES.

28    Q.    HE WAS ON THE DRIVER'S SIDE OF THAT VEHICLE?

72

DEFENDANT : Lines 10, 11, 12 - while he waited on me
to smoke it in front of him.
Anderson was suppose to be sitting in Vehicle.

```
1       A.   CORRECT.

2       Q.   MR. ROSE WAS ALSO ARRESTED?

3       A.   HE WAS.

4       Q.   WHAT DID YOU ARREST HIM FOR?

5       A.   I DIDN'T ARREST HIM.  THE OFFICER ON THE SCENE

6  ARRESTED HIM FOR POSSESSION.

7       Q.   FOR POSSESSION?

8       A.   YES.

9       Q.   WAS HE ARRESTED JUST FOR POSSESSION OR POSSESSION FOR

10 SALE?

11      A.   JUST POSSESSION.

12      Q.   AND WHEN YOU SEARCHED MY CLIENT, WAS THERE ANY SALES

13 INDICIA FOUND ON HIS PERSON?

14      A.   I, AGAIN, I DIDN'T SEARCH HIM.  BUT THE OFFICER WHO

15 DID SEARCH HIM JUST FOUND THE PIPES.

16      Q.   THAT WAS IT?

17      A.   SOME MONEY AND CELL PHONE.

18      Q.   BUT THE PIPES, THAT'S INDICIA ASSOCIATED WITH

19 PERSONALLY USING FOR THEMSELVES, CORRECT?

20      A.   YES.

21      Q.   DID YOU FIND A SCALE?

22      A.   NO.

23      Q.   DID YOU FIND ANY PAY-OWE SHEETS?

24      A.   NO.

25      Q.   DID YOU FIND ANY BAGGIES?

26      A.   NO.

27      Q.   DID YOU FIND ANY BAGGIES INSIDE THE CAR?

28      A.   NO.  I DON'T BELIEVE THE OFFICER WILSON FOUND
```

DEFENDANT: NEVER POSS. A CELL PHONE 73
OR ARRESTED WITH ONE.

EXHIBIT E

```
1    ANYTHING.

2        Q.   OR ANY OTHER OFFICER?

3        A.   NO.

4        Q.   WAS THERE A SCALE FOUND INSIDE THE CAR?

5        A.   NO.

6        Q.   SO THEN THERE WAS ACTUALLY NO SALES INDICIA, WOULD

7    THAT BE A CORRECT STATEMENT, ON MY CLIENT'S PERSON?

8             MR. REIZEN:   OBJECTION; CALLS FOR SPECULATION.

9             THE COURT:   OVERRULED.

10   BY MR. HERNANDEZ:

11       Q.   YOU MAY ANSWER.

12       A.   LIKE I SAID, NO THERE WAS NOTHING ELSE FOUND.

13            MR. HERNANDEZ:   MAY I HAVE A MOMENT, YOUR HONOR?

14            THE COURT:   SURE.

15   BY MR. HERNANDEZ:

16       Q.   WHEN YOU SEARCHED HIM, OFFICER, YOU SAID YOU FOUND A

17   CELL PHONE ON HIM, ON MY CLIENT?

18       A.   OFFICER WILSON IMPOUNDED A CELL PHONE.  I DON'T KNOW

19   WHERE HE FOUND IT.

20       Q.   BUT YOU JUST KNOW A CELL PHONE WAS IMPOUNDED?

21       A.   CORRECT.

22       Q.   YOU DON'T KNOW WHERE THAT CELL PHONE CAME FROM?

23       A.   NO, I DON'T.

24       Q.   IF YOU WANT TO LOOK AT YOUR REPORT TO GET

25   CLARIFICATION?

26       A.   I WOULDN'T PUT THAT IN MY REPORT.  OFFICER WILSON

27   WOULD HAVE TO ANSWER THAT.

28       Q.   AS YOU SIT HERE RIGHT NOW, YOU DON'T KNOW WHERE THAT
```

74

DEFENDANT; FALSE STATEMENT FROM CHAVEZ.
OFFICER WILSON DID NOT ARREST ANDERSON
WITH A CELL PHONE.

EXHIBIT F

EXHIBIT F

4

| Continued From:<br>CRIME | | San Diego Regional<br>Officer's Report Narrative | Incident Number<br>06040008348 |
|---|---|---|---|
| Page<br>1 of 2 | | | Case Number |

| Code Section And Description (one incident only)<br>HS / 11352(A) / TRANSPORT/SELL NARCOTIC/CONTROLLED SUBSTANCE | Date<br>04/05/2006 | | Day of Week<br>WED | Time<br>22:15 |
|---|---|---|---|---|
| Location Of Incident (Or Address)<br>1000 07th Ave | | City<br>SAN DIEGO | District | Beat<br>524 |

| Person(s) Involved: Victim |
|---|
| Suspect (If Named)<br>Anderson, Robbye |
| Property Tag No.(s) |

## SAN DIEGO POLICE DEPARTMENT
## INVESTIGATOR'S REPORT

DATE: 04-05-06

TIME: 2215 hrs

LOCATION: 1000 7th Ave

SUBJECT:    BUY/BUST PROGRAM, ARREST OF ROBBYE ANDERSON

---

On the above listed date and time I was in full Police uniform and driving a marked Police vehicle. I am assigned to the Central Narcotics Section and we were working a buy/bust program in the area of 1000 7th Ave.

Detective **CHAVEZ** was sent into the area to purchase illegal controlled substances from street level dealers. Prior to Detective being sent into the area, he was given pre-recorded U.S. currency. I was given a photocopy of the money to be used prior to the operation.

Additional members of the Central Narcotics Section were assigned to monitor the undercover officer. At the above listed time, Detective advised via radio Detective was successful in purchasing a controlled substance. From Detective earlier description the suspect was a black male wearing dark pants located in an out cove with Detective on the 1000 block of 7th Ave. I entered the area and located Detective who was still standing with Anderson, who matched the description. As I pulled up Detective stood began to walk north as Anderson began to walk south. I detained Anderson until identification could be made.

Detective returned to the area immediately and positively identified Anderson as the subject who sold him the controlled substance.

I searched Anderson incident to arrest and located the following evidence: **OFFICER WILSON**

1) A glass pipe used to smoke a cocaine base substance was located in a cigarette pack in his left coat pocket.

| Reporting Officer | ID # | Division | Approved By | Date of Report<br>04/05/2006 | Time<br>15:58 |
|---|---|---|---|---|---|

EXHIBIT F

| Continued From: APB/JUV/CON. | | San Diego Regional Officer's Report Narrative | | Incident Number 06040008348 | |
|---|---|---|---|---|---|
| Page 5 of 8 | | | | Case Number | |
| Code Section And Description (one incident only) 11352(A) / HS / TRANSPORT/SELL NARCOTIC/CONTRO | | Date 04/04/2006 | | Day of Week TUE | Time 22:15 |
| Location Of Incident (Or Address) 1000 07TH AV | | | City | District | Beat |
| Person(s) Involved: Victim | | | | | |
| Suspect (If Named) Anderson, Robbye Ray | | | | | |
| Property Tag No.(s) HQ050390 | | | | | |

robberies and other peripheral crimes occurring in the vicinity. I have been involved in approximately 100 narcotic related arrests from this location in the past four years. I have witnessed the sales of narcotics, particularly "rock" cocaine, from this location. I have also been involved in several undercover operations, where narcotics were purchased in this area.

## INVESTIGATION:

On the above listed date and time we were conducting a buy/bust operation in the area of 200-700 C St. I went into the area to purchase narcotics from street level dealers. I was dressed in casual attire.

I had in my possession one pre-recorded twenty-dollar bill, serial number CG89175367B and two five dollar bills, serial numbers DB26465261B, DL95897531A. The currency was used to purchase narcotics.

I wore a one-way transmitter to allow team members to listen to my conversation and to assist in monitoring my safety. (Other team members monitored the transmitter.) My conversations **were not** recorded. Uniformed officers were in the immediate area awaiting the pre-determined bust signal and suspect description(s).

While posing as a user/buyer of narcotics I entered the area of 500 C St on foot. I was walking eastbound entering the 600 block of C St. I asked a black male walking westbound 600 C St. if he had a twenty. This is slang for, "do you have twenty dollars worth of controlled substance?" The black male was later identified as Robbye Ray Anderson. Anderson looked at me and said, "Yeah, but I don't know you." I told Anderson everyone in the area said the same thing and no one wanted to deal with me. Anderson asked me if I had a pipe and I said, "Yeah," and showed him my pipe. Anderson told me to follow him. We began walking eastbound 600 C St. I asked Anderson what his name was and he said, "Ray." I told him I was Jose and we continued walking eastbound on C St. Anderson went southbound on 7th Ave from C St (east curb). Anderson got into the front passengers seat of a 1993, green, Ford Explorer (CA 5TBE977), which was parked on the east curb.

Anderson told me to get in the back seat of the vehicle so I could smoke some controlled substance. I told Anderson I was robbed last week and was not comfortable getting in the car with them. There was a white male sitting in the driver's seat of the vehicle. The white male was later identified as Delbert Rose DOB 11-11-55. Anderson told me nothing was going to happen and again asked me to get in the car. I asked Anderson to just sell the twenty so I could go. I continued to express my concern about being robbed. Anderson said, "I'm not going to rob you." Anderson showed me a large plastic bindle containing off white rock like substance in his left hand. I estimated the bindle to contain about three grams of what I recognized to be cocaine base. I continued to ask Anderson for a twenty. Anderson then gave me three small pieces of

| Reporting Officer | ID # | Division C0 | Approved By | Date of Report 04/05/2006 | Time 17:39 |
|---|---|---|---|---|---|

EXHIBIT F

| Continued From:<br>ARR/JUV. CON. | | San Diego Regional<br>Officer's Report Narrative | | Incident Number<br>06040008348 | | 2 |
|---|---|---|---|---|---|---|

| Page<br>6 of 8 | | | Case Number | |
|---|---|---|---|---|

| Code Section And Description (one incident only)<br>11352(A) / HS / TRANSPORT/SELL NARCOTIC/CONTRO | Date<br>04/04/2006 | Day of Week<br>TUE | Time<br>22:15 |
|---|---|---|---|

| Location Of Incident (Or Address)<br>1000 07TH AV | | City | District | Beat |
|---|---|---|---|---|

| Person(s) Involved: Victim |
|---|

| Suspect (If Named)<br>Anderson, Robbye Ray |
|---|

| Property Tag No.(s)<br>HQ050390 |
|---|

off white rock like substance with his right hand. He put the substance in my left hand and told me to smoke it. Anderson was still sitting in the front passengers seat of the parked vehicle. I began to give Anderson my prerecorded twenty-dollar bill with my right hand. I asked Anderson if he was going to give me more when I smoked the pieces he gave me. Anderson said, "I don't want that (referring to my twenty dollar bill), I'm giving you that to smoke." Anderson told me to smoke it.

Based on my training and experience I believed the substance Anderson furnished to me was cocaine base. Since I was not going to smoke the substance I gave the pre-determined bust signal. I walked to an out cove (1000 7th Ave) to pretend to smoke the substance. Anderson was standing next to me waiting for me to smoke the substance he gave me. Officer ▇▇▇▇▇▇ arrived on scene and Anderson began walking southbound 1000 7th Ave. Anderson said, "Your'e on your own." I walked away northbound on 7th Ave. I saw Officer ▇▇▇▇▇ detain Anderson while I was still in the area. I positively identified Anderson as the individual who gave me the controlled substance, via the wire. I also advised, via the wire, that there was a white male in the driver's seat of the parked car. I requested Officer ▇▇▇▇▇ ID ▇▇▇▇ stop the white male in the vehicle to ensure Anderson was not hiding the controlled substance in the vehicle. Officer ▇▇▇▇▇▇ did not locate the substance I saw In Anderson's left hand inside of the vehicle. See Officer ▇▇▇▇ arrest report of the white male ▇▇▇▇▇▇▇ for details.

Officer ▇▇▇▇▇ searched Anderson incident to arrest and found two glass narcotic smoking pipes in his left coat pocket. The pipes were inside a GPC cigarette box.

Anderson was placed under arrest and transported to the Central Division Substation for further investigation. At the station I asked Anderson if I looked familiar to him and he paused for several seconds. Anderson said, "You the guy in the black coat?" I told Anderson I was the guy in the black coat. Anderson said, "I did not sell you anything." I explained Anderson the charges and began to admonish him.

## STATEMENT:

I admonished Anderson per my PD-145. Anderson did not respond when I asked him if he understood his rights. I attempted to explain his rights to him and he said, "I did not sell you anything. I did not give you anything." Anderson remained quiet after that comment.

## INJURIES:

None.

| Reporting Officer | ID # | Division | Approved By | Date of Report<br>04/05/2006 | Time<br>17:39 |
|---|---|---|---|---|---|

COPY                    77                    Continued Y/N

EXHIBIT F

F                              F                    3

## SAN DIEGO POLICE DEPARTMENT — NARCOTIC IMPOUND    HQ- 050390

| DATE 04·04·06 | ☒ EVIDENCE | TYPE OF REPORT MADE (IF NONE LEAVE BLANK) ☒ARREST ☐JCR ☐OTHER | CASE NO. $20⁰⁰ NOT TAKEN |
| ☐OTHER (EXPLAIN IN REMARKS BELOW) | ☐FOUND PROPERTY | ☐CRIME CASE/SPECIFIC TYPE _____ | CITATION NO. |

| SUSPECT/VICTIM (PLEASE PRINT BELOW)    ☐ HOLD FOR PRINTS | INCIDENT NO. 06040008348 |

1. NAME: ANDERSON, ROBBYE     DOB 11-21-57   ADULT ☒ JUV ☐    Charges 11352(A) H+S

2. NAME:                    ADULT ☐ JUV ☐ D.O.B.      3. NAME                 ADULT ☐ JUV ☐ D.O.B.

| ITEM NO. | NO. OF PKGS. | DESCRIPTION OF EVIDENCE | GROSS WEIGHT |
|---|---|---|---|
| 1 | 1 | (3) PIECES OF OFF WHITE ROCK LIKE SUBSTANCE SOLD/GIVEN | |
| 2 | | TO ME BY ANDERSON * .07 GRAMS COC. BASE | |
| 3 | | (1) GLASS NARCOTIC SMOKING PIPE FOUND ON ANDERSON | |
| 4 | | BY OFF WILSON * | |
| 5 | | (1) UNUSED GLASS PIPE WITH BRILLO | |
| 6 | | | |

☐ ADDITIONAL PROPERTY LIST ATTACHED IF MORE THAN 6 ITEMS

| ADDRESS/LOCATION: 1000 7TH AVE | BEAT 524 | REMARKS: * POSITIVE PRESUMPTIVE FOR COCAINE |
| WHERE IMPOUNDED: HQ | DATE: 04·05·06 | TIME: | OFFICER RECOVERING PROPERTY (IF DIFFERENT THAN IMPOUNDING OFFICER): I.D. #: | ASSIGNMENT: |
| TRANSPORTED BY (IF DIFFERENT THAN IMPOUNDING OFFICER): I.D. #: | IMPOUNDING OFFICER(S): I.D. #: | |

**LAB USE ONLY**

EXAMINED BY: _____ DATE: _____    RESULTS _____    RECEIVED SEALED: YES ☐ NO ☐    ☐ D.N. SENT

CT ANALYSIS BY: _____ DATE: _____    _____    RECEIVED IN NARCOTICS VAULT    DATE

PD-235-HQ (11-04)    GREEN: VAULT COPY – ATTACH TO IMPOUND    BLUE: INVESTIGATOR COPY    CANARY: STAYS IN BOOK    HARD COPY: ATTACH TO IMPOUND

78

EXHIBIT G

EXHIBIT 5

**ABSTR.. OF JUDGMENT – PRISON COMMITME.. - DETERMINATE**
*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED]*

0119  CR-290

| ☒ SUPERIOR | COURT OF CALIFORNIA, COUNTY OF SAN DIEGO |
|---|---|
| ☐ MUNICIPAL | BRANCH OR JUDICIAL DISTRICT  SAN DIEGO |

F I L E D
Clerk of the Superior Court
SEP 20 2006
By: K. D. STURDIVANT, Deputy

| PEOPLE OF THE STATE OF CALIFORNIA vs. DEFENDANT: ANDERSON, ROBBYE RAY | DOB: 11-20-57 | SCD 198047 | -A |
|---|---|---|---|
| AKA: Multiple, see PO report | | | -B |
| CII#: 05325569 | | | |
| BOOKING #: 06114714A | ☐ NOT PRESENT | | -C |
| COMMITMENT TO STATE PRISON ABSTRACT OF JUDGMENT | ☐ AMENDED ABSTRACT | | -D |

| DATE OF HEARING 09-09-06 | DEPT. NO. 28 | JUDGE DAVID M. GILL |
|---|---|---|
| CLERK K. STURDIVANT | REPORTER O. CORREA | PROBATION NO. OR PROBATION OFFICER PROB. NO. 739029 |
| COUNSEL FOR PEOPLE AMY MAUND | | COUNSEL FOR DEFENDANT ANTHONY HERNANDEZ  ☒ APPTD. |

1. Defendant was convicted of the commission of the following felonies:
   ☐ Additional counts are listed on attachment
   ___ (number of pages attached)

THURS 1427

| CNT. | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | CONVICTED BY JURY | CONVICTED BY COURT | PLEA | TERM (L,M,U) | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE 1/3 NON-VIOLENT | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE (refer to item 5) | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YRS. | PRINCIPAL OR CONSECUTIVE TIME IMPOSED MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | HS | 11352(a) | SELL/FURN CONTR SUBS | 2006 | 07-27-06 | X | | | L | | | | | | | 6 | 0 |
| 2 | HS | 11351.5 | POSS/SALE COCAINE BASE | 2006 | 07-27-06 | X | | | | | | | | | X | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385.

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |  |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | HS 11370.2(a) | 3 | | | | | | | 3 | 0 |
| 2 | HS 11370.2(a) | S | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTION OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385.

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |  |
|---|---|---|---|---|---|---|---|---|---|
| 667.5(b) | 1 | | | | | | | 1 | 0 |
| | | | | | | | | | |
| | | | | | | | | | |

4. ☒ Defendant was sentenced pursuant to PC 667 (b)-(i) or PC 1170.12 (two-strikes).

5. INCOMPLETED SENTENCE(S) CONSECUTIVE

| COUNTY | CASE NUMBER |
|---|---|
| | |
| | |
| | |

6. | TOTAL TIME ON ATTACHED PAGES: | | |

7. ☐ Additional indeterminate term (see CR-292).

8. | TOTAL TIME: | 10 | 0 |

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.
(Continued on reverse)

| Form Adopted by the Judicial Council of California CR-290 (Rev. January 1, 1999) | **ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE** *[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED]* | Penal Code §§ 1213, 1213.5 |
|---|---|---|

79

EXHIBIT G

SCD198947 DA    ABT15501

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

☑ CENTRAL   ☐ NORTH   ☐ EAST   ☐ SOUTH

DATE __09-19-06__ AT __09:00__ M.    06114714    PROB HEAR-SENTENCING  0157

PRESENT: HON __DAVID M. GILL__    JUDGE PRESIDING DEPARTMENT __028__

CLERK __K Sturdivant__    REPORTER __O. Correa__    CSR# __2326__

REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128

THE PEOPLE OF THE STATE OF CALIFORNIA    DEPUTY DISTRICT ATTORNEY __Amy Maund__
VS.
__ANDERSON    ROBBYE    R__    B - P.DEFENDERS    ATTORNEY FOR DEFENDANT (☐ APPT / ☐ CC / ☑ RETAINED) __Anthony Hernandez__

VIOLATION OF  CT1 *HS11352(A)  CT2 *HS11351.5  CT3 HS11364    P.O. __Laura Nelson__

ENH(S) _____ INTERP. _____ OATH ON FILE / SWN.

PRIOR(S) _____ LANGUAGE _____

DEFENDANT ☑ PRESENT  ☐ NOT PRESENT  ☐ NOT PRODUCED

**P R E V**
☐ DEFENDANT ADVISED OF RIGHTS AND ADMITS / DENIES A VIOLATION OF PROBATION _____ ☐ WAIVES HEARING.
PROBATION IS : REMAINS : FORMALLY / SUMMARILY ☐ REVKD ☐ REINST ☐ MODIFIED ☐ CONT ☐ ST&C ☐ TERMD. ☐ EXT. TO: _____

**J U D G M E N T**
☐ COMPLIANCE WITH PC 296 VERIFIED / ORDERED.  ☑ WAIVES ARRAIGNMENT  ☐ ARRAIGNED FOR JDGMT.  ☐ IMPOSITION / EXECUTION OF SENTENCE IS SUSP.
☑ PROBATION IS: ☑ DENIED  ☐ GRANTED _____ YEARS (FORMAL/SUMMARY) TO EXPIRE _____
☐ COMMITMENT TO SHERIFF FOR _____ DAYS.  STAYED TO _____ / PNDG. SUCC. COMPL. OF PROB.  ☐ PAROLE NOT TO BE GRANTED.
☐ PERFORM _____ HRS / DAYS PSP / VOL. WORK AT NONPROFIT ORG.  SUBMIT PROOF TO PROBATION / COURT BY _____
☐ 4TH AMENDMENT WAIVER: ☐ IMPOSED. / ☐ REMAINS IN EFFECT. / ☐ DELETED.  ☐ FORMAL PROB. CONVERTS TO SUMM. PROB. _____
☐ FURTHER CONDITIONS ARE SET FORTH IN PROBATION ORDER.  ☐ WORK FURLOUGH, REPORT: _____
☐ DEFENDANT IS COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY  ☐ PER WI 1737
☑ DEFENDANT IS COMMITTED TO THE DEPARTMENT OF CORRECTIONS  ☐ PER PC 1170(d).
☐ FOR (LOWER)/ MIDDLE / UPPER / INDETERMINATE TERM OF _6 YEARS_ / MONTHS / TO-LIFE
ON COUNT __1__ CODE & NO. __HS 11352(a)__  ☑ PRINCIPAL COUNT.  ☐ STIPULATED SENTENCE.
☑ DEFENDANT SENTENCED PER PC 667(b)-(i)/1170.12.  ☑ NOTICE OF FIREARMS PROHIBITION GIVEN PER PC 12021.
☐ NO VISITATION PER PC 1202.05.  VICTIM IS UNDER 18 YRS. OF AGE.  DA TO COMPLY WITH NOTICES.
☑ DEFT. ADVISED REGARDING PAROLE / APPEAL RIGHTS.  ☑ REGISTRATION PER PC 290 / HS 11590 / PC 457.1 / PC 186.30.
☑ HIV TESTING PER PC 1202.1  ☑ DNA SAMPLING PER PC 296.  ☐ PROTECTIVE ORDER ISSUED. __40-__
☐ DEFENDANT TO PAY: FINE OF $_____ PLUS PENALTY ASSESSMENT.  ☑ $20 COURT SECURITY FEE.  ☐ PROBATION COSTS.  ☐ BOOKING FEES.
REST. FINES: ☐ $ __2000 —__ PER PC1202.4(b).  ☑ F/W PER PC2085.5.  ☑ $ __2000 —__ PER PC1202.44 / PC1202.45 SUSP. UNLESS PROB. / PAROLE REVKD.
☐ PROBATION HAVING BEEN FORMALLY REVOKED, THE PREVIOUS RESTITUTION FINE OF $_____ SUSPENDED PER PC 1202.44, IS NOW DUE.
☐ RESTITUTION TO VICTIM(S) PER P.O.'S REPORT / REST. FUND PER PC 1202.4(f) OF $_____ / IN AN AMT. TO BE DETERMINED. ☐ JOINT & SEVERAL.
☐ COURT-APPOINTED ATTORNEY FEES ORDERED IN THE AMOUNT OF $_____
☐ INCOME DEDUCTION ORDER OF $_____ PER PAY PERIOD PER PC 1202.42 STAYED UNLESS DEFT. FAILS TO PAY VICTIM REST.  NOTICE OF RIGHTS PROVIDED.
☐ AT THE COMBINED RATE OF $_____ PER MONTH TO START 60 DAYS AFTER RELEASE / ON _____
☐ DEFT. TO REPORT TO REVENUE & RECOVERY / COURT COLLECTIONS TO SET UP AN ACCOUNT FORTHWITH / WITHIN 72 HOURS OF RELEASE FROM CUSTODY.
☐ ALL PROPERTY IMPOUNDED, SEIZED, OR HELD IN CUSTODY IN THIS CASE TO BE DISPOSED OF PER POSSESSING AGENCY'S POLICY.

| CREDIT FOR TIME SERVED | |
|---|---|
| 169 | DAYS LOCAL |
| | DAYS STATE INST. |
| 84 | DAYS PC4019/2933.1 |
| 253 | TOTAL DAYS CREDIT |

**C U S T S T A T**
☑ DEFENDANT REMANDED TO CUSTODY OF SHERIFF  ☑ WITHOUT BAIL. ☐ WITH BAIL SET AT $_____
☐ DEFENDANT TO REMAIN AT LIBERTY  ☐ ON BOND POSTED $_____ . ☐ ON PROBATION.  ☐ ON DEJ.  ☐ ON OWN / SUPERVISED RECOGNIZANCE.
☐ DEFENDANT ORDERED RELEASED FROM CUSTODY  ☐ ON PROBATION.  ☐ ON OWN / SUPERVISED RECOGNIZANCE.  ☐ ON DEJ.  ☐ THIS CASE ONLY.

**C H R G S**
☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT.
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION. ☐ PER PC 1203.03. ☐ PER WI 707.2.
_____ CONTINUED TO / SET FOR _____ AT _____ M. IN DEPT. _____ ON MOTION
OF COURT / DDA / DEFENDANT / PROBATION OFFICER.  REASON: _____
☐ EVIDENTIARY HEARING ON THE PROBATION REVOCATION ALLEGATION TO BE HEARD CONCURRENTLY WITH THE PRELIMINARY HEARING.

**W R R N T S**
☐ BENCH WARRANT TO ISSUE, BAIL SET AT $_____ . ☐ SERVICE FORTHWITH. ☐ ORDERED WITHHELD TO _____
☐ BENCH WARRANT ISSUED / ORDERED _____ IS RECALLED / RESCINDED.
BAIL IS ☐ EXONERATED. ☐ FORFEITED.  AMOUNT $_____ . BOND NO. _____
BOND COMPANY _____ AGENT _____

**M H**
☐ PROCEEDINGS SUSPENDED  ☐ PER PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ PER WI 3051, ADDICTION OR DANGER OF ADDICTION.  SERVICE OF PETITION: _____

**O T H E R**
☐ PROBATION TO PREPARE SUPP. REPT. / SUBMIT POST-SENT REPT TO CDC PER PC1203c.  ☑ REPT. TO REG. OF VOTERS.  ☑ DMV ABSTRACT. B.A.C.
☐ CONCURRENT WITH / CONSECUTIVE TO: __Defts Motion to strike strike - denied__    TOTAL TERM (10 YRS)
CT 2 - 654 • alleg. 654    11370.2(a) 3 year consec.    1st 667.5(b) Stricken
CT 3 - 253 days. CFT 3    2nd 667.5(b) — 1 year    3rd 667.5(b) — stricken
wife Soma Anderson    ) address the Court on    80
Pastor Williams    ) defts behalf    JUDGE OF THE SUPERIOR COURT

SDSC CRM-2B(Rev. 5-05)    **CRIMINAL MINUTES - PRONOUNCEMENT OF JUDGEMENT**

| PEOPLE OF THE STATE OF CALIFORNIA vs.<br>DEFENDANT: **ROBBYE RAY ANDERSON** | | | 0120 |
|---|---|---|---|
| SCD 198047    -A | -B | -C | -D |

9. FINANCIAL OBLIGATIONS (including any applicable penalty assessments):
    a.   RESTITUTION FINE of: **$2000** per PC 1202.4(b) forthwith per PC 2085.5.
    b.   RESTITUTION FINE of: **$2000** per PC 1202.45 suspended unless parole is revoked.
    c.   RESTITUTION of: $_____ per PC 1202.4(f) to   ☐ victim(s)*   ☐ Restitution Fund
        (*List victim name(s) if known and amount breakdown in item 11, below.)
        (1) ☐ Amount to be determined.
        (2) ☐ Interest rate of: __% (not to exceed 10% per PC 1202.4(f)(3)(F)).
    d.  ☐ LAB FEE of: $_____ for counts: _____ per H&SC 11372.5(a).
    e.  ☐ DRUG PROGRAM FEE of $150 per H&SC 11372.7(a).
    f.  ☐ FINE of $___ per PC 1202.5.

10. TESTING
    a.  ☐ AIDS pursuant to   ☐ PC 1202.1   ☐ other (specify):
    b.  ☒ DNA  pursuant to   ☒ PC 290.2   ☐ other (specify):

11. Other orders (specify):
**$40 Court security fee;  Firearms prohibition pursuant to PC 12021**

12. Execution of sentence imposed
    a. ☒ at initial sentencing hearing.        d. ☐ at resentencing per recall of commitment.  (PC 1170(d).)
    b. ☐ at resentencing per decision on appeal.    e. ☐ other (specify):
    c. ☐ after revocation of probation.

13. CREDIT FOR TIME SERVED

| CASE NUMBER | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|---|---|---|---|---|
| SCD 198047    -A | 253 | 169 | 84 | ☒ 4019<br>☐ 2933.1 |
| -B | | | | ☐ 4019<br>☐ 2933.1 |
| -C | | | | ☐ 4019<br>☐ 2933.1 |
| -D | | | | ☐ 4019<br>☐ 2933.1 |

| DATE SENTENCE PRONOUNCED:<br>**09-19-06** | SERVED TIME IN STATE INSTITUTION:<br>☐ DMH | ☐ CDC | ☐ CRC |
|---|---|---|---|

14. The defendant is remanded to the custody of the sheriff   ☒ forthwith   ☐ after 48 hours excluding Saturdays, Sundays,
                                                         and holidays.

    To be delivered to   ☒ the reception center designated by the director of the California Department of Corrections.
                      ☐ other (specify): _____

---

**CLERK OF THE COURT**

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE<br>K. Sturdivant | DATE<br>09-19-06 |
|---|---|

CR-290 (Rev. January 1, 1999)     **ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE**     Page two

81

5

1    CIRCUMSTANCE. HE'S HAD THE BENEFIT OF RESOURCES AND SUPPORT,

2    WHICH THE MAJORITY OF THE DEFENDANTS DO NOT WHO COME BEFORE THE

3    COURT. HE STILL HASN'T BEEN ABLE TO TAKE ADVANTAGE OF THAT TO

4    THE EXTENT OF REOFFENDING.

5              HE KNOWS THE LAW. HE KNOWS WHAT HE'S FACING. OF

6    COURSE IN A COURSE OF CRIMINALITY YOU CONTINUE TO REOFFEND.

7    WE'RE NOT GOING TO TREAT YOU AS A DE MINIMUS OFFENDER OR SHORT

8    TIME DEFENDANT. NOTHING EXTRAORDINARY. THE LAST TIME AROUND HE

9    SOLD -- IN 2000, SOLD $20 OF COCAINE TO AN UNDERCOVER OFFICER,

10   RIGHT BEGAN DOING THE SAME THING HERE. I DON'T THINK HE LEARNED

11   MUCH FROM THAT.

12             MR. HERNANDEZ: MAY I CONTINUE, YOUR HONOR?

13             THE COURT: YES, PLEASE.

14             MR. HERNANDEZ: THANK YOU.

15             I DO, WITH ALL DUE RESPECT TO THE COURT'S COMMENTS,

16   I WILL SAY THAT, YOU KNOW, I DON'T MEAN TO BE FACETIOUS BUT I AM

17   NOT A DRUG ADDICT MYSELF. I DON'T KNOW THE DEGREE OF SEVERITY,

18   HOW SERIOUSLY ARE DRUG ADDICTS. JUST SAY THAT HE IS. ALSO SAY

19   IN THIS 1994 STRIKE CONVICTION, WHICH IS MINIMAL, INVOLVED

20   MINIMAL ARGUMENTS, THE PROSECUTOR DID HAVE A LIST OF PACKETS.

21   IT'S CONJECTURE, BUT PERHAPS THAT WOULD BE LITIGATED. I JUST

22   OVERHEARD, THERE'S ON THE FACTS BEHIND THAT, IT WAS AN ESTES

23   ROBBERY.

24             I DID ALSO NOTE IN MY MOVING PAPERS THAT THERE ARE

25   INDICATIONS, AND I TOOK FROM THE PROBATION OFFICER, HE WAS UNDER

26   THE INFLUENCE OF DRUGS, AND IT'S CLEAR HE'S A VERY SERIOUS DRUG

27   ADDICT.

28             THE COURT: WELL, ON THAT POINT I THINK YOU HAVE TO -- AT

82

EXHIBIT G

0073

All references are to the California Rules of Court.

I.

**SUMMARY OF FACTS [Rule 437(c)(1)]**

After a jury trial, Robbye Anderson was convicted of selling .07 grams of cocaine to an undercover officer.

II.

**THE COURT SHOULD STRIKE THE
SERIOUS FELONY PRIOR CONVICTION
ROMERO FACTORS ENUMERATED**

To assist the court the following factors enumerate and summarize why the court should strike the prior conviction:

To assist the court the following factors enumerate and summarize why the court should strike the prior conviction:

1.    The prior stricken which occurred in 1994 is remote in time.

2.    Anderson's prior was a PC 211, when he swung a hammer at a 7 11 employee in order to facilitate the taking of a bottle of Snapple, hence and **Estes** Robbery. At that time, it appeared to the victim that Anderson was under the influence of a controlled substance.

3.    The defendant's criminal history displays minimal violence.

4.    The current offense is not a serious or violent felony.

5.    The punishment under the three strikes law is disproportionate to the severity of the current offense.

6.    The defendant's criminal history is a result of the defendant's addiction to controlled substances.

83

EXHIBIT G



# Greater Victory
# Baptist Church

*G. A. Williams, D.Min. - Pastor*

P. O. Box 94 ~ Lemon Grove, California 91945 ~ (619) 668-6925
*"Bringing them in; Growing them up; Sending them forth to serve; Preparing for Christ return"*

June 23, 2006

### Character Reference Letter for Mr. Robbye Anderson

To Whom It May Concern:

I, Pastor G. A. Williams, am writing this Character Reference letter for Mr. Robbye Anderson, a member of Greater Victory Baptist Church.

I have served as Mr. Anderson's pastor for 2 years. In this time, I have baptized him; lead him through Church Orientation and New Disciples Classes. Observed him in our Men's Fellowship, assisted him in leading his children to the Lord, and united him in marriage to a wonderful young Christian woman, whom he has known for several years.

I have had numerous opportunities to observe him on the front line of public ministry, as well as opportunities to fellowship with him in a more private setting. However, in both arenas, Mr. Anderson has demonstrated a practical faith that is consistent with the message proclaimed through the Bible and the message proclaimed through him.

Having served as his pastor and overseer in ministry, I can truly say that Mr. Anderson has a genuine desire to be a model of genuine Christian character. In him I see a fluid continuity from biblical precept to practice in his behavior. He has a firm grip on good moral conduct and is highly respected by his peers for his unwavering stance against wrong behavior. In our church, he serves as an Armor Bearer to the Pastor.

While having a clear focus on this new direction in his life, he is fully aware of his personal struggle to escape from the failures of his past that continue to plague him in the present. Nonetheless, he has made a tremendous turnaround and we hope to be able to continue to work with him in this endeavor.

Should any further information be needed from me, I may be contacted via email, pastorga@cox.net, or at my office, (619) 819-1822.

Humbly Submitted,

Rev. G. A. Williams, D.Min.
Senior Pastor

84

EXHIBIT G

2

1    PASTOR WILLIAMS:  I'M PASTOR WILLIAMS.  I AM THE PASTOR

2    OF THE ANDERSON FAMILY.  AND I'M ALSO A CASE MANAGER AND

3    CHAPLAIN AT THE SAN DIEGO RESCUE MISSION WHERE ROBBYE DID A

4    RESIDENCY THERE FOR QUITE SOME TIME.

5    I BELIEVE I ADDRESSED ALL OF THAT IN THE LETTER,

6    BUT I'M HERE IN SUPPORT OF THE FAMILY AS WELL AS IN SUPPORT OF

7    ROBBYE ANDERSON.

8    I WANT TO DITTO WHAT HIS WIFE HAS JUST MENTIONED,

9    THAT HE HAS HAD A PROBLEM IN THE PAST.  HOWEVER, AS HIS CASE

10    MANAGER AND DRUG COUNSELOR AT THE SAN DIEGO RESCUE MISSION HE

11    DID AN OUTSTANDING JOB THERE, WAS AN EXEMPLARY RESIDENT THERE.

12    AND HOWEVER, ANY ADDICTION PROBLEM IS A LIFELONG RECOVERY

13    PROCESS.  AND HE HAS MADE SOME GREAT STRIDES IN THAT PROCESS.  I

14    THINK THE FACT THAT HE WAS RELEASED FROM PROBATION AT ONE TIME

15    INDICATES PROGRESS IN HIS LIFELONG RECOVERY PROCESS.

16    WE'RE ASKING FOR THE COURT TO EXTEND MERCY TO HIM

17    AND RELEASE HIM BACK INTO OUR CUSTODY ON PROBATION SO THAT WE

18    CAN CONTINUE WORKING WITH HIM AS WE HAVE IN THE PAST.  I THINK

19    THIS WOULD BE A BETTER BENEFIT NOT ONLY TO SOCIETY BUT TO HIS

20    FAMILY.

21    HE IS NOT A THREAT TO SOCIETY.  TO PUT HIM AWAY

22    FROM SOCIETY WOULD NOT BE DOING THE FAMILY ANY GOOD, WHICH IS OF

23    GREAT CONCERN, AND CERTAINLY WOULD NOT BE DOING HIM OF ANY GOOD

24    AS WELL.

25    SO ONCE AGAIN, WE'RE JUST ASKING FOR THE COURT, BY

26    WAY OF YOU, YOUR HONOR, TO EXTEND MERCY AND RECEIVE THE

27    RECOMMENDATION OF HIS ATTORNEY, WHICH WOULD BE PROBATION,

28    RELEASING HIM BACK INTO THE CARE OF THE PROBATIONARY DEPARTMENT

EXHIBIT G

0079



# Greater Victory
## Baptist Church
G. A. Williams, D.Min. - Pastor

P. O. Box 94 ~ Lemon Grove, California 91945 ~ (619) 668-6925
*"Bringing them in; Growing them up; Sending them forth to serve; Preparing for Christ return"*

July 28, 2006

### Character Reference Letter for Mr. Robbye Anderson

**To Whom It May Concern:**

I, Rev. Bryon Barmer, am writing this Character Reference letter for Mr. Robbye Anderson, a member of Greater Victory Baptist Church.

I have known Mr. Anderson for 2 years. In this time, I have seen Robbye grow in his walk with the Lord. I have watched him complete his Church Orientation and New Disciples Classes and take an active role in our Men's Ministry.

I have had occasions to fellowship with Mr. Anderson and his family both in private settings as well as in public ministry and as a San Diego Police officer, of twenty years I have been impressed with Robbey's determination to change the direction of his life. He demonstrates this by the love and care that he shows for his family as well as his church family. He has a true desire to learn and implement the precepts of the Bible into his everyday behavior. Robbye Anderson has earned the respect of his peers at church by being consistent in his actions. He is striving to develop the characteristics of a strong and dependable husband, father, and friend, by allowing his faith in God to be his moral compass. He understands that these characteristics need to be developed through the Word of God. As a man of God, I feel compelled to assist Robbye in developing an unwavering stance against wrong or inappropriate behavior.

Again as a San Diego Police Officer II of twenty years and Associate Pastor of Greater Victory Church, I ask that you consider the tremendous growth that Mr. Anderson has shown. I also request that you allow us, his Greater Victory family, to continue to assist him in his journey.

Should any further information be needed, I may be contacted via email at, greatervictory@netscape.com.

Humbly Submitted,

Rev. Bryon Barmer
Associate Pastor

86

EXHIBIT G

0102

CT No. CD198047
DA No. ABT155

F I L E D
Clerk of the Superior Court

SEP 1 5 2006

By: J. WILHELM, Deputy

Letter of Consideration
Case#SCD198047

To:    Judge David Gil
From:  Inmate Robbye Ray Anderson

Re: Leniency in Sentencing

Judge Gill,

As of 07-27-06, the day of my trial ended with the verdict of guilty for 3 charges, I,
Robbye Ray Anderson, hereby present this document on this date of September 01, 2006.
This is in hope that your keen insight, you ability to reason and understand, and wisdom
will be comprehensive in my plight to seek leniency at sentencing. I am sure you are a
man of great integrity and impartial judgment.

On the night of April 04, 20006, I supposedly furnished Officer Chavez a controlled
substance. I honestly did not aid Officer Chavez in any way.    At the time I was under a
physician's care (Kaiser Permanente, Dr Thigpen) due to a brutal attack I received one
month prior to my incarceration. In this attack I received major trauma to my skull due to
the assault on my life which severed by skull in several places, a broken jaw in three
places, a broken left finger and fractures to the other hand. As a result, the injures I
received, surgery was performed on my jaw and a pin placed in my finger. This did
cause a lot of trauma to me psychologically and made me nervous. The injuries most
definitely left me paranoid. My attorney, Anthony Hernandez has all medical records to
verify the legitimacy of my medical condition stated.

Your Honor, however, I did think of assisting the officer in purchasing drugs but realized
it was not in my best interest to do so. I can honestly say I am guilty of having
paraphernalia that was in my possession upon my arrest. There is no logical theory that
explains that I gave the officer any drugs when in fact, I had been a habitual drug user
myself.

Your Honor, I am very well aware that I have a history associated with drugs and drug
addiction, to be in denial would be foolish. And yes, I've made ill-logical choices in my
life as well. Please don't misunderstand, that does not mean that I haven't made attempts
to change, because that would be untrue. After paroling 10/26/04 from Salinas Valley, I
entered a spiritual growth program called, Life Ministries Rescue Mission. Any
information that is needed can be questioned by G.A.Williams at (619-819-1822). After
six months of recovery, I met someone special, and became married to my wife,
(Minister) Mrs., Sonja Kaye Daniels-Anderson. During the course of our marriage, I've
stayed clean and sober and became spiritually involved in my church "Greater Victory".

87

EXHIBIT G

0103

In December 2005 I was discharged from parole under the guidance of Agent Murphy. His number is (619) 718-7800.

Judge Gill, I ask form the inner depths of my soul as a human being that you understand I need mercy regarding my sentence. I Robbye R. Anderson have been honestly man enough to admit that I have been guilty in the past, and did admit to that guilt. I accepted the punishment according to the law. If I knowingly broke the law on all of the assumed charges, I would have admitted my guilt before the courts just as I have in the past. You see, Your Honor, I have a lovely wife that I love, she loves me and needs me along with our six children (2 are teenagers). My wife needs her husband, my children need their father, and we need each other! In addition, I have a loving mother in her late seventies and single, God knows, I'd love to see her again and be able to continue help take care of her.

In conclusion Your Honor, I understand the law is the law and why it was established. However, I believe the charges against me are fabricated and without merit. I am confident that you understand my plight and the reason I wrote the letter. It is simply, because I am innocent of counts 1 and 2.

Judge Gill, please consider my family's needs and my presence in their lives. I place my faith in God's hands, in you rendering a justifiable sentence. May God bear witness to the righteousness of your heart in this decision.

Sincerely,

Robbye Ray Anderson

88

🖉JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROBBYE RAY ANDERSON

**DEFENDANTS**

STATE OF CALIFORNIA

(b) County of Residence of First Listed Plaintiff   RIVERSIDE CO.
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   SanDiego, CO.
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)   C.R.C.
DORM 303-22L / P.O. BOX 3535
NORCO, CA. 92860

Attorneys (If Known)

STATE ATTORNEY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☒ 530 General | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
DUE PROCESS, SIXTH AMENDMENT VIOLATION
Brief description of cause:
PLAINTIFFS. WAS DENIED HIS CONSTITIONAL RIGHTS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   NONE

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ s   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

---

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS44
(Rev. 07/89)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Robbye Ray Anderson

DEFENDANTS

Martel, et al

FILING FEE PAID
Yes ___ No ___

IFP MOTION FILED
Yes ___ No ___

COPIES SENT TO
Court ___ Pro Se ___

FILED
JUN - 9 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED  Riverside
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Robbye Ray Anderson
PO Box 3535
Norco, CA 92860
F-39592

ATTORNEYS (IF KNOWN)

'08 CV 1031 W AJB

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX
(For Diversity Cases Only)      FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☒ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding
☐ 2 Removal from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN
COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23
DEMAND $
Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE                     Docket Number

DATE    6/9/2008

SIGNATURE OF ATTORNEY OF RECORD

R. Miller